IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STACY PARKS MILLER, | : | Case No. 4:15-CV-1754 |
| | : | |
| Plaintiff, | : | (Judge Brann) |
| | : | |
| v. | : | |
| | : | |
| BERNARD CANTORNA, et. al., | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OPINION

May 11, 2016

I.    BACKGROUND

On August 25, 2015, the current District Attorney of Centre County, Stacy Parks Miller, hereinafter "Parks Miller," filed a thirteen count complaint against twelve defendants in the Court of Common Pleas of that county. It was removed to this Court two weeks later.  In response to the motions to dismiss filed by all Defendants, Parks Miller filed an amended complaint.[1]  All of the various defendants next filed motions to dismiss the amended complaint.  This Memorandum Opinion deals with the motion filed by Defendant Bernard Cantorna, hereinafter "Cantorna," an attorney practicing in Centre County.

The motion has been fully briefed, and I held oral argument on the motions

---

[1] ECF No. 25.

on March 3, 2016.  The matter is now ripe for disposition.  For the reasons that follow, I will grant the motion in its entirety.

## II.   DISCUSSION

### a.   Motion to Dismiss Standard of Review

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may file a motion to dismiss for "failure to state a claim upon which relief can be granted." Such a motion "tests the legal sufficiency of a pleading" and "streamlines litigation by dispensing with needless discovery and factfinding."[2] "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law."[3] This is true of any claim, "without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one."[4]

Beginning in 2007, the Supreme Court of the United States initiated what some scholars have termed the Roberts Court's "civil procedure revival" by significantly tightening the standard that district courts must apply to 12(b)(6) motions.[5] In two landmark decisions, *Bell Atlantic Corporation v. Twombly and Ashcroft v. Iqbal*, the Roberts Court "changed . . . the pleading landscape" by "signal[ing] to lower-court judges that the stricter approach some had been taking

---

[2] *In re Hydrogen Peroxide Litigation*, 552 F.3d 305, 316 n.15 (3d Cir. 2008) (Scirica, C.J.) (*quoting Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 675 (7th Cir. 2001) (Easterbrook, J.)). *Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989).

[3] *Neitzke*, 490 U.S. at 326 (*citing Hishon v. King & Spalding*, 467 U. S. 69, 73 (1984)).

[4] *Neitzke*, 490 U.S. at 327.

[5] Howard M. Wasserman, THE ROBERTS COURT AND THE CIVIL PROCEDURE REVIVAL, 31 Rev. Litig. 313 (2012).

was appropriate under the Federal Rules."[6] More specifically, the Court in these two decisions "retired" the lenient "no-set-of-facts test" set forth in *Conley v. Gibson* and replaced it with a more exacting "plausibility" standard.[7]

Accordingly, after *Twombly* and *Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[8] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[9] "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully."[10] Moreover, "[a]sking for plausible grounds . . . calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [wrongdoing]."[11]

The plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[12] No matter the context, however, "[w]here a complaint pleads facts that are 'merely consistent

---

[6] 550 U.S. 544 (2007); 556 U.S. 662, 678 (2009). Wasserman, *supra* at 319–20.

[7] *Iqbal*, 556 U.S. at 670 (*citing Conley v. Gibson*, 355 U.S. 41 (1957)) ("[a]cknowledging that *Twombly* retired the *Conley* no-set-of-facts test").

[8] *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

[9] *Iqbal*, 556 U.S. at 678.

[10] *Connelly v. Lane Const. Corp.*, No. 14-3792, 2016 WL 106159, at *3 (3d Cir. Jan. 11, 2016) (Jordan, J.) (internal quotations and citations omitted).

[11] *Twombly*, 550 U.S. at 556.

[12] *Iqbal*, 556 U.S. at 679.

with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"[13]

When disposing of a motion to dismiss, a court must "accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the plaintiff]."[14] However, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions."[15] "After *Iqbal*, it is clear that conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss."[16] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[17]

As a matter of procedure, the United States Court of Appeals for the Third Circuit has instructed that:

> Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps. First, it must tak[e] note of the elements [the] plaintiff must plead to state a claim. Second, it should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, [w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.[18]

---

[13] *Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 557 (internal quotations omitted)).

[14] *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008) (Nygaard, J.).

[15] *Iqbal*, 556 U.S. at 678 (internal citations omitted).

[16] *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (Nygaard, J.).

[17] *Iqbal*, 556 U.S. at 678.

[18] *Connelly*, 2016 WL 106159, at *4 (internal quotations and citations omitted).

b.   Facts Alleged in the Amended Complaint

The procedural dictate when faced with a motion to dismiss is that the court is to accept the facts alleged as true. "Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations."[19]   However, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."[20]   That said, the following is a recitation of the allegations according to Parks Miller.

Parks Miller has been District Attorney of Centre County since 2009. During the pendency of an investigation of an inmate allegedly attempting to contract someone to murder one of the assistant district attorneys in the office, Parks Miller, together with defense counsel for a second inmate, acting as a prison informant, devised a plan to move the informant to another prison as part of the investigation into the murder attempt.  Parks Miller and the informant's defense counsel decided that they needed what the parties alternately and curiously refer to as a "pretend" or "fake" order granting the informant release on bail.  Another defendant in this civil matter, a former employee of Parks Miller, accused Parks Miller of forging the signature of Judge Pamela Ruest on the pretend bail order. A grand jury investigation against Parks Miller was ultimately undertaken.  The grand jury in due

---

[19] *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)
[20] *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)

course cleared Parks Miller of wrongdoing.

The following paragraphs from the amended complaint comprise the allegations against Defendant Bernard Cantorna.

¶16 Defendant Cantorna is a close confidant of Centre County Solicitor Glantz. They are business partners and have shared the same office space for many years.

