IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STACY PARKS MILLER, | : | Case No. 4:15-CV-1754 |
| | : | |
| Plaintiff, | : | (Judge Brann) |
| | : | |
| v. | : | |
| | : | |
| CENTRE COUNTY, | : | |
| TIMOTHY BOYDE, | : | |
| LOUIS T. GLANTZ, | : | |
| C. CHRIS EXARCHOS, | : | |
| STEVEN DERSHEM, | : | |
| MICHAEL PIPE, et. al., | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM OPINION**

May 11, 2016

## I.   BACKGROUND

On August 25, 2015, the current District Attorney of Centre County, Stacy

Parks Miller, hereinafter "Parks Miller," filed a thirteen count complaint against

twelve defendants in the Court of Common Pleas of that county. It was removed to

this Court two weeks later, and, in response to the motions to dismiss filed by all

Defendants, Parks Miller filed an amended complaint.  All of the various

Defendants next filed motions to dismiss the amended complaint.  This

Memorandum Opinion deals concerns a group of six defendants, Centre County,

Timothy Boyde, Louis T. Glantz, C. Chris Exarchos, Steven Dershem, and

Michael Pipe.  When referred to in the collective, this group will be described as

the "County Defendants."

The motion has been fully briefed, and I held oral argument on March 3, 2016.

The matter is now ripe for disposition.  For the reasons that follow I will grant the

motion in part and deny it in part.

## II.   DISCUSSION

### a.   <u>Motion to Dismiss Standard of Review</u>

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may file a

motion to dismiss for "failure to state a claim upon which relief can be granted."

Such a motion "tests the legal sufficiency of a pleading" and "streamlines litigation

by dispensing with needless discovery and factfinding."[1] "Rule 12(b)(6) authorizes

a court to dismiss a claim on the basis of a dispositive issue of law."[2] This is true of

any claim, "without regard to whether it is based on an outlandish legal theory or

on a close but ultimately unavailing one."[3]

Beginning in 2007, the Supreme Court of the United States initiated what

some scholars have termed the Roberts Court's "civil procedure revival" by

significantly tightening the standard that district courts must apply to 12(b)(6)

---

[1]  *In re Hydrogen Peroxide Litigation*, 552 F.3d 305, 316 n.15 (3d Cir. 2008) (Scirica, C.J.)
(*quoting Szabo v. Bridgeport Machines, Inc.,* 249 F.3d 672, 675 (7th Cir. 2001) (Easterbrook,
J.)). *Neitzke v. Williams,* 490 U.S. 319, 326–27 (1989).
[2]  *Neitzke*, 490 U.S. at 326 (*citing Hishon v. King & Spalding,* 467 U. S. 69, 73 (1984)).
[3]  *Neitzke*, 490 U.S. at 327.

2

motions.[4] In two landmark decisions, *Bell Atlantic Corporation v. Twombly and Ashcroft v. Iqbal*, the Roberts Court "changed . . . the pleading landscape" by "signal[ing] to lower-court judges that the stricter approach some had been taking was appropriate under the Federal Rules."[5] More specifically, the Court in these two decisions "retired" the lenient "no-set-of-facts test" set forth in *Conley v. Gibson* and replaced it with a more exacting "plausibility" standard.[6]

Accordingly, after *Twombly* and *Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[7] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[8] "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully."[9] Moreover, "[a]sking for plausible grounds . . . calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of

---

[4] Howard M. Wasserman, THE ROBERTS COURT AND THE CIVIL PROCEDURE REVIVAL, 31 Rev. Litig. 313 (2012).
[5] 550 U.S. 544 (2007); 556 U.S. 662, 678 (2009). Wasserman, *supra* at 319–20.
[6] *Iqbal*, 556 U.S. at 670 (*citing Conley v. Gibson*, 355 U.S. 41 (1957)) ("[a]cknowledging that *Twombly* retired the *Conley* no-set-of-facts test").
[7] *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).
[8] *Iqbal*, 556 U.S. at 678.
[9] *Connelly v. Lane Const. Corp.*, No. 14-3792, 2016 WL 106159, at *3 (3d Cir. Jan. 11, 2016) (Jordan, J.) (internal quotations and citations omitted).

[wrongdoing]."[10]

The plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[11] No matter the context, however, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"[12]

When disposing of a motion to dismiss, a court must "accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the plaintiff]."[13] However, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions."[14] "After *Iqbal*, it is clear that conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss."[15] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[16]

As a matter of procedure, the United States Court of Appeals for the Third Circuit has instructed that:

Under the pleading regime established by *Twombly* and *Iqbal*, a court

---

[10] *Twombly*, 550 U.S. at 556.

[11] *Iqbal*, 556 U.S. at 679.

[12] *Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 557 (internal quotations omitted)).

[13] *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008) (Nygaard, J.).

[14] *Iqbal*, 556 U.S. at 678 (internal citations omitted).

[15] *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (Nygaard, J.).

[16] *Iqbal*, 556 U.S. at 678.

reviewing the sufficiency of a complaint must take three steps. First, it must tak[e] note of the elements [the] plaintiff must plead to state a claim. Second, it should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, [w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.[17]

   b.   Facts Alleged in the Amended Complaint

The 'County Defendants' are Centre County, Pennsylvania; three current or former Commissioners of Centre County – C. Chris Exarchos, Steven Dershem and Michael Pipe; the county administrator, Timothy Boyde; and Louis T. Glantz, the former Centre County Solicitor.   The relevant allegations as to this group of Defendants are as follows:[18]

> ¶ 1.   Elected in November of 2009, and re-elected upon nomination by both major political parties in 2013, Plaintiff Stacy Parks Miller became the first female to serve as District Attorney of Centre County, Pennsylvania.
>
> ¶ 7.   The Commissioners of Centre County became adverse to Plaintiff prior to her election as Centre County's District Attorney.   Parks Miller ran as a political outsider who advocated for a tougher stance on crime and an adherence to law and order, which she saw as lacking in Centre County's District Attorney's Office. Plaintiff ousted the incumbent District Attorney, who was the same political party as an enjoyed an amicable

---

[17]  *Connelly*, 2016 WL 106159, at *4 (internal quotations and citations omitted).

[18]  Amended Complaint ECF No. 25. (Many paragraph have been omitted.  The complaint is a rambling 311 paragraphs, that includes irrelevant facts, repetitive facts and legal conclusions. For example, counsel conceded at oral argument that he was not bringing a right to know law claim before this Court.  Consequently, allegations based on right to know law violations have been omitted.)

relationship with Commissioners Dershem and Exharchos.

¶ 8.   After taking office, Plaintiff followed through with her tough on crime philosophy, which proved unpopular with the County Defendants…

¶ 15. At all times relevant to this Complaint, Defendant Glantz was the appointed Centre County Solicitor, though Plaintiff believes and therefore avers he no longer enjoys the support of Commissioner Pipe based on published accounts that Commissioner Pipe sought Defendant Glantz's removal as solicitor once the facts contained in this Complaint became public.

¶ 22-47 (Paraphrased by the Court) Parks Miler began investigating an alleged murder plot by a prisoner attempting to hire a contract killer to murder an Assistant District Attorney in Parks Miller's office.

¶ 48.   To facilitate the plan…Parks Miller agreed to create a pretend bail order purporting to release [an informant]

¶ 61.   As part of the intricate plan to net a person intent on killing a colleague, Plaintiff Parks Miller asked [her, at the time, paralegal] Defendant [Michelle] Shutt to prepare the pretend bail order.

¶ 72.   Ten months into the sting operation, Defendant Shutt, the paralegal in the Centre County DA's office who drafted the pretend order, left the DA's office to eventually work for the Masorti Law Group.

¶ 78.   Defendant Shutt fabricated [a] forgery story [alleging that Parks Miller forged a judge's signature on the pretend bail order].

