IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

STACY PARKS MILLER,                :        Case No. 4:15-CV-1754
                                   :
              Plaintiff,           :        (Judge Brann)
                                   :
       v.                          :
                                   :
PHILIP MASORTI, et. al.,           :
                                   :
              Defendants.          :

## MEMORANDUM OPINION

May 11, 2016

I.     BACKGROUND

On August 25, 2015, the current District Attorney of Centre County,

Stacy Parks Miller, hereinafter "Parks Miller," filed a thirteen count complaint

against twelve defendants in the Court of Common Pleas of that county. It was

removed to this Court two weeks later, and, in response to the motions to dismiss

filed by all Defendants, Parks Miller filed an amended complaint. All of the

various defendants next filed motions to dismiss the amended complaint.  This

Memorandum Opinion concerns Defendant Philip Masorti, hereinafter "Masorti"

an attorney practicing in Centre County.

The motion has been fully briefed, and I held oral argument on the motions

on March 3, 2016.  The matter is now ripe for disposition.  For the reasons that

1

follow I will grant the motion in its entirety.

## II.   DISCUSSION

### a.   Motion to Dismiss Standard of Review

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may file a motion to dismiss for "failure to state a claim upon which relief can be granted." Such a motion "tests the legal sufficiency of a pleading" and "streamlines litigation by dispensing with needless discovery and factfinding."[1] "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law."[2] This is true of any claim, "without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one."[3]

Beginning in 2007, the Supreme Court of the United States initiated what some scholars have termed the Roberts Court's "civil procedure revival" by significantly tightening the standard that district courts must apply to 12(b)(6) motions.[4] In two landmark decisions, *Bell Atlantic Corporation v. Twombly and Ashcroft v. Iqbal*, the Roberts Court "changed . . . the pleading landscape" by "signal[ing] to lower-court judges that the stricter approach some had been taking

---

[1] *In re Hydrogen Peroxide Litigation*, 552 F.3d 305, 316 n.15 (3d Cir. 2008) (Scirica, C.J.) (*quoting Szabo v. Bridgeport Machines, Inc.,* 249 F.3d 672, 675 (7th Cir. 2001) (Easterbrook, J.)). *Neitzke v. Williams,* 490 U.S. 319, 326–27 (1989).

[2] *Neitzke*, 490 U.S. at 326 (*citing Hishon v. King & Spalding,* 467 U. S. 69, 73 (1984)).

[3] *Neitzke*, 490 U.S. at 327.

[4] Howard M. Wasserman, THE ROBERTS COURT AND THE CIVIL PROCEDURE REVIVAL, 31 Rev. Litig. 313 (2012).

was appropriate under the Federal Rules."[5] More specifically, the Court in these two decisions "retired" the lenient "no-set-of-facts test" set forth in *Conley v. Gibson* and replaced it with a more exacting "plausibility" standard.[6]

Accordingly, after *Twombly* and *Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[7] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[8] "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully."[9] Moreover, "[a]sking for plausible grounds . . . calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [wrongdoing]."[10]

The plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[11] No matter

---

[5]  550 U.S. 544 (2007); 556 U.S. 662, 678 (2009). Wasserman, *supra* at 319–20.

[6]  *Iqbal*, 556 U.S. at 670 (*citing Conley v. Gibson*, 355 U.S. 41 (1957)) ("[a]cknowledging that *Twombly* retired the *Conley* no-set-of-facts test").

[7]  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

[8]  *Iqbal*, 556 U.S. at 678.

[9]  *Connelly v. Lane Const. Corp.*, No. 14-3792, 2016 WL 106159, at *3 (3d Cir. Jan. 11, 2016) (Jordan, J.) (internal quotations and citations omitted).

[10]  *Twombly*, 550 U.S. at 556.

[11]  *Iqbal*, 556 U.S. at 679.

the context, however, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"[12]

When disposing of a motion to dismiss, a court must "accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the plaintiff]."[13] However, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions."[14] "After *Iqbal*, it is clear that conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss."[15] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[16]

As a matter of procedure, the United States Court of Appeals for the Third Circuit has instructed that:

> Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps. First, it must tak[e] note of the elements [the] plaintiff must plead to state a claim. Second, it should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, [w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.[17]

---

[12] *Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 557 (internal quotations omitted)).

[13] *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008) (Nygaard, J.).

[14] *Iqbal*, 556 U.S. at 678 (internal citations omitted).

[15] *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (Nygaard, J.).

[16] *Iqbal*, 556 U.S. at 678.

