IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

STACY PARKS MILLER,           :        Case No. 4:15-CV-1754
                              :
          Plaintiff,          :        (Judge Brann)
                              :
     v.                       :
                              :
PAMELA RUEST, et. al.,        :
                              :
          Defendants.         :

## MEMORANDUM OPINION
May 11, 2016

This memorandum opinion addresses the paramaters of lawsuits filed against judges.  The case that Plaintiff has presented falls squarely within the realm of judicial acts; accordingly, the Defendant jurist is absolutely immune from this particular suit and it will be dismissed as to her.

## I.        BACKGROUND

On August 25, 2015, the current District Attorney of Centre County, Stacy Parks Miller, hereinafter "Parks Miller," filed a thirteen count complaint against twelve defendants in the Court of Common Pleas of that county. It was removed to this Court two weeks later, all Defendants filed motions to dismiss, and in response, Parks Miller filed an amended complaint.[1]   All of the various

_____

[1] ECF No. 25.

defendants next filed motions to dismiss the amended complaint.  This Memorandum Opinion concerns the motion of Defendant Pamela Ruest, hereinafter "Judge Ruest," a sitting judge of the Court of Common Pleas of Centre County.

The motion has been fully briefed, and I held oral argument on all motions to dismiss on March 3, 2016.  The matter is now ripe for disposition.  For the reasons that follow I will grant Ruest's motion and dismiss the action as to her.

## II.   DISCUSSION

### a.  Motion to Dismiss Standard of Review

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may file a motion to dismiss for "failure to state a claim upon which relief can be granted." Such a motion "tests the legal sufficiency of a pleading" and "streamlines litigation by dispensing with needless discovery and factfinding."[2] "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law."[3] This is true of any claim, "without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one."[4]

Beginning in 2007, the Supreme Court of the United States initiated what some scholars have termed the Roberts Court's "civil procedure revival" by

---

[2] *In re Hydrogen Peroxide Litigation*, 552 F.3d 305, 316 n.15 (3d Cir. 2008) (Scirica, C.J.) (*quoting Szabo v. Bridgeport Machines, Inc.,* 249 F.3d 672, 675 (7th Cir. 2001) (Easterbrook, J.)). *Neitzke v. Williams,* 490 U.S. 319, 326–27 (1989).

[3] *Neitzke*, 490 U.S. at 326 (*citing Hishon v. King & Spalding,* 467 U. S. 69, 73 (1984)).

[4] *Neitzke*, 490 U.S. at 327.

significantly tightening the standard that district courts must apply to 12(b)(6)

motions.[5] In two landmark decisions, *Bell Atlantic Corporation v. Twombly and*

*Ashcroft v. Iqbal*, the Roberts Court "changed . . . the pleading landscape" by

"signal[ing] to lower-court judges that the stricter approach some had been taking

was appropriate under the Federal Rules."[6] More specifically, the Court in these

two decisions "retired" the lenient "no-set-of-facts test" set forth in *Conley v.*

*Gibson* and replaced it with a more exacting "plausibility" standard.[7]

Accordingly, after *Twombly* and *Iqbal*, "[t]o survive a motion to dismiss, a

complaint must contain sufficient factual matter, accepted as true, to 'state a claim

to relief that is plausible on its face.'"[8] "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged."[9] "Although the

plausibility standard does not impose a probability requirement, it does require a

pleading to show more than a sheer possibility that a defendant has acted

unlawfully."[10] Moreover, "[a]sking for plausible grounds . . . calls for enough facts

to raise a reasonable expectation that discovery will reveal evidence of

---

[5]   Howard M. Wasserman, THE ROBERTS COURT AND THE CIVIL PROCEDURE REVIVAL, 31 Rev.
      Litig. 313 (2012).

[6]   550 U.S. 544 (2007); 556 U.S. 662, 678 (2009). Wasserman, *supra* at 319–20.

[7]   *Iqbal*, 556 U.S. at 670 (*citing Conley v. Gibson*, 355 U.S. 41 (1957)) ("[a]cknowledging that
      *Twombly* retired the *Conley* no-set-of-facts test").

[8]   *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

[9]   *Iqbal*, 556 U.S. at 678.

[10]  *Connelly v. Lane Const. Corp.*, No. 14-3792, 2016 WL 106159, at *3 (3d Cir. Jan. 11, 2016)
      (Jordan, J.) (internal quotations and citations omitted).