¶17 In September of 2013, Attorney Cantorna served as defense counsel for an aggravated child abuse case, prosecuted personally by District Attorney Parks Miller on behalf of the Commonwealth and the people of Centre County.

¶18 Cantorna's so-called child abuse experts performed so poorly on cross-examination that the last purported expert left without permission before testifying, having watched the skill demonstrated by a relentless District Attorney Parks Miller in front of the jury.

¶20 In retaliation for his defeat, defendant Cantorna began filing document with actual malice and a reckless disregard for the truth, and initiated an/or advanced a false, defamatory, and unethical attack against District Attorney Parks Miller.

¶21 All of this was intended and motivated as retribution for her doing her job resulting in the conviction of Cantorna's child-abusing client.

¶97 The scheme [the accusation of forgery by the former employee] brought about through Defendant Cantorna's dual relationships with the Lawyer Defendants, and the County Solicitor, Defendant Louis Glantz, chief legal advisor to the County Commissioners, and the County Administrator, Defendant Timothy Boyde.

¶111 At a January 20, 2015 Commissioners meeting,

Bernard Cantorna, Esq., a close friend, business partner, and office suit-mate to solicitor Glantz appeared at a public meeting of the Centre County Commissioners covered by the press along with Defendant Andrew Shubin, *posing* as a member of the "concerned public," and he, Solicitor Glantz, and other Defendants lied to the public by definitively stating "for sure" that there was no investigation underway into the alleged forgery, when the matter had already been referred to by the DA herself, and accepted by the OAG. (emphasis in original)

¶114 For example, the following quotes were taken from a January 21, 2015 article printed in The Progress News, entitled "Centre Co. DA accused of forgery":…

C. Defendant Cantorna orally republished the false criminal accusations of Defendants Shutt and Masorti:

Cantorna said he learned a former paralegal from the DA's office has executed an affidavit accusing Parks Miller of actions that constitute at least one felony and one misdemeanor criminal offense. "As I understand it, these allegations have been filed with the Bellefonte Police Department and accuse District Attorney Stacy Parks Miller of forging Judge Pamela A. Ruest's signature and filing that forged document with the Prothonotary in the official court file," Cantorna said. "I am enclosing with this letter, an affidavit of your former employee. I am aware there are emails which appear to confirm the filing of a false document with the Prothonotary and confirm Ms. Parks Miller's direction of these activities." Cantorna asked the commissioner to take a stand and do something, and to have a special prosecutor investigate the allegations. After a lengthy discussion, the commissioners voted 3-0 to do just that.

"Generally, consideration of a motion to dismiss under Rule 12(b)(6) is limited to consideration of the complaint itself."[21]   Typically, to consider materials outside the complaint, it must be converted to a motion for summary judgment.[22] However, "[c]onsideration of materials outside the complaint is not entirely foreclosed on a 12(b)(6) motion."[23]   It is permissible to consider full text of documents partially quoted in complaint.[24]   It is also permissible to consider documents relied upon by plaintiff in drafting the complaint and integral to the complaint.[25]   "However, before materials outside the record may become the basis for a dismissal, several conditions must be met."[26]   "For example, even if a document is "integral" to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document."[27]   It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.[28]

I find that all of the conditions noted above are met. I will therefore consider the statements below made by Cantorna at the January 20, 2015 Centre County

---

[21] *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006).
[22] *See id.* and Fed. R. Civ. P. 12(d).
[23] *Faulkner*, 463 F.3d at 134.
[24] *San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 808–09 (2d Cir.1996).
[25] *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47–48 (2d Cir.1991).
[26] *Faulkner*, 463 F.3d at 134.
[27] *Id, See also  e.g., Kaempe v. Myers*, 367 F.3d 958, 965 (D.C.Cir.2004); *Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co.,* 267 F.3d 30, 33 (1st Cir.2001).
[28] *Faulkner*, 463 F.3d at 134.

Commissioners meeting for purposes of this motion to dismiss without converting

it into a motion for summary judgment.  The statements are, as follows:

> Thank you.  For those who don't know me, I am – my
> name is Bernie Cantorna.  I'm an attorney.  I work with a
> law firm called Bryant & Cantorna.  I'm here as an
> attorney and a member of the Centre Count bar and on
> behalf of other members, including Andrew Schubin [sic]
> and others.  He specifically is involved in the issues that
> I'm bringing before you.
>
> As you probably know, many in Centre County
> government know, and many in the legal community
> know there have been serious allegations of potential
> criminal activity lodged against the District Attorney.
>
> Those allegations have been made by a former County
> employee, a woman who was the former paralegal of
> Stacy Parks Miller, the elected District Attorney.
>
> The reason I am here is to ask you, the highest elected
> County officials, to take some action to investigate these
> allegations and insure that there's an independent
> investigation done and any necessary legal action is
> taken.
>
> I believe you have that under the – under Pennsylvania
> statutes that allow the appointment of an independent
> prosecutor in the case of allegations of criminal activity
> against a District Attorney, and I believe you have the
> resources and the authority and should act.
>
> My understanding – and in your packet is some of the
> information that is, again, known in the legal community
> and in some places of Centre County government, I
> presume – is an affidavit of your County's former
> employee where she indicates that she was asked by our
> District Attorney to obtain copies of orders signed by
> Judge Pamela Ruest.

The reason those orders were requested was so that a fake order could be constructed that looked like an order out of Judge Ruest's office so that the font and formatting and the characters of that letter would match something coming out of her office.

This paralegal in her sworn statement indicates that she did, in fact, draft a fake bail order in a pending criminal case and brought that document up to the District Attorney's office, sat in Stacy Parks Miller's office as she practiced the Judge's signature and then witnessed her affix the Judge's signature to that bail piece.