¶ 87.   []Defendant Masorti…filed a complaint with the Bellefonte Borough Police alleging that Plaintiff had

"forged" Judge Ruest's name on the pretend court order…

¶  93.  As was her duty, knowing the allegations to be utterly false, but as required by the Commonwealth Attorneys Act, District Attorney Parks Miller promptly referred the false allegations to the Office of Attorney General ("OAG") in order to initiate a full and fair investigation of the allegations against her.

¶  98.  The Defendants exerted political, financial and/or other pressure on the Bellefonte Police Department local law enforcement to investigate and seek an illegal prosecution of District Attorney Parks Miller.

¶  99.  Defendant Administrator Boyde offered Bellefonte Borough financial assistance from Defendant County by suggesting  Defendant  County  would  defray  the Borough's expenses to offset the cost of investigating and  prosecuting  the  District  Attorney.    No  evidence exists  of  which  Plaintiff  is  aware  that  anyone representing Bellefonte Borough even considered such an outlandish notion.

¶  103.  When the Bellefone Police expressed a desire to refer  the  case  to  the  Pennsylvania  State  Police  for investigation  (due  to  the  close  working  relationship between  District  Attorney  Parks  Miller  and  the Bellefonte  Police),  the  Centre  County  Commissioners called  the  Bellefonte  Chief  of  Police  into  a  private meeting  behind  closed  doors  that  resulted  in  the Bellefonte Police resurrecting their investigation and not referring the case to the State Police.

¶ 104.  A grand jury thoroughly investigated this matter and exonerated Plaintiff finding as a fact that Judge Ruest did sign the order.

¶  111 [At a January 20, 2015 Commissioners meeting, approximately  10  months  prior  to  the  grand  jury

decision] The alleged forgery matter was not an item on the Commissioner's agenda for that day, but the Commissioners and Solicitor were nonetheless prepared to address obscure statutes from 1955, never before used anywhere in Pennsylvania as the Commissioners intended to use them, to claim they had the power to initiate criminal investigations and prosecutions of the county's elected chief law enforcement official.

¶ 114. For example, the following quotes were taken from a January 21, 2015 article printed in The Progress News, entitled "Centre Co. DA accused of forgery":

A. Defendant Pipe publically called for the immediate resignation of District Attorney Parks Miller: "If this is true, then I'd ask for Stacy Parks Miller to resign right now and not hold the county hostage."

B. Defendant Glantz publically substantiated the false allegations against Plaintiff by suggesting: "The evidence has been mounting, it didn't just come out today. It's been coming out the past month or so."

C. [Not relevant to the instant motion]

D. The County Defendants baselessly suggested that the District Attorney and the judiciary would retaliate against Shutt: "The commissioners said anyone who faces retaliation needs to let the commissioners, Glantz or the courts know, as it will not be tolerated. 'You have an obligation to protect that employee,' Glantz said. 'Every citizen in Centre County has a right to know,' Dershem said." (The irony of this statement should not go unnoticed since protecting an assistant district attorney from being murdered by an already once convicted murderer was precisely what DA Parks Miller, the Attorney General, and the State Police were trying to do in the first place.)

E. Referring to the Plaintiff and Judge Brad

Lunsford, Defendant Dershem stated: "We have two individuals here, their actions have shaken the confidence of the citizens."

¶ 115.   Upon information and belief, Defendant Dershem said to Defendant Ruest at a going away party for the Court Administrator, Maxine Ishler, in January of 2015: "I am going to get Stacy Parks Miller if it is the last thing I do."

¶ 116.   In a January 22, 2015 article entitled, "Centre DA: I didn't forge bail order," which was posted on Lockhaven.com, Commissioner Exarchos said that "based on when the affidavit was filed, charges should already have been filed, but it seems law enforcement seems to be 'treading lightly,'…'If that were you or me…I think we would've been guests of our own jail or something,' Exarchos said."

¶ 118.   [O]n Saturday, January 24, 2015, officers from the Bellefonte Police Department executed a search warrant at the Centre County District Attorney's Office and publically seized physical items from Plaintiff's office.

¶ 134.   On multiple occasions, the County Commissioner Defendants and the Lawyer Defendants appeared on television, in print media, and online media and gave interviews, with actual malice, and a reckless disregard for the truth, and have initiated and/or advanced a false, defamatory, and unethical attack against Plaintiff alleging criminal wrongdoing on Plaintiff's part.

¶ 135.   Even on July 31, 2015, after a grand jury exonerated Plaintiff, the two majority commissioners, Defendants Exarchos and Dershem, still clung to the absurd and patently defamatory claim that Plaintiff, the chief law

enforcement officer in the County, is a criminal, and continued to make public statements to that effect.

¶ 136.   The following comments appeared in an August 3, 2015 article entitled, "Commissioner Plans to Call for County Attorney's Resignation," posted on the website StateCollege.com:

    A. "Exarchos disputes the grand jury's conclusions.  He says he still believes that Michelle Shutt – the former paralegal to Parks Miller who made the forgery allegations – was telling the truth when she claimed that Parks Miller signed Judge Pamela Ruest's signature on a court order."

    B. "'I believe Shutt is telling truth,' Exarchos says.  'When she signed that affidavit, she had to know for sure, otherwise she would've had real risk for legal trouble.'"

    C. "Dershem also says he doubts the report's conclusions.  He suggests the impartiality of the attorney general's investigation, which ultimately led to the grand jury report, may have somehow been compromised, " given the district attorney's relationship: with Attorney General Kathleen Kane."

¶ 137.   Defendant Glantz also publically mischaracterized Plaintiff's relationship with Attorney General Kane (whom she has only met on two occasions, once when AG Kane was sworn into office and all of Pennsylvania's 67 district attorneys were invited as a matter of protocol and a second time at a state conference of prosecutors), in a January 29, 2015 article entitled, "Solicitor stands by Centre County, Bellefonte investigative efforts vs. District Attorney Stacy Parks Miller,"

which was published on the website of CentreDaily.com: "Glantz also raised concerns over the fairness of involving the Attorney General's Office. Employees of the Attorney General's Office could be called as witnesses, and Glantz brought up a 'long standing and well-known' relationship between Parks Miller and state Attorney Gernal Kathleen Kane.'"

¶ 139.  The third commissioner, Defendant Pipe has publicly apologized to Plaintiff and called for the removal of Defendant Glantz for providing the Board of Commissioners with deplorable legal advice.

¶ 140.  Because the search warrant was not sealed, by design of the County Defendants who had illegally assumed charge of a criminal investigation with a "special prosecutor" waiting in the wings, it was guaranteed there would be massive negative publicity flowing on a weekend and flying around cyberspace at the speed of light before the District Attorney could use the legal process to obtain the return of her property.

¶ 148.  In furtherance of their plan, and directly contrary to the Defendant County's written opinion from its own outside counsel, the County Defendants (the three county commissioners, Solicitor Glantz and Administrator Boyde) illegally released information in response to a Right to Know Law ("RTKL") request for cellular telephone records between members of the Centre County Judiciary and the District Attorney's Office.

¶ 149.   Defendant Glantz directed County Administrator Timothy Boyde and Defendants Exarchos and Dershem to authorize Right-to-Know requests submitted by Defendant Cantorna

11

and other criminal defense lawyers to illegally disseminate "Judicial Records" with the express intent to create, by innuendo alone, the notion that the District Attorney and members of the Centre County Judiciary were conspiring to "fix" criminal cases.

¶ 150. These illegally disseminated records did not exist in the Defendant County's possession.

¶ 151. Nevertheless, the County Defendants caused the records to be created by the cellular phone company and, using county staff and resources, the County Defendants created color-coded spreadsheets to highlight contacts between members of the court and members of the District Attorney's staff.

¶ 152. The specific intent of the County Defendants and the Lawyer Defendants who obtained these records was that the records, containing no verbal content whatsoever, created the appearance that members of the court and members of the DA's Office were "too close," despite there being no evidence to support such a contention.