[17] *Connelly*, 2016 WL 106159, at *4 (internal quotations and citations omitted).

### b.  Facts Alleged in the Amended Complaint

The procedural dictate when faced with a motion to dismiss is that the court is to accept the facts alleged as true.  "Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations."  However, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."  That said, the following is a recitation of the allegations according to Parks Miller.

Stacy Parks Miller has been District Attorney of Centre County since 2009.  During the pendency of an investigation of an inmate allegedly attempting to contract someone to murder one of the assistant district attorneys in her office, Parks Miller, together with defense counsel for a second inmate, acting as a prison informant, devised a plan to move the informant to another prison as part of the investigation into the murder attempt.  Parks Miller and the informant's defense counsel decided that they needed what the parties alternately refer to as a "pretend" or "fake" order granting the informant release on bail.  Another defendant in this civil matter, a former paralegal employee of Parks Miller, Michelle Shutt, accused Parks Miller of forging the signature of Judge Pamela Ruest on the pretend bail order. A grand jury investigation against Parks Miller was undertaken which eventually cleared her of any wrongdoing.

The following paragraphs from the amended complaint comprise the allegations against Defendant Masorti.

¶ 10. In 2012, District Attorney Parks Miller initiated an investigation into an alleged drug trafficking ring that resulted in search warrants being served on the office of the Masorti Law Group.

¶ 11.  As a result, a lawyer at the Masorti Law Group was convicted and disbarred for shipping drugs into Masorti's law office and generally trafficking in illegal drugs.

¶  14.  Defendant Shutt eventually took a job with the Masorti Law Group, with a salary exceeding her government salary.

¶  72.  Ten months into the sting operation, Defendant Shutt, the paralegal in the Centre County DA's office who drafted the pretend order, left the DA's office to eventually work for the Masorti Law Group.

¶ 78.  Defendant Shutt fabricated the forgery story about Parks Miller, told it to Defendant Masorti and the other Lawyer Defendants, and was rewarded with a position in Defendant Masorti's law firm.  Defendant Shutt never took her allegations directly to any law enforcement agency on her own volition.

¶ 79.  Upon information and belief, Defendant Masorti had planned to run for the District Attorney's Office against Plaintiff or for her position if she ultimately resigned.

¶ 80.  In a stunning breach of loyalty and confidentiality that endangered an ongoing criminal investigation, Shutt subsequently forwarded at least two of the highly sensitive stolen e-mails  containing the details of the sting operation and the pretend bail order signed by Defendant Ruest from her personal Gmail account to an e-mail account at the Masorti Law Group.

¶ 81.   Instead of returning or destroying the clearly misappropriated documents – as was their duty under the law and as members of the Pennsylvania Bar – one or more of the Lawyer Defendants assisted Defendant Shutt in drafting a false sworn affidavit and encouraged her to further disclose these stolen and highly confidential documents by attaching them to the affidavit as exhibits. A true and correct copy of the affidavit and stolen e-mails is attached as "Exhibit B."

¶ 87.   After the Lawyer Defendants ensured that Defendant Ruest would no longer pose an obstacle to their scheme, Defendant Masorti, without warning, investigation, or so much as providing District Attorney Parks Miller with a chance to respond, filed a complaint with the Bellefonte Borough Police alleging that Plaintiff had "forged" Judge Ruest's name on the pretend court order releasing Albro.

¶ 89.   In addition to the forgery allegations, Masorti and Shutt alleged that Plaintiff had improperly allocated County resources to her re-election bid in 2013.

¶ 92.   Defendant Masorti could hardly contain his malice when he later explained in an January 27, 2015 article entitled, "Stacy Parks Miller Accuses Centre County Commissioners of Conspiracy," posted on StateCollege.com: "Masorti acknowledges that he has been an outspoken critic of Parks Miller for her use of what he describes as 'unseemly and sordid tactics…' 'I had a duty to report wrongdoing that I had learned of, and I did that.  The fact that I did it with relish is of no consequence.'"

"Generally, consideration of a motion to dismiss under Rule 12(b)(6) is limited to consideration of the complaint itself."[18]  Typically, to consider materials

---

[18] *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006).

outside the complaint, it must be converted to a motion for summary judgment.[19] However, "[c]onsideration of materials outside the complaint is not entirely foreclosed on a 12(b)(6) motion."[20]   It is permissible to consider full text of documents partially quoted in complaint.[21]   It is also permissible to consider documents relied upon by plaintiff in drafting the complaint and integral to the complaint.[22]   "However, before materials outside the record may become the basis for a dismissal, several conditions must be met."[23]    "For example, even if a document is "integral" to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document."[24]   It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.[25]

I find that all of the conditions addressed above are met and I will consider the statements by Masorti published in a January 27, 2015 news article posted to the website StateCollege.com for purposes of this motion to dismiss without converting it into a motion for summary judgment.  These statements are, as follows:

---

[19] *See id.* and Fed. R. Civ. P. 12(d).