[wrongdoing]."[11]

The plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[12] No matter the context, however, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"[13]

When disposing of a motion to dismiss, a court must "accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the plaintiff]."[14] However, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions."[15] "After *Iqbal*, it is clear that conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss."[16] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[17]

As a matter of procedure, the United States Court of Appeals for the Third Circuit has instructed that:

Under the pleading regime established by *Twombly* and *Iqbal*, a court

---

[11] *Twombly*, 550 U.S. at 556.

[12] *Iqbal*, 556 U.S. at 679.

[13] *Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 557 (internal quotations omitted)).

[14] *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008) (Nygaard, J.).

[15] *Iqbal*, 556 U.S. at 678 (internal citations omitted).

[16] *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (Nygaard, J.).

[17] *Iqbal*, 556 U.S. at 678.

reviewing the sufficiency of a complaint must take three steps. First, it must tak[e] note of the elements [the] plaintiff must plead to state a claim. Second, it should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, [w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.[18]

b. Facts Alleged in the Amended Complaint

The procedural dictate when faced with a motion to dismiss is that the court is to accept the facts alleged as true. "Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations."[19] However, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."[20] With that in mind, the following is a recitation of the allegations according to Parks Miller.

Parks Miller has been District Attorney of Centre County since 2009. During the pendency of an investigation of an inmate allegedly attempting to contract someone to murder one of the assistant district attorneys in her office, Parks Miller, together with defense counsel for a second inmate, acting as a prison informant, devised a plan to move the informant to another prison as part of the investigation into the murder for hire.

Parks Miller and the informant's defense counsel decided that they

---

[18]  *Connelly*, 2016 WL 106159, at *4 (internal quotations and citations omitted).
[19] *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)
[20] *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)

needed what the parties alternately and curiously refer to as a "pretend" or "fake" order granting the informant release on bail.  Defendant Michelle Shutt, a paralegal previously employed in the District Attorney's Office, accused Parks Miller of forging the signature of Judge Ruest on the pretend bail order.  A grand jury investigation against Parks Miller was ultimately undertaken.  The grand jury in due course cleared Parks Miller of any wrongdoing.  The underlying litigation then ensued.

The following paragraphs from the amended complaint comprise Parks Miller's claim against Judge Ruest.

> ¶66  District Attorney Parks Miller presented the pretend bail order to Defendant Ruest…

> ¶67  Defendant Ruest listened to Plaintiff's explanation and signed the order without hesitation, since both parties in interest agreed to the proposed modification. [In other words, that the bail order was intended to be fake, and never to be executed.]

> ¶68-71  Plaintiff believes and therefore avers that…a wiretap in Centre County Prison into a solicitation to commit the murder of an assistant district attorney in relation for doing is job is…an unusual event…impossible for any judge to forget.

> ¶83  Defendant Ruest admitted to the grand jury she engage in a conversation with an outsider about an undercover investigation and that she incredibly related to him that she "could not determine" whether or not it was her signature.

> ¶86  Accordingly, Defendant Ruest's purported inability

to remember was tantamount to falsely accusing District Attorney Parks Miller of committing a felony.

¶124    Plaintiff believes and therefore avers that Defendant Ruest recognized her own signature on the pretend bail order.

¶126 Plaintiff believes and therefore avers that Defendant Ruest, acting outside the scope of her official duties and as a private citizen provided false information to the Bellefonte Police Department knowing it was to be used to obtain a search warrant that would embarrass, humiliate, and degrade the Plaintiff.

¶127    Plaintiff believes and therefore avers that Defendant Ruest and any other member of the Centre County Common Pleas Court bench involved in obtaining the search warrant, acted with reckless disregard for the consequences of her/their actions by not sealing the search warrant.

¶128    Plaintiff believes and therefore avers that Defendant Ruest participated in obtaining the services of an out of county common pleas court judge (who would have had the power to seal) to approve the search warrant that ultimately led to such horrific damage to the Plaintiff's reputation in the eyes of her peers, the bench, and the public.

¶178  Amazingly, Judge Ruest testified that she could not recall whether she signed the unique pretend order at the heart of a murder for hire plot involving a Centre county ADA.