She goes on to allege that she was directed to file that bail piece in the official court record at the prothonotary's office and did so, returning to the District Attorney's office.

She references in her affidavit e-mails that seem to confirm what she is saying.

There is – looking at those allegations, they would support a finding of probable cause, if true, that the District Attorney engaged in the act of forgery and what lawyers would call conspiracy to file false documents at the courthouse.

They're very, very serious allegations, and honestly, I believe that they are calling into question the credibility of our justice system, and if the public doesn't have faith in that system, it cannot operate.  It cannot operate.

This Board may be the only entity investigating these claims other than, as I understand it, potentially the District Attorney's Office.

You need to be made aware of the fact that there have been threats of criminal prosecution against what, in fact, would be   whistleblower, a former County employee

coming forward with allegations of very serious misconduct, if true, and that she is being threatened with prosecution for false swearing and theft by the actual person who is being accused, so I would say it's unprecedented for a prosecutor to investigate allegations that they had committed a crime.

Under Pennsylvania Statutes, an independent prosecutor can be appointed. I've given you those statutes. I've shown you that authority. You as a Board have the resources, the ability and the authority to do something to insure that there's an independent investigation done and that someone does the work to find the truth of these allegations and take any action that's appropriate, wherever, wherever that – the chips may fall.

In that packet, I've enclosed what is alleged to be a forged order, a sworn affidavit of your former employee, multiple exemplars of what are authentic documents signed by Judge Pamela A. Ruest and then statutes that both define criminal activity, including misconduct and authority for how this County – how you could act, should you choose to do so.

What I'm specifically asking is that you review these issues and authorize the appointment of independent counsel to investigate those allegations and take any legal action necessary to restore confidence in our judicial system.

I think that's about it.[29]

Later, when asked if the Commissioners should petition the court for review, Cantorna replied:

---

[29] ECF No. 38-1 at 5-9.

> Probably, it would be somebody to get to the bottom to
> find the truth here, whatever you want to call it.  I would
> let the solicitor figure it out.[30]

As a result of these allegations, Plaintiff filed the instant amended complaint against several defendants, including Cantorna.  Parks Miller brings eight claims specifically against Cantorna – breach of fiduciary duty of loyalty/duty of loyalty, defamation/false light, injurious falsehood, common law abuse of process, negligence, intentional and/or negligent infliction of emotional distress, concerted tortious conduct, and conspiracy.

### c.  The counts against Cantorna

#### i.  Breach of Fiduciary Duty of Loyalty/Duty of Loyalty

Pennsylvania has adopted the Restatement (Second) of Agency approach to breach of fiduciary duty/duty of loyalty.[31] "Unless otherwise agreed, an agent is subject to a duty not to act or to agree to act during the period of his agency for persons whose interests conflict with those of the principal in matters in which the agent is employed."[32]

Employing this well-settled law to the case at bar, there is simply no basis upon which this Court could find that Cantorna is an agent of Parks

---

[30] *Id.* at 17.
[31] *See Reading Radio, Inc. v. Fink*, 833 A.2d 199 (Pa. Super. Ct. 2003).
[32] Restatement (Second) of Agency § 394 (1958).

Miller such that he has a duty toward her. Fiduciary duty is "a confidential relationship between two parties [that] can give rise to fiduciary duties owed by one to the other."[33] There is no evidence that Cantorna was in a confidential relationship with Parks Miller such that this burden should be or could be placed on him.

Parks Miller's pleading evidences the opposite, in fact. Her pleading continues for a rambling 311 paragraphs, much of which is filled with vitriol and extraneous background information, seemingly designed to evince a completely unnecessary motive. In those paragraphs, she makes it clear that Cantorna regularly appears in a professional capacity as a criminal defense attorney. "To impose upon an attorney a duty of care to the adverse party would place the attorney in a position where his own interest would conflict with the interests of his client and prevent him from exerting a maximum effort on behalf of the client."[34]

In her briefs, Parks Miller clarifies her claim of breach of fiduciary duty in that she asserts Cantorna aided and abetted a breach of fiduciary duty by Defendant Michelle Shutt, the former paralegal of Parks Miller who asserted that she witnessed Parks Miller forge Judge Ruest's signature on the

---

[33] *PTSI, Inc. v. Haley*, 2013 PA Super 130, 71 A.3d 304, 311 (2013).

[34] *Aetna Electroplating Co. v. Jenkins*, 335 Pa. Super. 283, 287, 484 A.2d 134, 137 (1984).

pretend bail order. "Under Pennsylvania law, the elements that must be proven in order to maintain a claim for aiding and abetting a breach of fiduciary duty are: (1) a breach of a fiduciary duty owed to another; (2) knowledge of the breach by the aider and abettor; and (3) substantial assistance or encouragement by the aider and abettor in effecting that breach."[35] "In other words, "[i]n order to be found liable for aiding and abetting a breach of a fiduciary duty, one must demonstrate that the party knew that the other's conduct constituted a breach of a fiduciary duty and gave substantial assistance or encouragement to the other in committing that breach."[36]

Parks Miller has failed to plead facts sufficient to conclude that there is factual support for her contention that Cantorna encouraged Shutt to forward two emails to her personal account prior to her departure from Parks Miller's office to work for co-defendant, Philip Masorti. Given that the complaint was originally filed in the Court of Common Pleas, with a

---

[35] *Synthes, Inc. v. Emerge Med., Inc.*, 25 F. Supp. 3d 617, 674-75 (E.D. Pa. 2014) *citing Reis v. Barley, Snyder, Senft & Cohen*, 667 F.Supp.2d 471, 492 (E.D.Pa.2009).
[36] *Id. citing Bd. of Trs. of Teamsters Local 863 Pension Fund v. Foodtown, Inc.,* 296 F.3d 164, 174 (3d Cir.2002) (claim for aiding and abetting breach of fiduciary duties under ERISA); *see also* RESTATEMENT (SECOND) TORTS § 876, cmt. to subsection (b) (1979) ("If the encouragement or assistance is a substantial factor in causing the resulting tort, the one giving it is himself a tortfeasor and is responsible for the consequences of the other's act.").

demanding fact pleading standard[37], I find that her claims do not even
survive the lesser plausibility standard permitted in federal court.