Parks Miller ultimately asserts eleven counts against one or all of the County defendants: defamation/false light; injurious falsehood; malicious prosecution; common law abuse of process; negligence; professional negligence (legal malpractice); intentional and/or negligent infliction of emotional distress; concerted tortious conduct; conspiracy; due process and equal protection claim pursuant to 42 U.S.C. Section 1983; privacy, due process and equal protection claim

pursuant to 42 U.S.C. Section 1983; and first amendment claim

pursuant to 42 U.S.C. Section 1983.

The Court will take each claim in turn.

c.  Count II Defamation/False Light v All Defendants

i.  Defamation

""Defamation," of which libel, slander, and invasion of privacy are

methods, is the tort of detracting from a person's reputation, or injuring a person's

character, fame, or reputation, by false and malicious statements."[19]  "In an action

for defamation, the plaintiff has the burden of proving ... [t]he defamatory

character of the communication."[20]

Title 42 Pa. Cons. Stat. Ann. § 8343 sets out the elements of the claim as
follows:

> (a) Burden of plaintiff.--In an action for defamation, the plaintiff has the
> burden of proving, when the issue is properly raised:
> (1) The defamatory character of the communication.
> (2) Its publication by the defendant.
> (3) Its application to the plaintiff.
> (4) The understanding by the recipient of its defamatory meaning.
> (5) The understanding by the recipient of it as intended to be
> applied to the plaintiff.
> (6) Special harm resulting to the plaintiff from its publication.
> (7) Abuse of a conditionally privileged occasion.

---

[19] *Cogley v. Duncan*, 32 A.3d 1288 (Pa. Super. Ct. 2011).
[20] *Tucker v. Philadelphia Daily News*, 848 A.2d 113, 123 (Pa. 2004), citing 42 Pa.C.S. § 8343(a).

    (b) Burden of defendant.--In an action for defamation, the defendant has the burden of proving, when the issue is properly raised:
        (1) The truth of the defamatory communication.
        (2) The privileged character of the occasion on which it was published.
        (3) The character of the subject matter of defamatory comment as of public concern.

However, despite Pennsylvania's statue placing the burden of proving truth in a defamation action in on the defendant, the burden on truth/falsity is shifted to the plaintiff when the plaintiff is a public figure.  The defendant must have made the defamatory statement with "actual malice," i.e. with knowledge or reckless disregard to the falsity.[21] "Free speech would be endangered if innocuous statements were found capable of possessing a defamatory meaning. Thus, in deciding whether or not a publication is defamatory, courts should be guided by America's profound 'commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials.''[22]

"To prevent a chilling effect on free speech, the Supreme Court of Pennsylvania has held that 'statements which represent differences of opinion or

---

[21] *See New York Times Co. v. Sullivan* 376 U.S. 254, 11 L. Ed. 2d 686, 84 S. Ct. 710 (1964).
[22] *Redding v. Carlton*, 223 Pa. Super. 136, 139, 296 A.2d 880, 881 (1972) citing *New York Times Company v. Sullivan*, 376 U.S. 254, 270, 84 S.Ct. 710, 721, 11 L.Ed.2d 686 (1964).

14

are annoying or embarrassing, are without more not libelous.'"[23] "Neither is a statement libelous which is 'no more than rehetorical hyperbole' or 'a vigorous epithet' used to describe what the publisher believes to be another's extremely unreasonable position."[24] Furthermore, "[i]t is the function of the court to determine whether the challenged publication is capable of a defamatory meaning."[25]  "If the court determines that the challenged publication is not capable of a defamatory meaning, there is no basis for the matter to proceed to trial."[26]

## Centre County

Centre County itself is immune from liability for this type of claim pursuant to Pennsylvania's Political Subdivision Tort Claims Act.[27] Accordingly, the defamation claim is dismissed as to Centre County.

## Timothy Boyde

Parks Miller did not make any allegations that Boyde made any allegedly defamatory statements about her.  Accordingly, the defamation claim will be dismissed as to Boyde.

---

[23] *Id. citing  Bogash v. Elkins*, 405 Pa. 437, 440, 176 A.2d 677, 679 (1962).
[24] *Id. citing  Greenbelt Cooperative Publishing Ass'n. v. Bresler*, 398 U.S. 6, 14, 90 S.Ct. 1537, 26 L.Ed.2d 6 (1970).
[25] *Tucker v. Philadelphia Daily News*, 848 A.2d 113, 124 (Pa. 2004).
[26] *Id., citing Thomas Merton Center v. Rockwell International Corp*., 442 A.2d 213, 215-16 (Pa. 1981).
[27] *See* 42 Pa.C.S. §§ 8541 and 8542, *see also   Five Star Parking v. Philadelphia Parking Authority,* 662 F.Supp. 1053 (E.D.Pa.1986),   *Balletta v. Spadon*i, 47 A.3d 183, (Cmwlth. Ct. 2012). *Young v. School Dist. of Philadelphia*, 2011 WL 1789916 (Pa. 2011).

*Louis T. Glantz*

The following are the statements alleged in the complaint to have

been made by Glantz:

> ¶ 114.  For example, the following quotes were taken
> from a January 21, 2015 article printed in The Progress
> News, entitled "Centre Co. DA accused of forgery":
> Defendant Glantz publically substantiated the false
> allegations against Plaintiff by suggesting: "The evidence
> has been mounting, it didn't just come out today.  It's
> been coming out the past month or so."…  Glantz or the
> courts know, as it will not be tolerated.  'You have an
> obligation to protect that employee,' Glantz said.  'Every
> citizen in Centre County has a right to know…

> ¶ 137.  Defendant Glantz also publically
> mischaracterized Plaintiff's relationship with Attorney
> General Kane … in a January 29, 2015 article entitled,
> "Solicitor stands by Centre County, Bellefonte
> investigative efforts vs. District Attorney Stacy Parks
> Miller," which was published on the website of
> CentreDaily.com: "Glantz also raised concerns over the
> fairness of involving the Attorney General's Office.
> Employees of the Attorney General's Office could be
> called as witnesses, and Glantz brought up a 'long
> standing and well-known' relationship between Parks
> Miller and state Attorney General Kathleen Kane.'"

None of the statements alleged to have been made by Glantz are

defamatory.  Parks Miller has not even alleged facts of "[t]he defamatory

character of the communication."[28]  "It is the function of the trial court to

determine whether a challenged publication is capable of a defamatory

---

[28] *Tucker v. Philadelphia Daily News*, 848 A.2d 113, 123 (Pa. 2004), *citing* 42 Pa.C.S. § 8343(a).

meaning."[29] Providing truthful, neutral information about an ongoing investigation is not defamatory, and certainly cannot be considered to be done with 'actual malice' as there is no falsity in the statements. "[T]he plaintiff must focus on the editorial process and prove a false publication attended by some degree of culpability."[30] "If the court determines that the challenged publication is not capable of a defamatory meaning, there is no basis for the matter to proceed to trial."[31]

Glantz made truthful, and, frankly, rather innocuous statements about an ongoing criminal investigation. In contrast, the following statement was found to be slanderous of a district attorney in the case of *Fox v. Kahn* from Delaware County, Pennsylvania. There, defendant stated at a public meeting: "This is as to law and justice. We had a murder down here in Trainer and the District Attorney picked up a young weak-minded fellow and got a confession out of him; it was a simple way he got it, he put him in a room by himself and beat it out of him with a telephone Book."[32] The *Fox* defendant later admitted he knowingly made the statement and that it was untrue.

---

[29] *Green v. Mizner*, 692 A.2d 169, 172 (Pa. Super. Ct. 1997*) citing Maier v. Maretti*, 448 Pa.Super. 276, , 671 A.2d 701, 704 (1995); *Livingston v. Murray*, 417 Pa.Super. 202, , 612 A.2d 443, 446, *alloc. den*., 533 Pa. 601, 617 A.2d 1275 (1992).
[30] *Herbert v. Lando*, 441 U.S. 153, 176, 99 S.Ct. 1635, 1648, 60 L.Ed.2d 115 (1979).
[31] *Thomas Merton Center v. Rockwell International Corp*., 442 A.2d 213, 215-16 (Pa. 1981).
[32] *Fox v. Kahn*, 421 Pa. 563, 565, 221 A.2d 181, 182 (1966).