[20] *Faulkner*, 463 F.3d at 134.

[21] *San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos*., 75 F.3d 801, 808–09 (2d Cir.1996).

[22] *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47–48 (2d Cir.1991).

[23] *Faulkner*, 463 F.3d at 134.

[24] *Id, See also  e.g., Kaempe v. Myers*, 367 F.3d 958, 965 (D.C.Cir.2004); *Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co.,* 267 F.3d 30, 33 (1st Cir.2001).

[25] *Faulkner*, 463 F.3d at 134.

> Masorti acknowledges that he has been an outspoken critic of Parks Miller for her use of what he describes as "unseemly and sordid tactics." However, he says that his personal feelings have no bearing on the allegations that she forged a judge's signature.
>
> "I had a duty to report wrongdoing that I had learned of, and I did that.  The fact that I did it with relish is of no consequence, " Masorti says.  "But to suggest that I joined some kind of conspiracy with other people, some of whom I've never talked to, is absurd."[26]

As a result of these allegations, Plaintiff filed the instant complaint against several Defendants, including Masorti. Parks Miller brings seven claims against Masorti: breach of fiduciary duty of loyalty/duty of loyalty, defamation/false light, injurious falsehood, negligence, intentional and/or negligent infliction of emotional distress, concerted tortious conduct, and conspiracy.

    c.  <u>The counts against Masorti</u>

        i.  <u>Breach of fiduciary duty of loyalty/duty of loyalty</u>

Pennsylvania as adopted the Restatement (Second) of Agency view of breach of fiduciary duty/duty of loyalty.[27] "Unless otherwise agreed, an agent is subject to a duty not to act or to agree to act during the period of his

---

[26] January 27, 2015 article from the website statecollege.com entitled "Stacy Parks Miller Accuses Centre County Commissioners of  Conspiracy, Retaliation." Found at http://www.statecollege.com/news/local-news/stacy-parks-miller-accuses-centre-county-commissioners-of-conspiracy-retaliation,1462578/   (last accessed April 6, 2016) .
[27] *See Reading Radio, Inc. v. Fink*, 833 A.2d 199 (Pa. Super. Ct. 2003).

agency for persons whose interests conflict with those of the principal in matters in which the agent is employed."[28] With that standard in mind, there is simply no basis upon which this Court could find that Masorti is an agent of Parks Miller such that he has a duty toward her.  Fiduciary duty is "a confidential relationship between two parties can give rise to fiduciary duties owed by one to the other."[29]  There is no evidence that Masorti was in a confidential relationship with Parks Miller such that this burden should be placed on him.

Parks Miller's pleading suggests the opposite, in fact.  The amended complaint consists of 311 vitriolic paragraphs, filled with extraneous background information, seemingly designed to evince an unnecessary motive for Defendants to dislike her. In those paragraphs, she makes it clear that Masorti frequently opposes her professionally as a criminal defense attorney.  "To impose upon an attorney a duty of care to the adverse party would place the attorney in a position where his own interest would conflict with the interests of his client and prevent him from exerting a maximum effort on behalf of the client."[30]

In her briefs, Parks Miller clarifies her claim of breach of fiduciary

---

[28] Restatement (Second) of Agency § 394 (1958).
[29] *PTSI, Inc. v. Haley*, 2013 PA Super 130, 71 A.3d 304, 311 (2013).
[30] *Aetna Electroplating Co. v. Jenkins*, 335 Pa. Super. 283, 287, 484 A.2d 134, 137 (1984).

duty in that she asserts Masorti aided and abetted a breach of fiduciary duty by Defendant Michelle Shutt, who asserted that she witnessed Parks Miller forge Judge Ruest's signature on the pretend bail order.   While this may be the strongest of Parks Miller's aiding and abetting claims against the attorneys as a collective group, because Shutt is now Masorti's employee, it fails as a matter of law.