¶179  Defendant Ruest made similar statements to both the Bellefonte Police and the Office of Attorney General.

¶180  The statements made by Defendant Ruest were false, as it is inconceivable that Defendant Ruest did not remember signing a pretend order in furtherance of a plan

to catch a potential killer of a Centre County ADA.

¶184   The handwriting experts who studied Defendant Ruest's signature testified independently that the signature on the bail order at issue was unquestionably that of Defendant Ruest.

Specifically, Parks Miller brings claims of defamation/false light, injurious falsehood, malicious prosecution, intentional and/or negligent infliction of emotional distress, concerted tortious conduct, conspiracy, and due process and equal protection under 42 U.S.C. § 1983 against Judge Ruest.

    c.  <u>Judicial Immunity Doctrine</u>

Judges may be sued.  But judges cannot be sued for engaging in judicial tasks.  Judges possess absolute immunity from damages liability for "acts committed within their judicial jurisdiction."[21]   "[T]he factors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity."[22] "Even when such acts are in excess of their jurisdiction,

---

[21] *Pierson v. Ray*, 386 U.S. 547, 554, 87 S. Ct. 1213, 18 L. Ed. 2d 288 (1967).
[22] *Stump v. Sparkman*, 435 U.S. 349, 362, 98 S. Ct. 1099, 55 L. Ed. 2d 331 1978).

and are alleged to have been done maliciously or corruptly."[23]  "The
necessary inquiry in determining whether a defendant judge is immune from
suit is whether at the time he took the challenged action he had jurisdiction
over the subject matter before him."[24]

Judges do not possess absolute immunity with respect to claims
arising from "the administrative, legislative, or executive functions that
judges may on occasion be assigned by law to perform."[25]  "It '[i]s the
nature of the function performed, not the identity of the actor who performed
it, that inform[s] our immunity analysis."[26]  United States Supreme Court
cases make clear that [judicial] immunity is overcome in only two sets of
circumstances. First, a judge is not immune from liability for nonjudicial
actions, i. e., actions not taken in the judge's judicial capacity.[27]  Second, a
judge is not immune for actions, though judicial in nature, taken in the
complete absence of all jurisdiction.[28]

To determine if the actions at issue are functionally judicial, the court
engages in a two-step process.   First, the court must consider whether the

---

[23] *Id.* at 356 (internal citation omitted).
[24] *Id.*
[25] *Forrester v. White*, 484 U.S. 219, 227, 108 S. Ct. 538, 98 L. Ed. 2d 555 (1988).
[26] *Id.* at 229.
[27] *Forrester*, 484 U.S. at 227-229; *Stump*, 435 U.S. at 360.
[28] at 356-357; *Bradley v. Fisher*, 13 Wall. at 351."  *Marangos v. Swett*, 2008 U.S. Dist. LEXIS 89767 (D.N.J. Sept. 29, 2008)

act in question is a function that is "normally performed by a judge."[29] Under this "functionality" inquiry, a court is required to examine the nature and function of the act, rather than the act itself.[30] Even if a particular act is not a function normally performed by a judge, the court must look to the particular act's relation to a general function normally performed by a judge.[31]  Second, in determining whether an act is "judicial," the court must assess the parties' expectations, and whether they dealt with the judge in his or her judicial capacity.[32]

All of the actions alleged by Parks Miller in her amended complaint, namely signing a bail order, discussing that bail order with an attorney, discussing that bail order with an officer investigating it, and asking an out of county judge to sign a search warrant are functions normally performed by a judge.  At oral argument, I asked Plaintiff's counsel to explain how any of these actions were functionally non-judicial.  Counsel had two responses – first that the officer was questioning Judge Ruest as a fact witness, not as a judge; second that it is unlikely that Judge Ruest would not remember signing this particular bail order because it was so unique -- essentially, an assertion that Judge Ruest is lying about her memory.