In sum, "a claim has facial plausibility when the plaintiff pleads
factual content that allows the court to draw the reasonable inference that the
defendant is liable for the misconduct alleged."[38] Moreover, "[a]sking for
plausible grounds . . . calls for enough facts to raise a reasonable expectation
that discovery will reveal evidence of [wrongdoing]."[39] "Determining
whether a complaint states a plausible claim for relief [is] a context-specific
task that requires the reviewing court to draw on its judicial experience and
common sense."[40] The most Parks Miller has plead in support of her aiding
and abetting claim is that she "recite[d] the elements of a cause of action,
and then ma[de] a blanket assertion of an entitlement to relief under it."[41]
""[W]here the well-pleaded facts do not permit the court to infer more than
the mere possibility of misconduct, the complaint has alleged - - but it has
not "shown" - - "that the pleader is entitled to relief.""[42]

The Court can discern no basis upon which to impose a duty springing
from Cantorna to Parks Miller. Nor may Parks Miller's alternate theory that

---

[37] *See Hellmann v. Kercher*, 2008 U.S. Dist. LEXIS 54882, *4, 2008 WL 1969311 (W.D. Pa.
May 5, 2008) (Lancaster, J.).
[38] *Iqbal*, 556 U.S. at 678.
[39] *Twombly*, 550 U.S. at 556.
[40] *Iqbal*, 556 U.S. at 663-664.
[41] *Hellmann*, *supra.*
[42] *Iqbal*, *supra*, *citing* Fed. R. Civ. P. 8(a).

Cantorna aided and abetted Shutt in a breach of duty survive.  The Breach of
Fiduciary Duty of Loyalty/Duty of Loyalty count, Count I, will therefore be
dismissed as to Defendant Cantorna.

> ii.  Defamation/False Light
>> 1.  Defamation

The allegedly defamatory statements at issue from Cantorna are those
cited above at the January 20, 2015 Commissioner's meeting and those that
he wrote in a letter regarding the affidavit executed by Michelle Shutt and
the corresponding Bellefonte Police Department investigation.

This area of law is well-settled.  "Whether a challenged statement is
capable of defamatory meaning is a question of law for the court to
determine in the first instance."[43]  "To state a cause of action for defamation,
a complaint must contain averments of fact which, if proven, would
establish, (1) the defamatory character of the communication; (2) its
publication by the defendant; (3) a reference to the plaintiff; (4) a recipient's
understanding of the communication's defamatory character and its
application to plaintiff; (5) special harm resulting from the publication; and
(6) abuse of any conditional privilege."[44]  "Additionally, because [plaintiff]

---

[43] Feldman v. Lafayette Green Condo. Ass'n, 806 A.2d 497, 500 (Pa. Commw. Ct. 2002).
[44] *Smith v. Wagner*, 403 Pa. Super. 316, 321, 588 A.2d 1308, 1311 (1991) *citing* 42 Pa.C.S. §
8343(a). *See also: Agriss v. Roadway Express, Inc*., 334 Pa.Super. 295, 304, 483 A.2d 456, 461
(1984).

was a local public official[45], [s]he must aver that defendants acted with

"actual malice" ; that is, knowledge or reckless disregard of the falsity of the

objectionable statements."[46]

Some statements are considered to be *per se* defamatory in

Pennsylvania.  "Statements by a defendant imputing to the plaintiff a

criminal offense, punishable by imprisonment, or conduct incompatible with

the plaintiff's business constitute slander per se."[47]   However, a complaint

cannot survive if there is a privilege attached to the communication.  In

explaining the sixth element of defamation, abuse of a privilege, the

Superior Court of Pennsylvania[48] has explained privilege, as follows:

> However, a publisher of defamatory matter is not liable if
> the publication was made subject to a privilege, and the
> privilege was not abused.    Restatement  §  593.
> "Communications made on a proper occasion, from a
> proper motive, in a proper manner, and based upon
> reasonable cause are privileged." *Beckman v. Dunn*, 276
> Pa.Superior Ct. 527, 536, 419 A.2d 583, 587 (1980); *see
> also Baird v. Dun & Bradstreet, Inc.*, 446 Pa. 266, 275,
> 285 A.2d 166, 171 (1971). An occasion giving rise to a
> conditional privilege occurs when (1) some interest of the
> publisher of the defamatory matter is involved; (2) some

---

[45] Counsel has conceded, both in his papers and at oral argument, that Parks Miller is a public figure, subject to the 'actual malice' standard.

[46] *New York Times v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964); *Curran v. Philadelphia Newspapers, Inc.*, 497 Pa. 163, 439 A.2d 652 (1981).

[47] *Brinich v. Jencka*, 2000 PA Super 209, 757 A.2d 388, 397 (2000) *citing* RESTATEMENT (SECOND) OF TORTS § 570(a), (c).

[48] *Chicarella v. Passant*, 343 Pa. Super. 330, 337, 494 A.2d 1109, 1112-13 (1985).