In the matter at hand, there is a marked difference from the statements in *Fox*, where the defendant falsely stated that a district attorney physically abused a suspect in order to obtain a confession, and the factual, rather bland statements of Glantz.   Nothing Glantz said is untrue, nor do Glantz's statements have a defamatory characterization.   Accordingly, the defamation claim against Glantz will be dismissed.

## C. Chris Exarchos

The first statements alleged in the complaint to have been made by Exarchos are:

> ¶ 116.  In a January 22, 2015 article entitled, "Centre DA: I didn't forge bail order," which was posted on Lockhaven.com, Commissioner Exarchos said that "based on when the affidavit was filed, charges should already have been filed, but it seems law enforcement seems to be 'treading lightly,'…'If that were you or me…I think we would've been guests of our own jail or something,' Exarchos said."

Exarchos is immune from suit for the statements in paragraph 116 based on Pennsylvania's statutory official immunity, which immunizes him from suit for "claims arising from, or reasonably related to, the office of the performance of the duties of the employee."[33]  "This sweeping immunity is "not for the benefit of high

---

[33] 42 Pa.C.S. § 8546.  *See also LaVerdure v. County of Montgomery*, 324 F.3d 123 (3d Cir. 2003) (Holding that "a commissioner is entitled to absolute immunity for his statements" pursuant to this statute).

public officials, but for the benefit of the public."[34] "Absolute privilege is designed to protect the official from the suit itself, from the expense, publicity, and danger of defending the good faith of his public actions before the jury. And yet, beyond this lies a deeper purpose, the protection of society's interest in the unfettered discussion of public business and in full public knowledge of the facts and conduct of such business."[35]

The statements set forth in paragraph 116 above were all made during the January 20, 2015 Commissioners meeting, falling squarely "within the course of defendants' duties or scope of authority."[36]  As a consequence, insofar as the defamation claim against Exharchos is based on his statements as cited in paragraph 116 of the amended complaint, it is dismissed.

Exharchos allegedly made further statements about Parks Miller.  It is not clear from the amended complaint when or where these statements were made by him.  Therefore, it is not immediately clear to the Court if the immunity applies to the following statements:

> ¶ 136.  The following comments appeared in an August 3, 2015 article entitled, "Commissioner Plans to Call for

---

[34] *McKibben v. Schmotzer*, 700 A.2d 484, 489 (Pa. Super. Ct. 1997) *citing Barto v. Felix*, 250 Pa.Super. 262, 272, 378 A.2d 927, 932 (1977) (Spaeth, J., dissenting), *appeal denied*, 487 Pa. 455, 409 A.2d 857 (1980).

[35] *Id. Citing Montgomery v. City of Philadelphia*392 Pa. 178, 188, 140 A.2d 100, 103 (1958).

[36] *Zugarek v. S. Tioga Sch. Dist.*, 214 F. Supp. 2d 468, 479 (M.D. Pa. 2002) (McClure, J.)

County Attorney's Resignation," posted on the website
StateCollege.com: "Exarchos disputes the grand jury's
conclusions. He says he still believes that Michelle Shutt
– the former paralegal to Parks Miller who made the
forgery allegations – was telling the truth when she
claimed that Parks Miller signed Judge Pamela Ruest's
signature on a court order." "'I believe Shutt is telling
truth,' Exharchos says. 'When she signed that affidavit,
she had to know for sure, otherwise she would've had
real risk for legal trouble.'"

It would appear that Exarchos's statements in paragraph 136 of the

amended complaint are statements of opinion. He has stated he chooses to

believe the affiant over the finding of the grand jury. Statements of opinion

are not defamation. "Whether a particular statement is opinion or fact is a

question of law for the trial court."[37]  I find that the statements therefore fall

within the gambit of opinion, and the defamation claim as to Exarchos will

be dismissed.

_Steven Dershem_

The following are the statements alleged in the complaint to have

been made by Dershem:

¶ 114 For example, the following quotes were taken from
a January 21, 2015 article printed in The Progress News,
entitled "Centre Co. DA accused of forgery": …'Every
citizen in Centre County has a right to know,' Dershem
said."… Referring to the Plaintiff and Judge Brad
Lunsford, Defendant Dershem stated: "We have two

---

[37] _Green v. Mizner,_ 692 A.2d 169, 174 (Pa. Super. Ct. 1997).

individuals here, their actions have shaken the confidence
of the citizens."

Dershem is also immune from suit for the statements in paragraph 116,

based on Pennsylvania's statutory official immunity, which immunizes him from

suit for "claims arising from, or reasonably related to, the office of the performance

of the duties of the employee."[38]  As stated above, "[t]his sweeping immunity is

"not for the benefit of high public officials, but for the benefit of the public."[39]

"Absolute privilege is designed to protect the official from the suit itself, from the

expense, publicity, and danger of defending the good faith of his public actions

before the jury. And yet, beyond this lies a deeper purpose, the protection of

society's interest in the unfettered discussion of public business and in full public

knowledge of the facts and conduct of such business."[40]

The statements in paragraph 116 by Dershem were all made during the

January 20, 2015 Commissioners meeting, falling squarely "within the course of

defendants' duties or scope of authority."[41]  Accordingly, to the extent that the

---

[38] 42 Pa.C.S. § 8546.  *See also LaVerdure v. County of Montgomery*, 324 F.3d 123 (3d Cir. 2003)
(Holding that "a commissioner is entitled to absolute immunity for his statements" pursuant to
this statute).
[39] *McKibben v. Schmotzer*, 700 A.2d 484, 489 (Pa. Super. Ct. 1997) *citing Barto v. Felix*, 250
Pa.Super. 262, 272, 378 A.2d 927, 932 (1977) (Spaeth, J., dissenting), *appeal denied*, 487 Pa.
455, 409 A.2d 857 (1980).
[40] *Id. Citing Montgomery v. City of Philadelphia,* 392 Pa. 178, 188, 140 A.2d 100, 103 (1958).
[41] *Zugarek v. S. Tioga Sch. Dist.*, 214 F. Supp. 2d 468, 479 (M.D. Pa. 2002) (McClure, J.)

21

defamation claim against Dershem is based on his statements as cited in paragraph 116 of the amended complaint, it is dismissed.

Dershem allegedly made further statements about Parks Miller in paragraphs 115 and 136 of the amended complaint.  It is also not clear when or where the statements in paragraph 136 were made by Dershem.  As a consequence, it is not immediately clear to the Court if the immunity applies:

> ¶ 115.  Upon information and belief, Defendant Dershem said to Defendant Ruest at a going away party for the Court Administrator, Maxine Ishler, in January of 2015: "I am going to get Stacy Parks Miller if it is the last thing I do."

> ¶ 136.  The following comments appeared in an August 3, 2015 article entitled, "Commissioner Plans to Call for County Attorney's Resignation," posted on the website StateCollege.com:  "Dershem also says he doubts the report's conclusions.  He suggests the impartiality of the attorney general's investigation, which ultimately led to the grand jury report, may have somehow been compromised, " given the district attorney's relationship: with Attorney General Kathleen Kane."