"Under Pennsylvania law, the elements that must be proven in order to maintain a claim for aiding and abetting a breach of fiduciary duty are: (1) a breach of a fiduciary duty owed to another; (2) knowledge of the breach by the aider and abettor; and (3) substantial assistance or encouragement by the aider and abettor in effecting that breach."[31] "In other words, "[i]n order to be found liable for aiding and abetting a breach of a fiduciary duty, one must demonstrate that the party knew that the other's conduct constituted a breach of a fiduciary duty and gave substantial assistance or encouragement to the other in committing that breach."[32]

Parks Miller has not plead facts to convince the Court that there is

---

[31] *Synthes, Inc. v. Emerge Med., Inc.*, 25 F. Supp. 3d 617, 674-75 (E.D. Pa. 2014) *citing Reis v. Barley, Snyder, Senft & Cohen*, 667 F.Supp.2d 471, 492 (E.D.Pa.2009).

[32] *Id.  citing Bd. of Trs. of Teamsters Local 863 Pension Fund v. Foodtown, Inc.,* 296 F.3d 164, 174 (3d Cir.2002) (claim for aiding and abetting breach of fiduciary duties under ERISA); *see also* RESTATEMENT (SECOND) TORTS § 876, cmt. to subsection (b) (1979) ("If the encouragement or assistance is a substantial factor in causing the resulting tort, the one giving it is himself a tortfeasor and is responsible for the consequences of the other's act.").

factual support for her contention that Masorti encouraged Shutt to forward two emails to her personal account.  Morever, they were hardly confidential emails, as they were copied to at least eleven people. I cannot find that Shutt 'stole' confidential information, when this informaiton was copied to no less than eleven individuals, both inside and outside the District Attorney's Office.  This claim has failed as to Shutt, and it must also fail as to Masorti. There is no aiding and abetting liability if there is no underlying wrongdoer.

Consequently, there is no basis upon which to base a duty springing from Masorti to Parks Miller.  Nor may Parks Miller's alternate theory that Masorti aided and abetted Shutt survive.  Count I alleging Breach of Fiduciary Duty of Loyalty/Duty of Loyalty will therefore be dismissed as to Defendant Masorti.

### 2.   Defamation/false light

#### i.   Defamation

The only statements by Masorti that meet the publication element of a defamation claim are the paragraphs reported on the statecollege.com website as copied in above.  However, this claim fails because the Court finds as a matter of law that the first element is not met – i.e., the statements are not of a defamatory character.

"Whether a challenged statement is capable of defamatory meaning is

a question of law for the court to determine in the first instance."   "To state

a cause of action for defamation, a complaint must contain averments of fact

which, if proven, would establish, (1) the defamatory character of the

communication; (2) its publication by the defendant; (3) a reference to the

plaintiff; (4) a recipient's understanding of the communication's defamatory

character and its application to plaintiff; (5) special harm resulting from the

publication; and (6) abuse of any conditional privilege."   "Additionally,

because [plaintiff] was a local public official , [s]he must aver that

defendants acted with "actual malice" ; that is, knowledge or reckless

disregard of the falsity of the objectionable statements."

   Some statements are considered to be per se defamatory in

Pennsylvania.  "Statements by a defendant imputing to the plaintiff a

criminal offense, punishable by imprisonment, or conduct incompatible with

the plaintiff's business constitute slander per se."    However, a complaint

cannot survive if there is a privilege attached to the communication.  In

explaining the sixth element of defamation, abuse of a privilege, the

Superior Court of Pennsylvania has explained privilege, as follows:

> However, a publisher of defamatory matter is not liable if
> the publication was made subject to a privilege, and the
> privilege was not abused.   Restatement  §  593.
> "Communications made on a proper occasion, from a
> proper motive, in a proper manner, and based upon
> reasonable cause are privileged." Beckman v. Dunn, 276

> Pa.Superior Ct. 527, 536, 419 A.2d 583, 587 (1980); see also Baird v. Dun & Bradstreet, Inc., 446 Pa. 266, 275, 285 A.2d 166, 171 (1971). An occasion giving rise to a conditional privilege occurs when (1) some interest of the publisher of the defamatory matter is involved; (2) some interest of the recipient of the matter, or a third party, is involved; or (3) a recognized interest of the public is involved. Beckman v. Dunn, supra at 536, 419 A.2d at 587. Although the defendant in a defamation action ordinarily bears the burden of establishing a privilege to publish defamatory matter, 42 Pa.C.S.A. § 8343(b)(2), where a conditional privilege is evidenced, as here, in the plaintiff's complaint, the plaintiff will be nonsuited unless he can prove abuse of the privilege.  Baird v. Dun & Bradstreet, Inc., supra at 275, 285 A.2d at 171; Rankin v. Phillippe, 206 Pa.Superior Ct. 27, 32, 211 A.2d 56, 58 (1965).