---

[29] *Marangos v. Swett*, 2008 U.S. Dist. LEXIS 89767 (D.N.J. Sept. 29, 2008).
[30] *Id.*
[31] *Id.*
[32] *Id.*

Despite counsel's assertions, on careful review of Judge Ruests' actions, I find that she had both jurisdiction over the acts performed and that she engaged in only functionally judicial actions.  Signing a bail order, engaging in discussions about it, and assigning a search warrant to a different judge are quintessentially judicial. "That a judge does not ordinarily engage in ex parte communications with counsel - to the alleged detriment of opposing counsel - does not mean that such conduct is nonjudicial. . . . Courts are known to act ex parte."[33]

Even if this Court accepts Parks Miller's assertion that Judge Ruest's lack of recall is untrue, the judge is nevertheless immune from suit because the actions remain functionally judicial. "Thus, even if these ex parte communications occurred as the result of "bias, bad faith, or malice," these judicial actions remain well within the scope of judicial immunity."[34]  "In sum, the analysis of whether an act qualifies for judicial immunity must focus on the general nature of the challenged action, without inquiry into such 'specifics' as the judge's motive or the correctness of his or her decision."[35]

---

[33] *Id, citing Stump, supra.*
[34] *Id.*
[35] *Id. (internal citations omitted).*

## III.   CONCLUSION

Defendant Ruest's motion to dismiss will be granted. Moreover, as explained below, the Court will deny Parks Miller further opportunity to amend her complaint, thereby foreclosing her ability to submit a third iteration of what is quite evidently an irrepealably flawed pleading.

Federal Rule of Civil Procedure 15(a), which governs a plaintiff's ability to amend her complaint, instructs that after the window for amendment as a matter of course has closed, a plaintiff may amend her complaint "only with the opposing party's written consent or the court's leave." "The decision to grant or deny leave to amend a complaint is committed to the sound discretion of the district court."[36] "Factors the trial court may appropriately consider in denying a motion to amend include undue delay, undue prejudice to the opposing party, and futility of amendment."[37] For instance, "if the proposed change clearly is frivolous or advances a claim or defense that is legally insufficient on its face, the court may deny leave to amend."[38]

As it applies to the instant matter, Parks Miller has already amended her complaint once as a matter of course pursuant to Rule 15. Having

---

[36] *Coventry v. U.S. Steel Corp.,* 856 F.2d 514, 518 (3d Cir. 1988).

[37] *Averbach v. Rival Mfg. Co.*, 879 F.2d 1196, 1203 (3d Cir. 1989) (*quoting Foman v. Davis*, 371 U.S. 178, 182 (1962).

[38] *Ross v. Jolly*, 151 F.R.D. 562, 565 (E.D. Pa. 1993) (*citing* 6 Wright, Miller, & Kane, Federal Practice & Procedure: Civil 2d § 1487). *See also Vosgerichian v. Commodore Int'l Ltd.,* No. Civ. A. 92-CV-4867, 1998 WL 966026, at * 3 (E.D. Pa. Nov 6, 1998) *aff'd sub nom Vosgerichian v. Commodore Int'l*, 191 F.3d 446 (3d Cir. 1999).

occurred after the various defendants filed their first motions to dismiss, that amendment effectively rendered those motions moot.  To allow Parks Miller a third bite at the apple would contravene fundamental notions of justice for the following reasons.

First, the unjustifiable delay associated with further amendment and subsequent motions practice would significantly prejudice Defendant Ruest. To the extent that the Defendants in this matter represent the public or work in private legal practice, a speedy resolution of this politically charged dispute is both efficient and proper. No defendant, whether a representative of the people or a private advocate, should be forced to endure the looming specter of such accusations, particularly where those charges have been judged deficient as a matter of law by a federal tribunal.

Moreover, Parks Miller has already enjoyed the benefit of responding with an amended complaint after reading and considering the arguments raised in the first round of defendants' motions to dismiss. Based upon my review of the claims asserted therein, a third version of the complaint would fare no better; any non-futile allegations that Parks Miller could possibly make should have already been advanced. With the likelihood that Parks Miller could plead an adequate complaint so low at this stage, I find that the certainty of substantial prejudice to Defendant Ruest outweighs any interest

13

Parks Miller might have in filing a further amended complaint.

Ultimately, I find that this determination also adheres to the dictates of the federal rules. As amended Federal Rule of Civil Procedure 1 now instructs, "the just, speedy, and inexpensive determination of every action" is the responsibly of both judges and litigants. Permitting amendment merely for the sake of amendment at this point would only further squander valuable time and resources of the Court and the parties. I am unwilling to so indulge Plaintiff.

BY THE COURT:

/s Matthew W. Brann
Matthew W. Brann
United States District Judge