> interest of the recipient of the matter, or a third party, is involved; or (3) a recognized interest of the public is involved. *Beckman v. Dunn*, supra at 536, 419 A.2d at 587. Although the defendant in a defamation action ordinarily bears the burden of establishing a privilege to publish defamatory matter, 42 Pa.C.S.A. § 8343(b)(2), where a conditional privilege is evidenced, as here, in the plaintiff's complaint, the plaintiff will be nonsuited unless he can prove abuse of the privilege.  *Baird v. Dun & Bradstreet, Inc., supra* at 275, 285 A.2d at 171; *Rankin v. Phillippe*, 206 Pa.Superior Ct. 27, 32, 211 A.2d 56, 58 (1965).

The allegations advanced by Parks Miller do not constitute a plausible claim. Parks Miller has not alleged facts of "[t]he defamatory character of the communication."[49]  "It is the function of the trial court to determine whether a challenged publication is capable of a defamatory meaning."[50] Providing truthful, neutral information about an ongoing investigation is not defamatory and certainly cannot be considered to be done with 'actual malice, as there is no falsity in the statements.  "[T]he plaintiff must focus on the editorial process and prove a false publication attended by some degree of culpability."[51]  "If the court determines that the challenged publication is not capable of a defamatory meaning, there is no basis for the

---

[49] *Tucker v. Philadelphia Daily News*, 848 A.2d 113, 123 (Pa. 2004), *citing* 42 Pa.C.S. § 8343(a).
[50] *Green v. Mizner*, 692 A.2d 169, 172 (Pa. Super. Ct. 1997) *citing Maier v. Maretti*, 448 Pa.Super. 276, , 671 A.2d 701, 704 (1995); *Livingston v. Murray*, 417 Pa.Super. 202, , 612 A.2d 443, 446, *alloc. den.*, 533 Pa. 601, 617 A.2d 1275 (1992).
[51] *Herbert v. Lando*, 441 U.S. 153, 176, 99 S.Ct. 1635, 1648, 60 L.Ed.2d 115 (1979).

matter to proceed to trial."[52]

What Parks Miller has alleged are all truthful statements, and moreover, they are relatively innocuous true statements. Her pleadings demonstrate this. There was a pretend bail order docketed with the prothonotary; a former employee did accuse Parks Miller of forging the order; and an investigation resulted. None of what Cantorna is alleged to have said or written has been false. Moreover, speaking truthfully as to an investigation of an alleged crime committed by a district attorney is certainly of public interest.

In contrast, the following statement in the matter of *Fox v. Kahn* was found to be slanderous of a district attorney in a case from Delaware County, Pennsylvania: "This is as to law and justice. We had a murder down here in Trainer and the District Attorney picked up a young weak-minded fellow and got a confession out of him; it was a simple way he got it, he put him in a room by himself and beat it out of him with a telephone Book."[53] The defendant there admitted he knowingly made the statement at a public meeting and that it was untrue.

Here, there is a marked difference between the statements made in *Fox*, where the defendant falsely stated that a district attorney physically

---

[52] *Thomas Merton Center v. Rockwell International Corp.*, 442 A.2d 213, 215-16 (Pa. 1981).
[53] *Fox v. Kahn*, 421 Pa. 563, 565, 221 A.2d 181, 182 (1966).

abused a suspect in order to obtain a confession, and the factual, rather bland statements of Cantorna.   Nothing Cantorna said is untrue, nor do Cantorna's statements have a defamatory connotation.  Accordingly, the defamation claim against Cantorna will be dismissed.

### iii.   Defamation/False Light
### False Light

I will dismiss the false light claim, as well.  Pennsylvania recognizes the tort of false light invasion of privacy, and has adopted the Restatement (Second) of Torts definition of it.

> § 652E. Publicity Placing Person In False Light
>
> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if
>
> (a) the false light in which the other was placed would be highly offensive to a reasonable person, and
>
> (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

"Significantly, unlike the law of defamation, false light invasion of privacy offers redress not merely for the publication of matters that are provably false, but also for those that, although true, are selectively

20

publicized in a manner creating a false impression."[54] "It is not, however, necessary to the action for invasion of privacy that the plaintiff be defamed."[55] "It is enough that he is given unreasonable and highly objectionable publicity that attributes to him characteristics, conduct or beliefs that are false, and so is placed before the public in a false position."[56] "When this is the case and the matter attributed to the plaintiff is not defamatory, the rule here stated affords a different remedy, not available in an action for defamation."[57]

"In order to prevail on this theory of false light invasion of privacy, appellant must show discriminate publication of true statements, that is, appellees must have created a false impression by knowingly or recklessly publicizing selective pieces of true information."[58] "[I]t applies only when the defendant knows that the plaintiff, as a reasonable man, would be justified in the eyes of the community in feeling seriously offended and aggrieved by the publicity."[59]

In sum, the tort of false light is committed when someone tells part of a story, and selects the worst parts of the story to make another look bad. In

---

[54] *Krajewski v. Gusoff*, 2012 PA Super 166, 53 A.3d 793, 806 (2012).
[55] Restatement (Second) Torts § 652E Cmt. b (Relation to defamation.).
[56] *Id.*
[57] *Id.*
[58] *Krajewski v. Gusoff*, 2012 PA Super 166, 53 A.3d 793, 807 (2012).
[59] Restatement (Second) Torts § 652E Cmt. c (Highly offensive to a reasonable person).

that context, I do not find that Parks Miller has stated a claim that Cantorna placed her in a false light or that truthful information about an ongoing investigation would have been highly offensive to a reasonable person. The information Cantorna is alleged to have publicized about Parks Miller was truthful, concise, and not selective. His remarks were not edited down to place Parks Miller in a false light. Moreover, at the commissioner's meeting, he consistently used derivatives of the word "alleged" to make it clear that there was no proof of a crime against Parks Miller, only that Michelle Shutt had alleged a crime.