"Whether a challenged statement is capable of defamatory meaning is a question of law for the court to determine in the first instance."[42]  "To state a cause of action for defamation, a complaint must contain averments of fact which, if proven, would establish, (1) the defamatory character of the communication; (2) its

---

[42] Feldman v. Lafayette Green Condo. Ass'n, 806 A.2d 497, 500 (Pa. Commw. Ct. 2002).

publication by the defendant; (3) a reference to the plaintiff; (4) a recipient's understanding of the communication's defamatory character and its application to plaintiff; (5) special harm resulting from the publication; and (6) abuse of any conditional privilege."[43] "Additionally, because [plaintiff] was a local public official[44], [s]he must aver that defendants acted with "actual malice" ; that is, knowledge or reckless disregard of the falsity of the objectionable statements."[45]

If true, the allegations in paragraph 115, asserting that Dersham stated "I am going to get Stacy Parks Miller" is unwise, but far from defamatory. His criticisms of the grand jury investigation are also not defamatory toward Parks Miller. They are, instead, critical of the Attorney General of Pennsylvania and the grand jury process, but not defamatory of Parks Miller. Accordingly, the defamation claim against Dersham will be dismissed in its entirety.

*Michael Pipe*

The following are the statements alleged in the complaint to have been made by Pipe:

---

[43] *Smith v. Wagner*, 403 Pa. Super. 316, 321, 588 A.2d 1308, 1311 (1991) *citing* 42 Pa.C.S. § 8343(a). *See also: Agriss v. Roadway Express, Inc*., 334 Pa.Super. 295, 304, 483 A.2d 456, 461 (1984).
[44] Counsel has conceded, both in his papers and at oral argument, that Parks Miller is a public figure, subject to the 'actual malice' standard.
[45] *New York Times v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964); *Curran v. Philadelphia Newspapers, Inc.*, 497 Pa. 163, 439 A.2d 652 (1981).

¶ 114.  For example, the following quotes were taken from a January 21, 2015 article printed in The Progress News, entitled "Centre Co. DA accused of forgery": Defendant Pipe publically called for the immediate resignation of District Attorney Parks Miller: "If this is true, then I'd ask for Stacy Parks Miller to resign right now and not hold the county hostage." Defendant Pipe publically called for the immediate resignation of District Attorney Parks Miller: "If this is true, then I'd ask for Stacy Parks Miller to resign right now and not hold the county hostage."

Pipe is likewise immune from suit based on Pennsylvania's statutory official immunity, which immunizes him from suit for "claims arising from, or reasonably related to, the office of the performance of the duties of the employee."[46]  As noted yet again, "[t]his sweeping immunity is "not for the benefit of high public officials, but for the benefit of the public."[47] "Absolute privilege is designed to protect the official from the suit itself, from the expense, publicity, and danger of defending the good faith of his public actions before the jury. And yet, beyond this lies a deeper purpose, the protection of society's interest in the unfettered discussion of

---

[46] 42 Pa.C.S. § 8546.  *See also LaVerdure v. County of Montgomery*, 324 F.3d 123 (3d Cir. 2003) (Holding that "a commissioner is entitled to absolute immunity for his statements" pursuant to this statute).

[47] *McKibben v. Schmotzer*, 700 A.2d 484, 489 (Pa. Super. Ct. 1997) *citing Barto v. Felix*, 250 Pa.Super. 262, 272, 378 A.2d 927, 932 (1977) (Spaeth, J., dissenting), *appeal denied*, 487 Pa. 455, 409 A.2d 857 (1980).

public business and in full public knowledge of the facts and conduct of such business."[48]

The statements by Pipe were all made during the January 20, 2015 Commissioners meeting, falling precisely "within the course of defendants' duties or scope of authority."[49]  The defamation claim is therefore also dismissed as to Pipe as he is immune from this claim.


ii.  <u>False Light</u>

As with the claim for defamation, Centre County itself is immune from liability for false light pursuant to Pennsylvania's Political Subdivision Tort Claims Act.[50]  Accordingly, the false light claim is dismissed as to Centre County.

Pennsylvania recognizes the tort of false light invasion of privacy, and has adopted the Restatement (Second) of Torts definition of it.

> § 652E. Publicity Placing Person In False Light
> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if
> (a) the false light in which the other was placed would be highly offensive to a reasonable person, and
> (b) the actor had knowledge of or acted in reckless

[48] *Id. Citing Montgomery v. City of Philadelphia* 392 Pa. 178, 188, 140 A.2d 100, 103 (1958).
[49] *Zugarek v. S. Tioga Sch. Dist.*, 214 F. Supp. 2d 468, 479 (M.D. Pa. 2002) (McClure, J.)
[50] *See* 42 Pa.C.S. §§ 8541 and 8542.

disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

"Significantly, unlike the law of defamation, false light invasion of privacy offers redress not merely for the publication of matters that are provably false, but also for those that, although true, are selectively publicized in a manner creating a false impression."[51] "It is not, however, necessary to the action for invasion of privacy that the plaintiff be defamed."[52] "It is enough that he is given unreasonable and highly objectionable publicity that attributes to him characteristics, conduct or beliefs that are false, and so is placed before the public in a false position."[53] "When this is the case and the matter attributed to the plaintiff is not defamatory, the rule here stated affords a different remedy, not available in an action for defamation."[54]

"In order to prevail on this theory of false light invasion of privacy, appellant must show discriminate publication of true statements, that is, appellees must have created a false impression by knowingly or recklessly publicizing selective pieces of true information."[55] "[I]t applies only when the defendant knows that the plaintiff, as a reasonable man, would be

---

[51] *Krajewski v. Gusoff*, 2012 PA Super 166, 53 A.3d 793, 806 (2012).
[52] Restatement (Second) Torts § 652E Cmt. b (Relation to defamation.).
[53] *Id.*
[54] *Id.*
[55] *Krajewski v. Gusoff*, 2012 PA Super 166, 53 A.3d 793, 807 (2012).

justified in the eyes of the community in feeling seriously offended and aggrieved by the publicity."[56]

The tort of false light is committed then when someone tells part of the story, and selects the worst parts of the story to make another look bad. I do not find that Parks Miller has stated a claim that any of the County defendants placed her in a false light or that truthful information about an ongoing investigation would have been highly offensive to a reasonable person. The information these defendants are alleged to have publicized about Parks Miller was truthful , concise, and not selective. The details were not edited in such a way as to place Parks Miller in a false light.

Most importantly, the information disseminated by these Defendants was of legitimate concern to the public. "Additionally, [plaintiff's] stature in the community as a public figure resulted in a relinquishment of insulation from scrutiny of [her] public affairs."[57] In *Santillo v. Reedel*, the Superior Court of Pennsylvania explained that confirming an investigation about a criminal allegation of a candidate for district judge was of legitimate public concern. The *Santillo* court stated:

> As candidate for district justice, he sought a position that
> would enable him to judge the conduct of others and

---

[56] Restatement (Second) Torts § 652E Cmt. c (Highly offensive to a reasonable person).
[57] *Neish v. Beaver Newspapers, Inc.,* 398 Pa. Super. 588, 598, 581 A.2d 619, 624-25 (1990) (internal citations omitted).

> determine whether that conduct was in conformity with the law. A claim that he violated the law was relevant and newsworthy. Whether or not the substance of the complaint was true, Reedel and Piermatteo's confirmation of the complaint and the ensuing investigation presented a matter of public concern, therefore, appellant's claim of publicity to private life must fail[58].

Although the fact scenario here deals with publicity surrounding a criminal investigation of an elected district attorney, and not a candidate for district justice, the holding can be extrapolated to engender the same result. The false light claim will therefore be dismissed as to all the county defendants.

    d.  <u>Count III: Injurious Falsehood v All Defendants</u>

As an initial matter, Centre County is again immune from liability for this type of claim pursuant to Pennsylvania's Political Subdivision Tort Claims Act.[59]  The injurious falsehood claim is therefore dismissed as to Centre County.

"[I]njurious falsehood, is the false and malicious representation of the title or quality of another's interest in goods or property."[60]  Pennsylvania has adopted RESTATEMENT (SECOND) OF TORTS §623A dealing with

---

[58] *Santillo v. Reedel*, 430 Pa. Super. 290, 295, 634 A.2d 264, 266 (1993).

[59] *See* 42 Pa.C.S. §§ 8541 and 8542.