Statements of opinion are not defamation.  "Whether a particular statement is opinion or fact is a question of law for the trial court."[33] Although using the phrase "unseemly and sordid tactics" may be a questionable choice of words, "it is not sufficient if the words are merely embarrassing or annoying to the plaintiff."  It is certainly not uncommon for opposing counsel to be critical of one another.  What Masorti expressed was his displeasure at opposing counsel's techniques, perhaps using less than ideal language, but not words that should rise to the level of liability for defamation. Masorti's "expression of his disapproval of [Parks Miller's] practice is a statement of opinion not founded on defamatory facts and

---

[33] *Green v. Mizner,* 692 A.2d 169, 174 (Pa. Super. Ct. 1997).

therefore not actionable, even if it may be annoying or embarrassing."

Although Parks Miller argues that the statements are per se defamatory

because they impute to her a criminal offense, she overlooks the fact that she

was being investigated for a criminal offense at that time.   Accordingly, the

defamation claim against Masorti cannot survive.

## ii.  False Light

I am also compelled to dismiss the false light claim.  Pennsylvania

recognizes the tort of false light invasion of privacy, and has adopted the

Restatement (Second) of Torts definition of it.

> § 652E. Publicity Placing Person In False Light
> One who gives publicity to a matter concerning another
> that places the other before the public in a false light is
> subject to liability to the other for invasion of his privacy,
> if
> (a) the false light in which the other was placed would be
> highly offensive to a reasonable person, and
> (b) the actor had knowledge of or acted in reckless
> disregard as to the falsity of the publicized matter and the
> false light in which the other would be placed.

"Significantly, unlike the law of defamation, false light invasion of

privacy offers redress not merely for the publication of matters that are

provably false, but also for those that, although true, are selectively

publicized in a manner creating a false impression."[34]   "It is not, however,

---

[34] *Krajewski v. Gusoff*, 2012 PA Super 166, 53 A.3d 793, 806 (2012).

necessary to the action for invasion of privacy that the plaintiff be

defamed."[35]   "It is enough that he is given unreasonable and highly

objectionable publicity that attributes to him characteristics, conduct or

beliefs that are false, and so is placed before the public in a false position."[36]

"When this is the case and the matter attributed to the plaintiff is not

defamatory, the rule here stated affords a different remedy, not available in

an action for defamation."[37]

     "In order to prevail on this theory of false light invasion of privacy,

appellant must show discriminate publication of true statements, that is,

appellees must have created a false impression by knowingly or recklessly

publicizing selective pieces of true information."[38]   "[I]t applies only when

the defendant knows that the plaintiff, as a reasonable man, would be

justified in the eyes of the community in feeling seriously offended and

aggrieved by the publicity."[39]

     In sum, the tort of false light is committed when someone tells only

part of the story, while selectively editing it to make the other look bad.  I

do not find that Parks Miller has stated a claim that Masorti placed her in a

---

[35] Restatement (Second) Torts § 652E Cmt. b (Relation to defamation.).
[36] *Id.*
[37] *Id.*
[38] *Krajewski v. Gusoff*, 2012 PA Super 166, 53 A.3d 793, 807 (2012).
[39] Restatement (Second) Torts § 652E Cmt. c (Highly offensive to a reasonable person).

false light or that his opinion about her practices, combined with truthful

information about an ongoing criminal investigation, would have been

highly offensive to a reasonable person.  I also do not find that the story he

advanced was edited down to place Parks Miller in a false light.

But perhaps most importantly, the information disseminated was of

legitimate concern to the public.  "Additionally, [plaintiff's] stature in the

community as a public figure resulted in a relinquishment of insulation from

scrutiny of [her] public affairs."[40]   In a similar, albeit not identical case, the

Superior Court of Pennsylvania explained that confirming an investigation

about a criminal allegation of a candidate for district judge was of legitimate

public concern:

> As candidate for district justice, he sought a position that
> would enable him to judge the conduct of others and
> determine whether that conduct was in conformity with
> the law. A claim that he violated the law was relevant
> and newsworthy. Whether or not the substance of the
> complaint was true, Reedel and Piermatteo's
> confirmation of the complaint and the ensuing
> investigation presented a matter of public concern,
> therefore, appellant's claim of publicity to private life
> must fail.[41]

Although the fact scenario here deals with publicity surrounding a

---

[40] *Neish v. Beaver Newspapers, Inc.,* 398 Pa. Super. 588, 598, 581 A.2d 619, 624-25
(1990) (internal citations omitted).