Most importantly, however, the information disseminated was of legitimate concern to the public. "Additionally, [plaintiff's] stature in the community as a public figure resulted in a relinquishment of insulation from scrutiny of [her] public affairs."[60] In *Santillo v. Reedel*, the Superior Court of Pennsylvania explained that confirming an investigation about a criminal allegation of a candidate for magisterial district justice was of legitimate public concern. The *Santillo* court stated

> As candidate for district justice, he sought a position that would enable him to judge the conduct of others and determine whether that conduct was in conformity with the law. A claim that he violated the law was relevant and newsworthy. Whether or not the substance of the

---

[60] *Neish v. Beaver Newspapers, Inc.,* 398 Pa. Super. 588, 598, 581 A.2d 619, 624-25 (1990) (internal citations omitted).

complaint was true, Reedel and Piermatteo's confirmation of the complaint and the ensuing investigation presented a matter of public concern, therefore, appellant's claim of publicity to private life must fail.[61]

While the fact scenario in the case at bar concerns publicity surrounding a criminal investigation of an elected district attorney, and not a candidate for district justice, the holding can be extrapolated to engender the same result.  Accordingly, the false light claim will be dismissed as to Bernard Cantorna.

iv.  <u>Injurious Falsehood</u>

"[I]njurious falsehood, is the false and malicious representation of the title or quality of another's interest in goods or property."[62]  Pennsylvania has adopted RESTATEMENT (SECOND) OF TORTS §623A dealing with injurious falsehood.[63]  The comment to this section states, in part,

> Injurious falsehood. The general principle stated in this Section is applied chiefly in cases of the disparagement of property in land, chattels or intangible things or of their quality. … The rule is not, however, limited to them. It is equally applicable to other publications of false statements that do harm to interests of another having pecuniary value and so result in pecuniary loss.

---

[61] *Santillo v. Reedel*, 430 Pa. Super. 290, 295, 634 A.2d 264, 266 (1993).

[62] *Pro Golf Mfg., Inc. v. Tribune Review Newspaper Co.*, 570 Pa. 242, 247, 809 A.2d 243, 246 (2002).

[63] *Id.*

As delineated above, in light of the fact that Parks Miller has not alleged any false statements by Cantorna, I cannot permit this claim to survive the motion to dismiss.

### v.  Abuse of Process

"[A]n action for abuse of process is the improper use of process after it has been issued, that is, a perversion of it."[64]  "The tort of "abuse of process" is defined as the use of legal process against another "primarily to accomplish a purpose for which it is not designed."[65]  "To establish a claim for abuse of process it must be shown that the defendant (1) used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was not designed; and (3) harm has been caused to the plaintiff."[66]  ""The significance of [the word 'primarily'] is that there is no action for abuse of process when the process is used for the purpose for which it is intended, but there is an incidental motive of spite or an ulterior purpose of benefit to the defendant."[67]

This claim, likewise, cannot survive the motion to dismiss, as Parks Miller simply has not stated a claim of abuse of process as to Cantorna.  Curiously, the amended complaint itself does not plead any sort of abuse of process.  For the first time, in her brief opposing the motion to dismiss, Parks Miller makes a vague and

---

[64] *Rosen v. Am. Bank of Rolla*, 426 Pa. Super. 376, 381, 627 A.2d 190, 192 (1993).
[65] *Id. citing* Restatement (Second) of Torts, § 682.
[66] *Id.*
[67] *Id.*

unsubstantiated assertion that "Here, the DA has alleged that Cantorna has abused a number of litigation tactics primarily to accomplish purposes for which they were not designed, resulting in severe harm."[68]  However, as the United States Supreme Court has warned, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"[69] to state a claim.

Parks Miller next moves to argue that "The most salient example is Cantorna's perversion of the RTKL (right to know law) to generate speculation that the DA was "fixing" cases with the judiciary in an effort to drive the DA from office and cripple her ability to do her job in the eyes of the public."   First, Parks Miller does not allege in the amended complaint that Cantorna has used the right to know law to obtain information about Parks Miller.  Second, Parks Miller provides no legal support to suggest that any court has ever determined that making use of the right to know law is, or should be, considered 'legal process.'  Finally, counsel stated several times in oral argument that his client is not bringing a right to know law claim in this Court, as Parks Miller has a separate claim based on the right to know law pending in the Court of Common Pleas of Centre County.

Accordingly, because there are no factual allegations upon which this claim could rest, the abuse of process claim will also be dismissed as to Cantorna.

---

[68] Pl.'s Br.  ECF  No. 50 at 29.
[69] *Iqbal*, 556 U.S. at 678.

vi.  <u>Negligence</u>

The negligence claim against Cantorna is probably the least comprehensible claim in the amended complaint.  In Pennsylvania, the elements of negligence are standard -- duty, breach, causation, and damages.[70]  "It is well established that in determining the existence of a duty of care, it must be remembered that the concept of duty amounts to no more than "the sum total of those considerations of policy which led the law to say that the particular plaintiff is entitled to protection" from the harm suffered ... To give it any greater mystique would unduly hamper our system of jurisprudence in adjusting to the changing times."[71] "The determination of whether a duty exists in a particular case involves the weighing of several discrete factors which include: (1) the relationship between the parties; (2) the social utility of the actor's conduct; (3) the nature of the risk imposed and foreseeability of the harm incurred; (4) the consequences of imposing a duty upon the actor; and (5) the overall public interest in the proposed solution."[72]

Because neither the amended complaint nor the briefs make clear how Cantorna could possibly be deemed to have a duty of care toward Parks Miller,  as there are no citations to case law to support a legal duty springing from Cantorna to Parks Miller,  I asked counsel to clarify at oral argument.   Counsel argued that the

---

[70] *See Williams v. Syed*, 782 A.2d 1090 (Commw. Ct. 2001).
[71] *Althaus ex rel. Althaus v. Cohen*, 562 Pa. 547, 552, 756 A.2d 1166, 1168-69 (2000) (internal citation omitted).
[72] *Id.* at 553.

lawyer defendants have a duty because they did not return documents Michelle Shutt gave to them; defense attorneys should realize there is no forgery if there is no mens rea; and defense attorneys should have understood handwriting analysis. The Plaintiff provided no legal support for these propositions. I can find none. As the most recent issue of the THE BENCHER magazine concisely advises, "Do not invent law."[73] That seems a wise admonition.