[60] *Pro Golf Mfg., Inc. v. Tribune Review Newspaper Co.*, 570 Pa. 242, 247, 809 A.2d 243, 246 (2002).

injurious falsehood.[61]  The comment to this section states, in part,

> Injurious falsehood. The general principle stated in this Section is applied chiefly in cases of the disparagement of property in land, chattels or intangible things or of their quality. … The rule is not, however, limited to them. It is equally applicable to other publications of false statements that do harm to interests of another having pecuniary value and so result in pecuniary loss.

Because Parks Miller has not alleged any false statements by any of the County Defendants I cannot permit this claim to survive the motion to dismiss.

### e.  Count IV: Malicious Prosecution v. Exharchos, Dershem, Pipe and Glantz

"Malicious [prosecution] has to do with the wrongful initiation of such process."[62]  "A cause of action for malicious prosecution generally requires proof that the defendant (1) instituted criminal proceedings against the plaintiff (2) without probable cause (3) with malice and (4) that the proceedings terminated in favor of the plaintiff."[63]

"Probable cause is a reasonable ground of suspicion supported by circumstances sufficient to warrant an ordinary prudent man in the same situation

---

[61] *Id.*

[62] *Rosen v. Am. Bank of Rolla*, 426 Pa. Super. 376, 381, 627 A.2d 190, 192 (1993).

[63] *Tomaskevitch v. Specialty Records Corp.*, 717 A.2d 30, 33 (Pa. Commw. Ct. 1998) (internal citation omitted).

in believing that the party is guilty of the offense."[64]   "Absence of probable cause is an indispensable element of the action and it is not conclusively established by an adjudication of [not guilty] in the prior proceedings."[65]   "The showing of probable cause is an absolute defense to a charge of malicious prosecution."[66] "A private person initiates or procures the institution of criminal proceedings "by making a charge before a public official or body in such form as to require the official or body to determine whether process shall or shall not be issued against the accused.""[67]   "A private person initiates or procures the institution of criminal proceedings "by making a charge before a public official or body in such form as to require the official or body to determine whether process shall or shall not be issued against the accused.""[68]   "In order to charge a private person with responsibility for the initiation of proceedings by a public official, it must therefore appear that his desire to have the proceedings initiated, expressed by direction, request or pressure of any kind, was the determining factor in the official's decision to commence the prosecution, or that the information furnished by him upon which the official acted was known to be false."[69]

---

[64] *Id.*
[65] *Id.*
[66] *Id.*
[67] *Ogborne v. Brown*, 1999 U.S. Dist. LEXIS 15908, *18 (E.D. Pa. Oct. 13, 1999) (internal citation omitted).
[68] *Id.*
[69] *Id.* at *22.

The second element, "without probable cause" has not been alleged.  In point of fact, precisely the opposite has been alleged.  Plaintiff repeatedly refers to Michelle Shutt's affidavit, attached to the complaint.[70]   Clearly, this affidavit provides sufficient probable cause to support the search warrant signed by a neutral and detached judge.  Moreover, the grand jury investigation was not instituted by the Defendants, but Parks Miller herself.[71]   Parks Miller only makes vague conclusory allegations that "The Defendants exerted political, financial and/or other pressure on the Bellefonte Police Department local law enforcement to investigate and seek an illegal prosecution of District Attorney Parks Miller."[72]

After *Iqbal*, conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss."[73]   Regardless of whether Parks Miller bases her retaliation claim on the search warrant that was issued, or the subsequent grand jury investigation, the malicious prosecution claim fails as a matter of law.

      f.   <u>Common Law Abuse of Process v. Exharchos, Dershem, Pipe, Glantz, Boyde</u>

"[A]n action for abuse of process is the improper use of process after it has been issued, that is, a perversion of it."[74]   "The tort of "abuse of process" is defined

---

[70] ECF No. 25-2 at 2.
[71] ECF No. 25 at ¶ 93 and 111.
[72] ECF No. 25 at ¶ 98.
[73]  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (Nygaard, J.).
[74] *Rosen v. Am. Bank of Rolla*, 426 Pa. Super. 376, 381, 627 A.2d 190, 192 (1993).

as the use of legal process against another "primarily to accomplish a purpose for which it is not designed."[75]   "To establish a claim for abuse of process it must be shown that the defendant (1) used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was not designed; and (3) harm has been caused to the plaintiff."[76]   ""The significance of [the word 'primarily'] is that there is no action for abuse of process when the process is used for the purpose for which it is intended, but there is an incidental motive of spite or an ulterior purpose of benefit to the defendant."[77]

Parks Miller has simply alleged no facts to state a claim of abuse of process. The search and grand jury investigation were both undertaken for their proper purposes – to investigate allegations of criminality.  There is no evidence that any of the County Defendants were involved in the investigation after it was begun, and there is certainly no evidence that the process was used against her for a reason other that for which it was designed.  The abuse of process claim will be dismissed.

g.  Count VI: Negligence v. Glantz  and Count VII Professional Negligence (Legal Malpractice) v. Glantz

Despite Parks Miller's assertions, the Court holds that no attorney/client relationship existed between Glantz and Parks Miller.  "In

---

[75] *Id. citing* Restatement (Second) of Torts, § 682.
[76] *Id.*
[77] *Id.*

order to establish a claim of legal malpractice, a plaintiff/aggrieved client must demonstrate three basic elements:1) employment of the attorney or other basis for a duty;2) the failure of the attorney to exercise ordinary skill and knowledge; and3) that such negligence was the proximate cause of damage to the plaintiff."[78]

Parks Miller has not provided any evidence to support the contention that the county solicitor was her attorney, so as to form the basis of an attorney-client relationship as a foundation for a legal malpractice or negligence claim against him. Parks Miller's counsel acknowledged during oral argument that he was independently hired as her attorney. Furthermore, a county solicitor "is [] the legal adviser of the board (of commissioners) with regard to the performance of their duties and shall represent them in legal proceedings in which the board is involved."[79] Here, Glantz was the solicitor to the board of commissioners, not to the district attorney. Accordingly, both negligence and professional negligence against Glantz will be dismissed in their entirety.[80]

---

[78] *Kituskie v. Corbman*, 552 Pa. 275, 281, 714 A.2d 1027, 1029 (1998).
[79] *Com. ex rel. Foreman v. Hampson*, 393 Pa. 467, 474, 143 A.2d 369, 372 (1958).
[80] Counsel for the County Defendants made a second argument, that, if the Court were to find that Glantz was Parks Miller's counsel, the Court should nevertheless dismiss the claim as Glantz would be immune from suit. Title 42 Pa.C.S. § 8542(b) provides that a government employee is immune from negligence based theories of liability to the same extent that the County would be immune.  However, the parties did not brief or argue whether or not Glantz as Centre County Solicitor should be considered to be an employee of that County.  The Court takes

h. <u>Count VII:  Intentional and/or Negligent Infliction of Emotional Distress v All Defendants</u>

i. <u>Intentional Infliction of Emotional Distress</u>

As noted above, as an initial matter, Centre County itself is immune from liability for this type of claim pursuant to Pennsylvania's Political Subdivision Tort Claims Act.[81]   Accordingly, the intentional infliction of emotional distress claim is dismissed as to Centre County.

Pennsylvania law states that "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm."[82] I conclude that the intentional infliction of emotional distress claim is merely a repackaged defamation claim, and will be dismissed for the same reasons as set forth above.

ii. <u>Negligent Infliction of Emotional Distress</u>

It is well-established that government employees are immune from

---

no position on this issue, and as I have held that Glantz was not Parks Miller's counsel, the issue is decided as discussed in the body of the Memorandum Opinion.   The issue of whether or not Glantz was an employee of Centre County is best left for another day.
[81] *See* 42 Pa.C.S. §§ 8541 and 8542.
[82] *Britt v. Chestnut Hill Coll.*, 429 Pa. Super. 263, 272, 632 A.2d 557, 561 (1993) *citing* Restatement (Second) of Torts, § 46(1).

suit for certain negligent acts.[83]  "Section 8542(b) provides that a local

governmental agency is immune from any suit based upon the negligent acts

of the agency or an employee, unless the cause of action relates to one of

eight categories: (1) vehicle liability; (2) the care, custody or control of

personal property; (3) the care, custody or control of real property; (4) trees,

traffic controls and street lighting; (5) utility service facilities; (6) streets; (7)

sidewalks; or (8) the care, custody or control of animals."[84]  "An employee

of a local agency is liable for civil damages on account of any injury to a

person or property caused by acts of the employee which are within the

scope of his office or duties only to the same extent as his employing local

agency and subject to the limitations imposed by this subchapter."[85]

Therefore, because the County would be immune for negligent infliction of

emotional distress, so to are the County defendants.  This claim is therefore

dismissed.