[41] *Santillo v. Reedel*, 430 Pa. Super. 290, 295, 634 A.2d 264, 266 (1993).

criminal investigation of an elected district attorney, and not a candidate for district justice, the holding can be extrapolated to engender the same result. The false light claim will therefore be dismissed as to Masorti.

### 3. Injurious falsehood

"[I]njurious falsehood, is the false and malicious representation of the title or quality of another's interest in goods or property."[42]   Pennsylvania has adopted RESTATEMENT (SECOND) OF TORTS §623A dealing with injurious falsehood,[43] the comment for which states, in pertinent part:

> Injurious falsehood. The general principle stated in this Section is applied chiefly in cases of the disparagement of property in land, chattels or intangible things or of their quality. … The rule is not, however, limited to them. It is equally applicable to other publications of false statements that do harm to interests of another having pecuniary value and so result in pecuniary loss.

In light of the fact that Parks Miller has not alleged any false statements by Masorti, this claim cannot survive the motion to dismiss.

### 4. Negligence

The negligence claim against the various lawyer defendants, Masorti included, is the least comprehensible claim advanced by Parks Miller.  In Pennsylvania, the elements of negligence are standard -- duty, breach, causation,

---

[42] *Pro Golf Mfg., Inc. v. Tribune Review Newspaper Co.*, 570 Pa. 242, 247, 809 A.2d 243, 246 (2002).
[43] *Id.*

18

and damages.[44]  "It is well established that in determining the existence of a duty of

care, it must be remembered that the concept of duty amounts to no more than "the

sum total of those considerations of policy which led the law to say that the

particular plaintiff is entitled to protection" from the harm suffered ... To give it

any greater mystique would unduly hamper our system of jurisprudence in

adjusting to the changing times."[45] "The determination of whether a duty exists in a

particular case involves the weighing of several discrete factors which include: (1)

the relationship between the parties; (2) the social utility of the actor's conduct; (3)

the nature of the risk imposed and foreseeability of the harm incurred; (4) the

consequences of imposing a duty upon the actor; and (5) the overall public interest

in the proposed solution."[46]

Neither the amended complaint nor the briefs make clear how Masorti could

possibly be deemed to have a duty of care toward Parks Miller. She provides no

citations to case law to support a legal duty springing from Masorti to her.  I am

not independently aware of case law that supports this theory.  Counsel at oral

argument stated that the lawyer defendants have a duty because they did not return

documents Shutt gave to them; defense attorneys should realize there is no forgery

if there is no mens rea; and defense attorneys should have understood handwriting

---

[44] *See Williams v. Syed*, 782 A.2d 1090 (Commw. Ct. 2001).

[45] *Althaus ex rel. Althaus v. Cohen*, 562 Pa. 547, 552, 756 A.2d 1166, 1168-69 (2000) (internal citation omitted).

[46] *Id.* at 553.

analysis.  I can also find no case law to support these notions.  As the most recent issue of the THE BENCHER magazine concisely advises, "Do not invent law."[47]

The Pennsylvania Superior Court  in a matter entitled *Campo v. St. Luke's Hospital*[48] explained how to determine if a duty should be established.

> When considering the question of duty, it is necessary to determine "whether a defendant is under any obligation for the benefit of the particular plaintiff ... and, unless there is a duty upon the defendant in favor of the plaintiff which has been breached, there can be no cause of action based upon negligence." *Tri-County Big Brothers*, 692 A.2d at 584 (*quoting Hoffman v. Sun Pipe Line Co*., 394 Pa.Super. 109, 113-15, 575 A.2d 122, 125 (1990)).
>
> "Whether a duty exists is ultimately a question of fairness. The inquiry involves a weighing of the relationship of the parties, the nature of the risk and the public interest in the proposed solution." *Brandjord v. Hopper*, 455 Pa.Super. 426, 429-31, 688 A.2d 721, 723 (1997) (*citing Cruet v. Certain-Teed Corp*., 432 Pa.Super. 554, 556-58, 639 A.2d 478, 479 (1994)). "Our duty analysis depends on many factors and is 'necessarily rooted in public policy considerations, i.e., our ideas of history, morals, justice, and society in general in determining where the loss should fall.' " *Althaus v. Cohen,* 710 A.2d 1147, 1152 (Pa.Super.1998), appeal granted, 556 Pa. 701, 729 A.2d 1124 (1998), (*quoting Gardner v. Consolidated Rail Corp.,* 524 Pa. 445, 455, 573 A.2d 1016, 1020 (1990)).
>
> Moreover, duty, as a concept, is a flexible notion. "In determining the existence of a duty of care, it must be remembered that the concept of duty amounts to no more than

---

[47] Gabriela Acosta, Caitlin Barnes, Bren Chambers, Caitlin Wain, and Tessie Smith, *The View from WAY Behind the Bench*,  THE BENCHER, March/April 2016, at 21.
[48] *Campo v. St. Luke's Hosp*., 2000 PA Super 155, ¶ 10, 755 A.2d 20, 24 (2000).