The Pennsylvania Superior Court in *Campo v. St. Luke's Hospital*[74] explained how to determine if a duty should be established.

> When considering the question of duty, it is necessary to determine "whether a defendant is under any obligation for the benefit of the particular plaintiff ... and, unless there is a duty upon the defendant in favor of the plaintiff which has been breached, there can be no cause of action based upon negligence." *Tri-County Big Brothers*, 692 A.2d at 584 (*quoting Hoffman v. Sun Pipe Line Co.*, 394 Pa.Super. 109, 113-15, 575 A.2d 122, 125 (1990)).
>
> "Whether a duty exists is ultimately a question of fairness. The inquiry involves a weighing of the relationship of the parties, the nature of the risk and the public interest in the proposed solution." *Brandjord v. Hopper*, 455 Pa.Super. 426, 429-31, 688 A.2d 721, 723 (1997) (*citing Cruet v. Certain-Teed Corp.*, 432 Pa.Super. 554, 556-58, 639 A.2d 478, 479 (1994)). "Our duty analysis depends on many factors and is 'necessarily rooted in public policy considerations, i.e., our ideas of history, morals, justice, and society in general in determining

---

[73] Gabriela Acosta, Caitlin Barnes, Bren Chambers, Caitlin Wain, and Tessie Smith, *The View from WAY Behind the Bench*, THE BENCHER, March/April 2016, at 21.
[74] *Campo v. St. Luke's Hosp.*, 2000 PA Super 155, ¶ 10, 755 A.2d 20, 24 (2000).

where the loss should fall.' " *Althaus v. Cohen,* 710 A.2d 1147, 1152 (Pa.Super.1998), appeal granted, 556 Pa. 701, 729 A.2d 1124 (1998), (*quoting Gardner v. Consolidated Rail Corp.,* 524 Pa. 445, 455, 573 A.2d 1016, 1020 (1990)).

Moreover, duty, as a concept, is a flexible notion. "In determining the existence of a duty of care, it must be remembered that the concept of duty amounts to no more than 'the sum total of those considerations of policy which led the law to say that the particular plaintiff is entitled to protection' from the harm suffered." *Troxel v. A.I. Dupont Institute*, 450 Pa.Super. 71, 82, 675 A.2d 314, 319-320 (1996), *quoting Gardner by Gardner v. Consolidated Rail Corp.*, 524 Pa. 445, 454-455, 573 A.2d 1016, 1020 (1990), *quoting Sinn v. Burd*, 486 Pa. 146, 164, 404 A.2d 672, 681 (1979). Furthermore, "duty is only a word with which we state our conclusion that there is or is not to be liability; it necessarily begs the question...." Id. "To give it any greater mystique would unduly hamper our system of jurisprudence in adjusting to the changing times." *Id. Huddleston v. Infertility Center of America, Inc.*, 700 A.2d 453, 457-58 (Pa.Super.1997).

Finally, a duty arises only when one engages in conduct which foreseeably creates an unreasonable risk of harm to others. Id. at 457. It is "[o]nly when the question of foreseeability is undeniably clear may a court rule as a matter of law that a particular defendant did not have a duty to a particular plaintiff." *Tri-County Big Brothers*, 692 A.2d at 584; *Hoffman*, 575 A.2d at 125. *See Palsgraf v. Long Island Railroad Co.*, 248 N.Y. 339, 162 N.E. 99 (1928).

I find no basis upon which to support finding of a duty from Cantorna to Parks Miller.  His only involvement with this matter is the above cited statements that he made in a public meeting.  Her negligence claim as to him is merely a reformulated defamation claim.   Because there is no duty, this count cannot

survive a motion to dismiss.[75]   Therefore, the negligence claim will be dismissed as to Cantorna.

### vii.   Intentional and Negligent Infliction of Emotional Distress

#### 1. NIED

"[T]the cause of action for negligent infliction of emotional distress is restricted to four factual scenarios: (1) situations where the defendant had a contractual or fiduciary duty toward the plaintiff; (2) the plaintiff was subjected to a physical impact; (3) the plaintiff was in a zone of danger, thereby reasonably experiencing a fear of impending physical injury; or (4) the plaintiff observed a tortious injury to a close relative."[76]   The only possible basis for this claim is based on the first element, and as stated above, there is no fiduciary duty running from Cantorna to Parks Miller.   Accordingly, the claim of negligence infliction of emotional distress will be dismissed as to Cantorna.

#### 2. IIED

"One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional

---

[75] " If the court finds no duty of care is owed, the negligence count is decided as a matter of law." 57A Am. Jur. 2d Negligence § 74, *citing Mans v. Peoples Bank of Imboden,* 340 Ark. 518, 10 S.W.3d 885 (2000).