> i.  Count IX: Concerted Tortious Conduct v All Defendants

Centre County itself is again immune from liability for this type of

---

[83] 42 Pa.CS. 8542.  However, "An agency employee loses PSTCA immunity if his conduct constituted a "crime, actual fraud, actual malice or willful misconduct." Pelzer v. City of Philadelphia, 656 F. Supp. 2d 517, 539 (E.D. Pa. 2009) citing 42 Pa. Con. Stat. Ann. § 8550.
[84] *Moser v. Bascelli*, 865 F. Supp. 249, 253 (E.D. Pa. 1994).
[85] 42 Pa.C.S. § 8545.

claim pursuant to Pennsylvania's Political Subdivision Tort Claims Act.[86]

Accordingly, the concerted tortious conduct claim is dismissed as to Centre

County.

"[C]oncerted tortious action, as defined in Section 876 of the Restatement

(Second) of Torts, is a recognized civil cause of action under Pennsylvania law."[87]

This section states:

§ 876. Persons Acting in Concert

For harm resulting to a third person from the tortious conduct of
another, one is subject to liability if he
(a) does a tortious act in concert with the other or pursuant to a
common design with him, or
(b) knows that the other's conduct constitutes a breach of duty and
gives substantial assistance or encouragement to the other so to
conduct himself, or
(c) gives substantial assistance to the other in accomplishing a tortious
result and his own conduct, separately considered, constitutes a breach
of duty to the third person.

In her papers, Parks Miller makes it clear that her claim is based on

subsection (a) of the Restatement.[88] In light of the fact that all of the

underlying torts have been dismissed, this claim must also be dismissed.

j. <u>Count X: Conspiracy v All Defendants</u>

---

[86] *See* 42 Pa.C.S. §§ 8541 and 8542.
[87] *Sovereign Bank v. Valentino*, 2006 PA Super 338, ¶ 30, 914 A.2d 415, 427 (2006).
[88] Pl.'s Br. ECF No. 50 at 33.

Centre County itself is immune from liability for this type of claim pursuant to Pennsylvania's Political Subdivision Tort Claims Act.[89] The conspiracy claim is therefore dismissed as to Centre County.

"[A]bsent a civil cause of action for a particular act, there can be no cause of action for civil conspiracy to commit that act."[90]  Because all of the other underlying claims have been dismissed, this claim will be dismissed, as well.

> k. <u>Count XI: Due Process and Equal Protection Claim Pursuant to 42 U.S.C. Section 1983 v. Exarchos, Dershem, Pipe Glantz, Boyde and Centre County</u>

The Defendants have requested that this Court find that they are immune from suit on the federal claims.  Our Supreme Court in *Saucier v. Katz* stated that the privilege is "an *immunity from suit* rather than a mere defense to liability."[91]  "A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional

---

[89] *See* 42 Pa.C.S. §§ 8541 and 8542.
[90] *Pelagatti v. Cohen*, 370 Pa. Super. 422, 432, 536 A.2d 1337, 1342 (1987).
[91] *Saucier v. Katz*, 533 U.S. 194, 200, 121 S. Ct. 2151, 2156, 150 L. Ed. 2d 272 (2001).

right?"[92]   However, I need not address the issue of qualified immunity, as Parks Miller has failed to state a claim.

In her papers, Parks Miller clarified that despite the title of the claim including the words "equal protection," she limits her argument to due process. Consequently, the Court treats count XI as I believe Parks Miller intended it to be treated – as a Due Process claim under both the liberty and property interest clauses.[93]   The Court reviews each interest in turn.

### i.   Liberty Interest in Reputation

"An individual has a protected interest in his or her reputation."[94]   To make out a due process claim for deprivation of a liberty interest in reputation, a plaintiff must show a stigma to his reputation plus deprivation of some additional right or interest."[95]

Our Court of Appeals has held that the stigma-plus test applies when an employer "creates and disseminates a false and defamatory impression about the employee in connection with his termination."[96] The creation and dissemination of

---

[92] *Id.*

[93] *See* Pl.'s Br. ECF No. 48 at 24-28.

[94] *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971) ("Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential.").

[95] *Hill v. Borough of Kutztown*, 455 F.3d 225, 236 (3d Cir. 2006) (citing Paul v. Davis, 424 U.S. 693, 701 (1976)).

[96] *Hill*, 455 F.3d at 236.

38

Case 4:15-cv-01754-MWB   Document 80   Filed 05/11/16   Page 39 of 46

a false and defamatory impression is the "stigma," and the termination[or constructive discharge] is the "plus."[97] "Stigma to reputation alone, absent some accompanying deprivation of present or future employment, is not a liberty interest protected by the fourteenth amendment."[98]

Parks Miller has failed to state a claim for a loss of liberty interest in her reputation because, while she has pled the "stigma" element, there is no corresponding "plus" element.  She did not lose her job; nor was she constructively discharged from the position by  leaving the job. She remains, in fact, the District Attorney of Centre County.  Insofar as the Due Process claim asserted in Count XI is based on a liberty interest in reputation, it is dismissed.

ii.  Property Interest in District Attorney position

Additionally, as an elected official, Parks Miller does not have a property interest in her office, and to the extent that her due process claim rests on a property interest, it will be dismissed, as well.  "Elected officials lack such a protected property interest in their elected offices because "'public offices are mere agencies or trusts, ... not property.'"[99]  "In *Taylor*

---

[97] *Id.*
[98] *Edwards v. California Univ. of Pennsylvania*, 156 F.3d 488, 492 (3d Cir. 1998).
[99] *LaPointe v. Winchester Bd. of Ed.*, 366 F. App'x 256, 257 (2d Cir. 2010) (internal citation omitted) .

*v. Beckham*,[100] the Supreme Court wrote, "public offices are mere agencies

or trusts, and not property as such."[101] Expanding on that concept, in

*Snowden v. Hughes*,[102] the Supreme Court held that "an unlawful denial by

state action of a right to state political office is not a denial of a right of

property or liberty secured by the due process clause."[103]  Accordingly,

Count XI will be dismissed in its entirety.


  1.  Count XII: Privacy, Due Process and Equal Protection Claim
      Pursuant to 42 U.S.C. Section 1983 v. Exarchos, Dershem,
      Pipe, Glantz, Boyde and Centre County


     Parks Miller has clarified that Count XII is not based on privacy due

process and equal protection.  It is apparently premised instead on a *Fourth

Amendment* search and seizure claim.  For the reasons that follow, it is the

only claim that survives the motion to dismiss, although there are various

deficiencies with the claim as it is presently pled.  Each problem will be

explained in turn so that Parks Miller may appropriately amend her

complaint, should she so choose to do so.

---

[100] 178 U.S. 548 (1900).
[101] Id. at 576.
[102] 321 U.S. 1 (1944).
[103] *Id.* at 7.  Neither *Taylor* nor *Snowden* has been overruled, although their reasoning has been
challenged. *Copeland v. City of Union, Missouri*, No. 4:15-CV-554 (CEJ), 2016 WL 259379, at
*3 (E.D. Mo. Jan. 20, 2016).

First, I will defer my decision on the qualified immunity defense  until

after Parks Miller has amended her complaint to state a claim.