'the sum total of those considerations of policy which led the law to say that the particular plaintiff is entitled to protection' from the harm suffered." *Troxel v. A.I. Dupont Institute*, 450 Pa.Super. 71, 82, 675 A.2d 314, 319-320 (1996), *quoting Gardner by Gardner v. Consolidated Rail Corp.*, 524 Pa. 445, 454-455, 573 A.2d 1016, 1020 (1990), *quoting Sinn v. Burd*, 486 Pa. 146, 164, 404 A.2d 672, 681 (1979). Furthermore, "duty is only a word with which we state our conclusion that there is or is not to be liability; it necessarily begs the question...." Id. "To give it any greater mystique would unduly hamper our system of jurisprudence in adjusting to the changing times." *Id. Huddleston v. Infertility Center of America, Inc.*, 700 A.2d 453, 457-58 (Pa.Super.1997).

Finally, a duty arises only when one engages in conduct which foreseeably creates an unreasonable risk of harm to others. Id. at 457. It is "[o]nly when the question of foreseeability is undeniably clear may a court rule as a matter of law that a particular defendant did not have a duty to a particular plaintiff." *Tri-County Big Brothers*, 692 A.2d at 584; *Hoffman*, 575 A.2d at 125. *See Palsgraf v. Long Island Railroad Co.*, 248 N.Y. 339, 162 N.E. 99 (1928).

Again, with this standard in mind, I find no basis upon which to support finding of a duty from Masorti to Parks Miller. Her negligence claim as to him is merely a reformulated defamation claim.   Because there is no duty, this count cannot survive a motion to dismiss.[49]

### 5.   Intentional and/or negligent infliction of emotional distress
#### a.   NIED

---

[49]" If the court finds no duty of care is owed, the negligence count is decided as a matter of law." 57A Am. Jur. 2d Negligence § 74, *citing Mans v. Peoples Bank of Imboden,* 340 Ark. 518, 10 S.W.3d 885 (2000).

"[T]the cause of action for negligent infliction of emotional distress is restricted to four factual scenarios: (1) situations where the defendant had a contractual or fiduciary duty toward the plaintiff; (2) the plaintiff was subjected to a physical impact; (3) the plaintiff was in a zone of danger, thereby reasonably experiencing a fear of impending physical injury; or (4) the plaintiff observed a tortious injury to a close relative."[50] The only possible basis for this claim is based on the first element, and as stated above, there is no fiduciary duty running from Masorti to Parks Miller.  Accordingly, the claim of negligence infliction of emotional distress will be dismissed as to Masorti.

### b. IIED

"One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm."[51] Likewise, I cannot find that Parks Miller has alleged any "extreme or outrageous conduct" on the part of Masorti, nor would discovery aid her in amending her complaint as to him.  Masorti's statements were all truthful and benign.  Parks

---

[50] *Toney v. Chester Cty. Hosp.*, 2008 PA Super 268, ¶ 14, 961 A.2d 192, 197-98 (2008) *aff'd*, 614 Pa. 98, 36 A.3d 83 (2011).
[51] *Britt v. Chestnut Hill Coll.*, 429 Pa. Super. 263, 272, 632 A.2d 557, 561 (1993) *citing* Restatement (Second) of Torts, § 46(1).

Miller has failed to state a claim for intentional infliction of emotional distress as to Masorti, and this claim will be dismissed.

### 6.   Concerted tortious conduct

"[C]oncerted tortious action, as defined in Section 876 of the Restatement (Second) of Torts, is a recognized civil cause of action under Pennsylvania law."[52] This section states

> § 876. Persons Acting in Concert
>
> For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he
>
> (a) does a tortious act in concert with the other or pursuant to a common design with him, or
>
> (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or
>
> (c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person.

In her papers, Parks Miller makes it clear that her claim is based on subsection (a) of the Restatement.[53]  In light of the fact that all of the underlying torts have been dismissed as to Masorti, this claim will be dismissed, as well.