[76] *Toney v. Chester Cty. Hosp.*, 2008 PA Super 268, ¶ 14, 961 A.2d 192, 197-98 (2008) *aff'd*, 614 Pa. 98, 36 A.3d 83 (2011)

distress, and if bodily harm to the other results from it, for such bodily harm."[77]

Likewise, I cannot find that Parks Miller has alleged any "extreme or outrageous

conduct" on the part of Cantorna, nor would discovery aid her in amending her

complaint as to him, as his statements were all truthful and benign.  As she has

failed to state a claim for intentional infliction of emotional distress as to

Cantorna, this claim will be dismissed.

viii.   <u>Concerted Tortious Conduct</u>

"[C]oncerted tortious action, as defined in Section 876 of the Restatement

(Second) of Torts, is a recognized civil cause of action under Pennsylvania law."[78]

This section states

§ 876. Persons Acting in Concert

> For harm resulting to a third person from the tortious
> conduct of another, one is subject to liability if he
>
> (a) does a tortious act in concert with the other or
> pursuant to a common design with him, or
>
> (b) knows that the other's conduct constitutes a breach of
> duty and gives substantial assistance or encouragement to
> the other so to conduct himself, or
>
> (c) gives substantial assistance to the other in
> accomplishing a tortious result and his own conduct,

---

[77] *Britt v. Chestnut Hill Coll*., 429 Pa. Super. 263, 272, 632 A.2d 557, 561 (1993) *citing*
Restatement (Second) of Torts, § 46(1).
[78] *Sovereign Bank v. Valentino*, 2006 PA Super 338, ¶ 30, 914 A.2d 415, 427 (2006).

separately considered, constitutes a breach of duty to the third person.

In her brief, Parks Miller makes it clear that this claim is based on subsection (a) of the Restatement.[79]  Because all of the underlying torts have been dismissed as to Cantorna, this claim will be dismissed, as well.

### ix.  Conspiracy

"[A]bsent a civil cause of action for a particular act, there can be no cause of action for civil conspiracy to commit that act."[80]  As noted above, in light of the fact that all of the other underlying claims have been dismissed, this claim will also be dismissed.

## III.    CONCLUSION

Defendant's  motion to dismiss will be granted. Moreover, as explained below, the Court will deny Parks Miller further opportunity to amend her complaint, thereby foreclosing her ability to submit a third iteration of what is quite evidently an irrepealably flawed pleading.

Federal Rule of Civil Procedure 15(a), which governs a plaintiff's ability to amend her complaint, instructs that after the window for amendment as a matter of course has closed, a plaintiff may amend her complaint "only with

---

[79] Pl.'s Br. ECF No. 50 at 33.
[80] *Pelagatti v. Cohen*, 370 Pa. Super. 422, 432, 536 A.2d 1337, 1342 (1987).

the opposing party's written consent or the court's leave." "The decision to grant or deny leave to amend a complaint is committed to the sound discretion of the district court."[81] "Factors the trial court may appropriately consider in denying a motion to amend include undue delay, undue prejudice to the opposing party, and futility of amendment."[82] For instance, "if the proposed change clearly is frivolous or advances a claim or defense that is legally insufficient on its face, the court may deny leave to amend."[83]

As it applies to the instant matter, Parks Miller has already amended her complaint once as a matter of course pursuant to Rule 15. Having occurred after the various defendants filed their first motions to dismiss, that amendment effectively rendered those motions moot. To allow Parks Miller a third bite at the apple would contravene fundamental notions of justice for the following reasons.

First, the unjustifiable delay associated with further amendment and subsequent motions practice would significantly prejudice Defendant Cantorna here. To the extent that the defendants in this matter represent the public or work in private legal practice, a speedy resolution of this politically

---

[81] *Coventry v. U.S. Steel Corp.,* 856 F.2d 514, 518 (3d Cir. 1988).
[82] *Averbach v. Rival Mfg. Co.*, 879 F.2d 1196, 1203 (3d Cir. 1989) (*quoting Foman v. Davis*, 371 U.S. 178, 182 (1962).
[83] *Ross v. Jolly*, 151 F.R.D. 562, 565 (E.D. Pa. 1993) (*citing* 6 Wright, Miller, & Kane, Federal Practice & Procedure: Civil 2d § 1487). *See also Vosgerichian v. Commodore Int'l Ltd.,* No. Civ. A. 92-CV-4867, 1998 WL 966026, at * 3 (E.D. Pa. Nov 6, 1998) *aff'd sub nom Vosgerichian v. Commodore Int'l*, 191 F.3d 446 (3d Cir. 1999).

charged dispute is both efficient and proper. No defendant, whether a representative of the people or a private advocate, should be forced to endure the looming specter of such accusations, particularly where those charges have been judged deficient as a matter of law by a federal tribunal.

Moreover, Parks Miller has already enjoyed the benefit of responding with an amended complaint after reading and considering the arguments raised in the first round of defendants' motions to dismiss. Based upon my review of the claims asserted therein, a third version of the complaint would fare no better; any non-futile allegations that Parks Miller could possibly make should have already been advanced. With the likelihood that Parks Miller could plead an adequate complaint so low at this stage, I find that the certainty of substantial prejudice to this Defendant outweighs any interest Parks Miller might have in filing a further amended complaint.

Nor would discovery remedy the deficiencies in the complaint.  A missing piece common to several of the asserted claims in this action is proof of publication.  Accordingly, at this juncture, reasonable research and diligence should have already led Plaintiff to discover any published statements made by Cantorna. The Court, however, already possesses and has thoroughly considered the complete statements of Cantorna as reproduced above.  Discovery simply would not be a fruitful endeavor for

the kinds of claims that Parks Miller has chosen to advance.

Ultimately, I find that this determination also adheres to the dictates of the federal rules. As amended Federal Rule of Civil Procedure 1 now instructs, "the just, speedy, and inexpensive determination of every action" is the responsibly of both judges and litigants. Permitting amendment merely for the sake of amendment at this point would only further squander valuable time and resources of the Court and the parties. I am unwilling to so indulge Plaintiff.

BY THE COURT:

/s Matthew W. Brann
Matthew W. Brann
United States District Judge