Second, to the extent that Parks Miller is bringing this claim against

Exarachos, Dershem, Pipe, Glantz and Boyde in their official capacities, it is

dismissed.  It may be amended to be brought against them in their individual

capacities only.  "Official-capacity suits,[] "generally represent only another

way of pleading an action against an entity of which an officer is an

agent.""[104]  Like the Eleventh Amendment, "1983 suits [other than those for

injunctive relief] could not be brought against state officials in their official

capacity" because they are redundant."[105]

Third, Parks Miller has failed to allege personal involvement of the

individual Defendants, and she must do so in order to state a claim.

"Personal involvement of defendants in alleged constitutional deprivations is

a prerequisite to an award of damages under Section 1983."[106]  "A defendant

may be personally involved in a constitutional deprivation within the

meaning of 42 U.S.C. § 1983 in several ways."[107]  "The defendant may have

---

[104] *Kentucky v. Graham*, 473 U.S. 159, 165-66, 105 S. Ct. 3099, 3105, 87 L. Ed. 2d 114 (1985) (*citing Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691, 98 S. Ct. 2018, 2036, 56 L. Ed. 2d 611 (1978))
[105] Melo, 912 F.2d at 635 (3d Cir. 1990).
[106] *Williams v. Smith*, 781 F.2d 319, 323 (2nd Cir. 1986).
[107]*Id.*

directly participated in the infraction."[108]  "A supervisory official, after

learning of the violation through a report or appeal, may have failed to

remedy the wrong,"[109]  "A supervisory official may be liable because he or

she created a policy or custom under which unconstitutional practices

occurred, or allowed such a policy or custom to continue,"[110]  "Lastly, a

supervisory official may be personally liable if he or she was grossly

negligent in managing subordinates who caused the unlawful condition or

event."[111]  That said, Parks Miller may amend her complaint to specify the

personal involvement that Exarachos, Dershem, Pipe, Glantz and/or Boyde

may have had in the search and seizure, if she is able to do so.

Finally, Parks Miller may amend her complaint as to Centre County.

"A municipality cannot be held liable solely because it employs a

tortfeasor—or, in other words, a municipality cannot be held liable under §

1983 on a respondeat superior theory."[112]  "It is when execution of a

government's policy or custom, whether made by its lawmakers or by those

whose edicts or acts may fairly be said to represent official policy, inflicts

---

[108] *Id.*
[109] *Id.*
[110] *Id.*
[111] *Id.*
[112] *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691, 98 S. Ct. 2018, 2036, 56 L. Ed. 2d 611 (1978)

the injury that the government as an entity is responsible under § 1983"[113]

Therefore, to state a claim against Centre County, Parks Miller must allege a policy or custom of illegal searches and seizures.[114]   Parks Miller has not alleged a policy or custom of illegal searches and seizures, she has only stated legal conclusions, which, pursuant to a proper analysis under *Iqbal/Twombly*, this Court does not consider on a motion to dismiss.  Consider paragraph 290 of the amended complaint, "The actions of Defendant Exarchos, Dershem and Pipe, as Centre County Commissioners had such authority as to make their acts as aforesaid the official government police of Centre County making the County itself liable." Or consider paragraph 296 "The actions of Defendant Exarchos, Dershem and Pipe, as Centre County Commissioners, Administrator Boyde, and Defendant County Solicitor Glantz, had no such authority to engage in acts reasonably foreseeable to result in violations of Plaintiff's Fourth and Fourteenth Amendment protections, and their conduct in concert operated as to make their acts the official government policy of Centre County thus making the County itself liable."  With this analysis in mind, the motion to dismiss will be denied as to Count XII.  The Plaintiff is afforded leave to amend.

---

[113] *Id.* at 694.

[114] Parks Miller's counsel failed to see the irony of bringing this type of claim when questioned at oral argument, and it is not the Court's practice to tell counsel how to proceed.  Parks Miller may amend her complaint to provide facts to assert that the County has a policy or custom of illegal searches and seizures, if she so chooses to do so.

   m. Count XIII: First Amendment Claim Pursuant to 42 U.S.C.
      Section 1983 v. Exarchos, Dershem, Pipe, Glantz, Boyde and
      Centre County

As stated previously, I need not address the qualified immunity

defense, as Parks Miller has failed to state a claim to defend for retaliation in

violation of the First Amendment.  "In general, constitutional retaliation

claims are analyzed under a three-part test."[115]  " Plaintiff must prove (1)

that [it] engaged in constitutionally-protected activity; (2) that the

government responded with retaliation; and (3) that the protected activity

caused the retaliation."[116]

In terms of the elements of this three-part test, Parks Miller alleges that her

constitutionally protected activity, the first element, is based on the  speech and

association clauses of the First Amendment.  Because of her speech and

association "support[ing] judges and candidates who espouse her tough-on-crime

political positions that the Defendants oppose,"[117] the government allegedly

retaliated against her.

In a *First Amendment* retaliation claim where the Plaintiff is alleging a

prosecution was initiated in retaliation for her constitutionally protected activities,

---

[115] *Mun. Revenue Servs., Inc. v. McBlain*, 347 Fed. Appx. 817, 823 (3d Cir. Pa. 2009) (internal citations omitted).
[116] *Id.*
[117] Pl.'s Br. ECF No. 48 at 25 and Amd. Complaint ¶¶ 304-306.

"want of probable cause must be alleged and proven."[118]   Lack of probable cause

has not been alleged; precisely the opposite has been alleged.  Plaintiff repeatedly

refers to Michelle Shutt's affidavit, attached to the complaint.[119]   As discussed

above, the affidavit is sufficient probable cause to support the search warrant

signed by a neutral and detached judge.  Moreover, the grand jury investigation

was not instituted by the Defendants; it was instituted by Parks Miller herself.[120]

Regardless of whether she bases her retaliation claim on the search warrant that

was issued, or the grand jury investigation, it fails as a matter of law.  Count XIII

will be dismissed in its entirety.

n.  Punitive Damages

"[A] municipality is immune from punitive damages under 42 U.S.C. §

1983."[121]   Accordingly, the punitive damages claim will be dismissed as to Centre

County. However, a jury may be permitted to assess punitive damages in a § 1983

action when the defendant's conduct involves reckless or callous indifference to the

plaintiff's federally protected rights, as well as when it is motivated by evil motive

---

[118] *Hartman v. Moore*, 547 U.S. 250, 252, 126 S. Ct. 1695, 1699, 164 L. Ed. 2d 441 (2006); *see also Moore v. Hartman, 571 F.3d 62, 66 (D.C. Cir. 2009) (The lack of probable cause is an essential element in both retaliatory prosecution and malicious prosecution claims.)*
[119] ECF No. 25-2 at 2.
[120] ECF No. 25 at ¶ 93 and 111.
[121] *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271, 101 S. Ct. 2748, 2762, 69 L. Ed. 2d 616 (1981), s*ee also Chestnut v. City of Lowell*, 305 F.3d 18 (1st Cir. 2002).

or intent.[122]   It therefore is premature to dismiss the punitive damages claim as to the individual defendants.

o.   Attorney's Fees

The County defendants moved to dismiss the attorney's fees demand. However, pursuant to 42 U.S.C. § 1988(b) the Court may, in its discretion, award attorneys' fees to the prevailing party in a § 1983 action.  Accordingly, the attorney's fees demand will not be dismissed at this stage in the litigation

p.   Motion to Strike and Motion for a More Definite Statement

I asked counsel for Parks Miller at oral argument if he would be willing to omit the offending portions of the amended complaint if he were permitted to make amendment.  He agreed.

III.   CONCLUSION

For all of the foregoing reasons, the County Defendants Motion to Dismiss will be granted in part and denied in part by Order today's date.

BY THE COURT:


/s Matthew W. Brann
Matthew W. Brann
United States District Judge

---

[122] *Smith v. Wade*, 461 U.S. 30, 30, 103 S. Ct. 1625, 1627, 75 L. Ed. 2d 632 (1983).