### 7.   Conspiracy

---

[52] *Sovereign Bank v. Valentino*, 2006 PA Super 338, ¶ 30, 914 A.2d 415, 427 (2006).
[53] Pl.'s Br. ECF No. 50 at 33.

"[A]bsent a civil cause of action for a particular act, there can be no cause of action for civil conspiracy to commit that act."[54]  In light of the fact that all of the other underlying claims have been dismissed, this claim will also be dismissed.

## III.    CONCLUSION

Defendant Philip Masorti's motion to dismiss will be granted. Moreover, as explained below, the Court will deny Parks Miller further opportunity to amend her complaint, thereby foreclosing her ability to submit a third iteration of what is quite evidently an irrepealably flawed pleading.

Federal Rule of Civil Procedure 15(a), which governs a plaintiff's ability to amend her complaint, instructs that after the window for amendment as a matter of course has closed, a plaintiff may amend her complaint "only with the opposing party's written consent or the court's leave." "The decision to grant or deny leave to amend a complaint is committed to the sound discretion of the district court."[55] "Factors the trial court may appropriately consider in denying a motion to amend include undue delay, undue prejudice to the opposing party, and futility of amendment."[56] For instance, "if the proposed change clearly is frivolous or advances a claim or defense that is

---

[54] *Pelagatti v. Cohen*, 370 Pa. Super. 422, 432, 536 A.2d 1337, 1342 (1987).

[55] *Coventry v. U.S. Steel Corp.,* 856 F.2d 514, 518 (3d Cir. 1988).

[56] *Averbach v. Rival Mfg. Co.*, 879 F.2d 1196, 1203 (3d Cir. 1989) (*quoting Foman v. Davis*, 371 U.S. 178, 182 (1962).

legally insufficient on its face, the court may deny leave to amend."[57]

As it applies to the instant matter, Parks Miller has already amended her complaint once as a matter of course pursuant to Rule 15. Having occurred after the various defendants filed their first motions to dismiss, that amendment effectively rendered those motions moot.  To allow Parks Miller a third bite at the apple would contravene fundamental notions of justice for the following reasons.

First, the unjustifiable delay associated with further amendment and subsequent motions practice would significantly prejudice the Defendant here. To the extent that the Defendants in this matter represent the public or work in private legal practice, a speedy resolution of this politically charged dispute is both efficient and proper. No defendant, whether a representative of the people or a private advocate, should be forced to endure the looming specter of such accusations, particularly where those charges have been judged deficient as a matter of law by a federal tribunal.

Moreover, Parks Miller has already enjoyed the benefit of responding with an amended complaint after reading and considering the arguments raised in the first round of defendants' motions to dismiss. Based upon my

---

[57] *Ross v. Jolly*, 151 F.R.D. 562, 565 (E.D. Pa. 1993) (*citing* 6 Wright, Miller, & Kane, Federal Practice & Procedure: Civil 2d § 1487).  *See also Vosgerichian v. Commodore Int'l Ltd.,* No. Civ. A. 92-CV-4867, 1998 WL 966026, at * 3 (E.D. Pa. Nov 6, 1998) *aff'd sub nom Vosgerichian v. Commodore Int'l*, 191 F.3d 446 (3d Cir. 1999).

review of the claims asserted therein, a third version of the complaint would fare no better; any non-futile allegations that Parks Miller could possibly make should have already been advanced. With the likelihood that Parks Miller could plead an adequate complaint so low at this stage, I find that the certainty of substantial prejudice to the Defendant outweighs any interest Parks Miller might have in filing a further amended complaint.

Nor would discovery remedy the deficiencies in the complaint. A missing piece common to several of the asserted claims in this action is proof of publication. Accordingly, at this juncture, reasonable research and diligence should have already led Plaintiff to discover any published statements made by Masorti. The Court, however, already possesses and has thoroughly considered the complete statements of Masorti as reproduced above. Discovery simply would not be a fruitful endeavor for the kinds of claims that Parks Miller has chosen to advance.

Ultimately, I find that this determination also adheres to the dictates of the federal rules. As amended Federal Rule of Civil Procedure 1 now instructs, "the just, speedy, and inexpensive determination of every action" is the responsibly of both judges and litigants. Permitting amendment merely for the sake of amendment at this point would only further squander valuable time and resources of the Court and the parties. I am unwilling to so

indulge Plaintiff.

BY THE COURT:


/s Matthew W. Brann
Matthew W. Brann
United States District Judge