IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

STACY PARKS MILLER,　　　　　:　　Case No. 4:15-CV-1754
　　　　　　　　　　　　　　　:
　　　　　　　Plaintiff,　　　:　　(Judge Brann)
　　　　　　　　　　　　　　　:
　　　v.　　　　　　　　　　　:
　　　　　　　　　　　　　　　:
ANDREW SHUBIN, and　　　　　　:
SEAN MCGRAW, et. al.,　　　　 :
　　　　　　　　　　　　　　　:
　　　　　　　Defendants.　　　:

## MEMORANDUM OPINION

May 11, 2016

## I.　　BACKGROUND

On August 25, 2015, Stacy Parks Miller, hereinafter "Parks Miller," the current District Attorney of Centre County, Pennsylvania, filed a thirteen count complaint against twelve defendants in the Court of Common Pleas of that county. Two weeks later, it was removed to this Court, and, in response to the motions to dismiss of all defendants, Parks Miller filed an amended complaint.[1] This Memorandum Opinion deals only with the motion of Defendants Andrew Shubin and Sean McGraw, hereinafter "Shubin" and "McGraw," both Centre County attorneys.

_____

[1] ECF No. 25.

The motion has been fully briefed, and I held oral argument on the motions on March 3, 2016.  The matter is now ripe for disposition.  For the reasons that follow, I will grant the motion to dismiss of Shubin and McGraw.

## II.   DISCUSSION

### a.   Motion to Dismiss Standard of Review

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may file a motion to dismiss for "failure to state a claim upon which relief can be granted." Such a motion "tests the legal sufficiency of a pleading" and "streamlines litigation by dispensing with needless discovery and factfinding."[2] "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law."[3] This is true of any claim, "without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one."[4]

Beginning in 2007, the Supreme Court of the United States initiated what some scholars have termed the Roberts Court's "civil procedure revival" by significantly tightening the standard that district courts must apply to 12(b)(6) motions.[5] In two landmark decisions, *Bell Atlantic Corporation v. Twombly and Ashcroft v. Iqbal*, the Roberts Court "changed . . . the pleading landscape" by

---

[2]  *In re Hydrogen Peroxide Litigation*, 552 F.3d 305, 316 n.15 (3d Cir. 2008) (Scirica, C.J.) (*quoting Szabo v. Bridgeport Machines, Inc.,* 249 F.3d 672, 675 (7th Cir. 2001) (Easterbrook, J.)). *Neitzke v. Williams,* 490 U.S. 319, 326–27 (1989).

[3]  *Neitzke*, 490 U.S. at 326 (*citing Hishon v. King & Spalding,* 467 U. S. 69, 73 (1984)).

[4]  *Neitzke*, 490 U.S. at 327.

[5]  Howard M. Wasserman, THE ROBERTS COURT AND THE CIVIL PROCEDURE REVIVAL, 31 Rev. Litig. 313 (2012).

"signal[ing] to lower-court judges that the stricter approach some had been taking was appropriate under the Federal Rules."[6] More specifically, the Court in these two decisions "retired" the lenient "no-set-of-facts test" set forth in *Conley v. Gibson* and replaced it with a more exacting "plausibility" standard.[7]

Accordingly, after *Twombly* and *Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[8] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[9] "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully."[10] Moreover, "[a]sking for plausible grounds . . . calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [wrongdoing]."[11]

The plausibility determination is "a context-specific task that requires the

---

[6]  550 U.S. 544 (2007); 556 U.S. 662, 678 (2009). Wasserman, *supra* at 319–20.
[7]  *Iqbal*, 556 U.S. at 670 (*citing Conley v. Gibson*, 355 U.S. 41 (1957)) ("[a]cknowledging that *Twombly* retired the *Conley* no-set-of-facts test").
[8]  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).
[9]  *Iqbal*, 556 U.S. at 678.
[10]  *Connelly v. Lane Const. Corp.*, No. 14-3792, 2016 WL 106159, at *3 (3d Cir. Jan. 11, 2016) (Jordan, J.) (internal quotations and citations omitted).
[11]  *Twombly*, 550 U.S. at 556.

reviewing court to draw on its judicial experience and common sense."[12] No matter the context, however, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"[13]

When disposing of a motion to dismiss, a court must "accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the plaintiff]."[14] However, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions."[15] "After *Iqbal*, it is clear that conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss."[16] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[17]

As a matter of procedure, the United States Court of Appeals for the Third Circuit has instructed that:

> Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps. First, it must tak[e] note of the elements [the] plaintiff must plead to state a claim. Second, it should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, [w]hen there are well-pleaded factual allegations, [the] court

---

[12] *Iqbal*, 556 U.S. at 679.

[13] *Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 557 (internal quotations omitted)).

[14] *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008) (Nygaard, J.).

[15] *Iqbal*, 556 U.S. at 678 (internal citations omitted).

[16] *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (Nygaard, J.).

[17] *Iqbal*, 556 U.S. at 678.

should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.[18]

b. <u>Facts Alleged in the Amended Complaint</u>

The procedural dictate when faced with a motion to dismiss is that the court is to accept the facts alleged as true. "Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations."[19] However, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."[20] That said, the following is a recitation of the allegations according to Parks Miller.

Stacy Parks Miller has been District Attorney of Centre County since 2009. During the pendency of an investigation of an inmate allegedly attempting to contract someone to kill one of the assistant district attorneys in the office, Parks Miller, together with defense counsel for a second inmate, acting as a prison informant, devised a plan to move the informant to another prison as part of the investigation into the murder attempt. Parks Miller and the informant's defense counsel decided that they needed what the parties alternately refer to as a "pretend" or "fake" order granting the informant release on bail.

Another defendant in this civil matter, Michelle Shutt, a former

---

[18]  *Connelly*, 2016 WL 106159, at *4 (internal quotations and citations omitted).

[19] *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).
[20] *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986).

employee of Parks Miller, accused Parks Miller of forging the signature of

Judge Pamela Ruest on the pretend bail order.  A grand jury investigation of

Parks Miller was undertaken which eventually cleared her of any

wrongdoing.

The following paragraphs from the amended complaint comprise the

allegations against Defendants Andrew Shubin and Sean McGraw.

¶82  Attorney Sean McGraw, who subsequently represented Michelle Shutt in connection with her false sworn affidavit along with Defendant Shubin, was the first person to contact Defendant Ruest to inquire about the pretend Order in the sting operation.

¶83  The Grand Jury found that Defendant McGraw was the first person who contacted Defendant Ruest about the Order and he – acting as a defense attorney, who had no connection to the case and no privilege to receive information about an undercover operation – had an *ex parte* conversation with Defendant Ruest about the matter and the Order.

¶84  Upon information and belief, Defendant McGraw pressured Defendant Ruest into taking this position, by incorrectly suggesting that her involvement in such a sting operation would have been improper.

¶155  Defendant Sean McGraw, an attorney associated with the Law Office of Andrew Shubin, upon receiving the illegally obtained records made knowingly false and disingenuous statements that they demonstrated a bias against his clients.

¶192  Furthermore, in a January 20, 2015 article entitled, "District Attorney Stacy Parks Miller accused of forgery," in the Daily Collegian, Defendant Andrew

> Shubin made public statements calling the clear lies of
> Defendant Shutt the "truth" and insinuating that
> Defendant Shutt was actually as whistleblower."

Parks Miller's amended complaint consists of 311 rambling paragraphs, so inartfully pled that the reader can barely discern who said what about Parks Miller in order to substantiate her claims.  I am compelled to consider materials outside of the amended complaint in order to determine what statements were actually made by Defendants Shubin and McGraw.

"Generally, consideration of a motion to dismiss under Rule 12(b)(6) is limited to consideration of the complaint itself."[21]  Typically, to consider materials outside the complaint, it must be converted to a motion for summary judgment.[22] However, "[c]onsideration of materials outside the complaint is not entirely foreclosed on a 12(b)(6) motion."[23]  It is permissible to consider full text of documents partially quoted in complaint.[24]  It is also permissible to consider documents relied upon by plaintiff in drafting the complaint and integral to the complaint.[25]  "However, before materials outside the record may become the basis for a dismissal, several conditions must be met."[26]   "For example, even if a document is "integral" to the complaint, it must be clear on the record that no

---

[21] *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006).

[22] *See id.* and Fed. R. Civ. P. 12(d).

[23] *Faulkner*, 463 F.3d at 134.

[24] *San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 808–09 (2d Cir.1996).

[25] *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47–48 (2d Cir.1991).

[26] *Faulkner*, 463 F.3d at 134.

dispute exists regarding the authenticity or accuracy of the document."[27]  It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.[28]

I find that all of the conditions delineated above are met.  Consequently, I will consider the statements  by Shubin in the January 20, 2015 <u>Daily Collegian</u> newspaper article and at the January 20, 2015 Centre County Commissioners meeting,  considered for purposes of this motion to dismiss without converting it into a motion for summary judgment. McGraw did not apparently make statements to the press.

Despite the inflammatory inferences drawn from paragraph 192 of the amended complaint, the <u>Daily Collegian</u> article states, as follows:

> The office of State College attorney Andrew Shubin is representing Shutt in this matter, according to an emailed press release from the lawyer's office.
>
> "As civil rights lawyers, we are honored to be representing this courageous young woman who came forward to tell the truth at great personal risk," the release reads."
>
> "Ms. Shutt will cooperate fully with the special prosecutor.  She will make no public comment out of respect for the integrity of the investigative process."[29]

---

[27] *Id, See also  e.g., Kaempe v. Myers*, 367 F.3d 958, 965 (D.C.Cir.2004); *Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co.,* 267 F.3d 30, 33 (1st Cir.2001).
[28] *Faulkner*, 463 F.3d at 134.
[29]"District Attorney Stacy Parks Miller accused of forgery" Daily Collegian, last accessed March 16, 2016 at  http://www.collegian.psu.edu/news/crime_courts/article_8b3124fc-a0cd-11e4-ba13-73b8b8809ecb.html

Because Parks Miller did not identify which of the statements made by Shubin at the January 20, 2015 commissioners meeting were the basis for the allegations in the amended complaint, I set forth below the entirety of Shubin's statements.  As noted, McGraw did not make any statements at that meeting, nor does it appear that he ever attended the meeting.

> Mr. Schubin (sic): My name is Andy Schubin (sic).  I'm an attorney.  I practice law with Sean McGraw, who's also  -- was a former prosecutor in the County.
>
> One of the things I think that the Board should – or the Commissioners need to understand is this isn't just from my perspective, because I've done a lot of First Amendment and civil rights cases.   My law firm specialize (sic) in employee rights and civil rights law.
>
> Having the investigation and having a special prosecutor involved is one part of the equation.
>
> Why that is so important is that will give – you are now giving confidence to people who are coming forward that they will be protected.   That wouldn't have existed within the confines of a simple disciplinary counsel investigation.  They wouldn't have felt – they would not – they would have no point of contact, nor would they feel in any way protected by coming forward.  What they said to an Office of Disciplinary Counsel would not necessarily be something that they could stand by, stand in front of and then protect these people when they came forward as whistleblowers, so there's a constitutional issue involved here.  It's a First Amendment issue.
>
> When people come forward to speak on matters of public importance like employees or past employees, they need to feel protected, and the constitution is set up to make

9

that flow of information accessible to our elected officials, and so I think it's – I would like the Commissioners and the special prosecutor, if and when appointed, to be cognizant of the fact that these people are coming forward with great trepidation.

Our law firm represents the whistleblower in this case, and I can tell you that she is absolutely – she has nothing personal to gain here.  These people are coming forward just so that there is transparency and so that they can get a – and they have confidence in the system, just like you want to have confidence in the system, but between now and whenever this is resolved, there is a potential for retaliation, not just against the individuals who potentially would come forward with a threat of prosecution, which is what I think I've heard before, but against attorneys who represent them, against people who speak out on their behalf.

I mean, we have, you know, the most powerful County officials, you know, that are potentially involved here with enormous resources, and so I think that it would be well-served for you to monitor whether there is retaliation and people are worried about it.

I think it's important, and your statements go a long way toward giving people confidence that they can come forward and be protected, but between now and the time this is exposed, this is resolved, there is a lot of exposure potentially for the County if there is retaliation because these are First Amendment  -- there are First Amendment concerns here, and I'd like you to be cognizant of that.  I think it's really important, and I'm not sure exactly the way that you can pay attention and be involved in that loop, but retaliation could be a real big problem if that occurs.

••••••••••••••••••••••••••••••••••••••••••••••••••••

Well, as a citizen of the County, I'm grateful for the steps that you're taking and the courage that you're showing in

> moving forward in a very sort of innovative and
> unprecedented way.

Eight claims are brought against Shubin and McGraw in the amended complaint: breach of fiduciary duty of loyalty/duty of loyalty, defamation/false light, injurious falsehood, common law abuse of process, negligence, intentional and/or negligent infliction of emotional distress, concerted tortious conduct, and conspiracy.

### c. The counts against Shubin and McGraw

#### i. Breach of Fiduciary Duty of Loyalty/Duty of Loyalty

Pennsylvania has adopted the Restatement (Second) of Agency view of breach of fiduciary duty/duty of loyalty.[30] "Unless otherwise agreed, an agent is subject to a duty not to act or to agree to act during the period of his agency for persons whose interests conflict with those of the principal in matters in which the agent is employed."[31] With that in mind, there is simply no basis upon which this Court could find that either Shubin or McGraw are agents of Parks Miller such that either has a duty toward her. Fiduciary duty is "a confidential relationship between two parties can give rise to fiduciary

---

[30] *See Reading Radio, Inc. v. Fink*, 833 A.2d 199 (Pa. Super. Ct. 2003).

[31] Restatement (Second) of Agency § 394 (1958).

11

duties owed by one to the other."[32]  There is no evidence that either Shubin

or McGraw was in a confidential relationship with Parks Miller such that

this burden should be or could be placed on either of them.

Parks Miller's pleading evidences the opposite.  The amended

complaint details, *ad nauseum,* extraneous background information, spiked

with vitriol, seemingly designed to evince a completely unnecessary motive

for Defendants to dislike her. In those paragraphs, Parks Miller makes it

clear that Shubin and McGraw are frequently opposing criminal defense

counsel.  "To impose upon an attorney a duty of care to the adverse party

would place the attorney in a position where his own interest would conflict

with the interests of his client and prevent him from exerting a maximum

effort on behalf of the client."[33]

Her claim of breach of fiduciary duty is modestly clarified in her brief

in that she asserts that Shubin and McGraw aided and abetted a breach of

fiduciary duty by Defendant Michelle Shutt, who asserted that she witnessed

Parks Miller forge Judge Ruest's signature on the pretend bail order.  "Under

Pennsylvania law, the elements that must be proven in order to maintain a

claim for aiding and abetting a breach of fiduciary duty are: (1) a breach of a

fiduciary duty owed to another; (2) knowledge of the breach by the aider and

---

[32] *PTSI, Inc. v. Haley*, 2013 PA Super 130, 71 A.3d 304, 311 (2013).
[33] *Aetna Electroplating Co. v. Jenkins*, 335 Pa. Super. 283, 287, 484 A.2d 134, 137 (1984).

abettor; and (3) substantial assistance or encouragement by the aider and abettor in effecting that breach."[34] "In other words, "[i]n order to be found liable for aiding and abetting a breach of a fiduciary duty, one must demonstrate that the party knew that the other's conduct constituted a breach of a fiduciary duty and gave substantial assistance or encouragement to the other in committing that breach."[35]

Parks Miller has failed to plead facts to convince the Court that there is factual support for her contention that either Shubin or McGraw encouraged Shutt to forward two emails to her personal account prior to her departure from the district attorney's office to work for co-defendant, Philip Masorti.  Given that the complaint was originally filed in the Court of Common Pleas, with a demanding fact pleading standard[36], I find that her claims do not even survive the lesser plausibility standard required in federal court.

"A claim has facial plausibility when the plaintiff pleads factual

---

[34] *Synthes, Inc. v. Emerge Med., Inc.*, 25 F. Supp. 3d 617, 674-75 (E.D. Pa. 2014) *citing Reis v. Barley, Snyder, Senft & Cohen*, 667 F.Supp.2d 471, 492 (E.D.Pa.2009).

[35] *Id.  citing Bd. of Trs. of Teamsters Local 863 Pension Fund v. Foodtown, Inc.,* 296 F.3d 164, 174 (3d Cir.2002) (claim for aiding and abetting breach of fiduciary duties under ERISA); *see also* RESTATEMENT (SECOND) TORTS § 876, cmt. to subsection (b) (1979) ("If the encouragement or assistance is a substantial factor in causing the resulting tort, the one giving it is himself a tortfeasor and is responsible for the consequences of the other's act.").

[36] *See Hellmann v. Kercher*, 2008 U.S. Dist. LEXIS 54882, *4, 2008 WL 1969311 (W.D. Pa. May 5, 2008) (Lancaster, J.).

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[37] Moreover, "[a]sking for plausible grounds . . . calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [wrongdoing]."[38] . "Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[39] To support her aiding and abetting claim, Parks Miller has merely "recite[d] the elements of a cause of action, and then ma[de] a blanket assertion of an entitlement to relief  under it."[40] ""[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - - but it has not "shown" - - "that the pleader is entitled to relief.""[41]

In sum, there is simply no basis upon which to base a duty springing from either Shubin or McGraw to Parks Miller.  Nor may Parks Miller's alternate theory that Shubin and McGraw aided and abetted Shutt in a breach of duty survive the motion to dismiss.  This count will be dismissed as to Defendants Andrew Shubin and Sean McGraw.

---

[37]  *Iqbal*, 556 U.S. at 678.
[38] *Twombly*, 550 U.S. at 556.
[39] *Iqbal*, 556 U.S. at 663-664.
[40] *Hellmann*, *supra.*
[41] *Iqbal*, *supra*, *citing* Fed. R. Civ. P. 8(a).

ii.  Defamation/False Light
1.  Defamation

The statements at issue from Shubin are those referenced above from the article in the Daily Collegian newspaper indicating that he represents Shutt, and his statements at the Commissioners meeting that discuss the same topic. The statements at issue made by McGraw are only that he had a private conversation with Judge Ruest asking her if she signed the bail order.

"Whether a challenged statement is capable of defamatory meaning is a question of law for the court to determine in the first instance."[42]  "To state a cause of action for defamation, a complaint must contain averments of fact which, if proven, would establish, (1) the defamatory character of the communication; (2) its publication by the defendant; (3) a reference to the plaintiff; (4) a recipient's understanding of the communication's defamatory character and its application to plaintiff; (5) special harm resulting from the publication; and (6) abuse of any conditional privilege."[43]  "Additionally, because [plaintiff] was a local public official[44], [s]he must aver that defendants acted with "actual malice" ; that is,

---

[42] Feldman v. Lafayette Green Condo. Ass'n, 806 A.2d 497, 500 (Pa. Commw. Ct. 2002).
[43] *Smith v. Wagner*, 403 Pa. Super. 316, 321, 588 A.2d 1308, 1311 (1991) *citing* 42 Pa.C.S. § 8343(a). *See also: Agriss v. Roadway Express, Inc*., 334 Pa.Super. 295, 304, 483 A.2d 456, 461 (1984).
[44] Counsel has conceded, both in his papers and at oral argument, that Parks Miller is a public figure, subject to the 'actual malice' standard.

knowledge or reckless disregard of the falsity of the objectionable statements."[45]

Some statements are considered to be *per se* defamatory in Pennsylvania. "Statements by a defendant imputing to the plaintiff a criminal offense, punishable by imprisonment, or conduct incompatible with the plaintiff's business constitute slander per se."[46]   However, a complaint cannot survive if there is a privilege attached to the communication.  In explaining the sixth element of defamation, abuse of a privilege, the Superior Court of Pennsylvania[47] has explained privilege as follows:

> However, a publisher of defamatory matter is not liable if the publication was made subject to a privilege, and the privilege was not abused.    Restatement § 593. "Communications made on a proper occasion, from a proper motive, in a proper manner, and based upon reasonable cause are privileged." *Beckman v. Dunn*, 276 Pa.Superior Ct. 527, 536, 419 A.2d 583, 587 (1980); *see also Baird v. Dun & Bradstreet, Inc.*, 446 Pa. 266, 275, 285 A.2d 166, 171 (1971). An occasion giving rise to a conditional privilege occurs when (1) some interest of the publisher of the defamatory matter is involved; (2) some interest of the recipient of the matter, or a third party, is involved; or (3) a recognized interest of the public is involved. *Beckman v. Dunn*, supra at 536, 419 A.2d at 587. Although the defendant in a defamation action ordinarily bears the burden of establishing a privilege to publish defamatory matter, 42 Pa.C.S.A. § 8343(b)(2), where a conditional privilege is evidenced, as here, in the

---

[45] *New York Times v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964); *Curran v. Philadelphia Newspapers, Inc.*, 497 Pa. 163, 439 A.2d 652 (1981).
[46] *Brinich v. Jencka*, 2000 PA Super 209, 757 A.2d 388, 397 (2000)  *citing* RESTATEMENT (SECOND) OF TORTS § 570(a), (c).
[47] *Chicarella v. Passant*, 343 Pa. Super. 330, 337, 494 A.2d 1109, 1112-13 (1985).

plaintiff's complaint, the plaintiff will be nonsuited unless he can prove abuse of the privilege.   *Baird v. Dun & Bradstreet, Inc., supra at* 275, 285 A.2d at 171; *Rankin v. Phillippe*, 206 Pa.Superior Ct. 27, 32, 211 A.2d 56, 58 (1965).

In the case at bar, Parks Miller has not alleged "[t]he defamatory character of the communication."[48]   "It is the function of the trial court to determine whether a challenged publication is capable of a defamatory meaning."[49] What Shubin did was provide truthful, neutral information about an ongoing investigation, specifically focusing on his client Shutt, and not Parks Miller.  What he said was not defamatory, and certainly cannot be considered done with 'actual malice' as there is no falsity to any of the statements.  Nor is McGraw's private conversation with Judge Ruest defamatory of Parks Miller.  "[C]asual remarks made in informal conversation, even if they include unflattering words, do not constitute actionable defamation."[50]   "[T]he plaintiff must focus on the editorial process and prove a false publication attended by some degree of culpability."[51]  "If the court determines that the challenged publication is not

---

[48] *Tucker v. Philadelphia Daily News*, 848 A.2d 113, 123 (Pa. 2004), *citing* 42 Pa.C.S. § 8343(a).
[49] *Green v. Mizner*, 692 A.2d 169, 172 (Pa. Super. Ct. 1997) *citing Maier v. Maretti*, 448 Pa.Super. 276, , 671 A.2d 701, 704 (1995); *Livingston v. Murray*, 417 Pa.Super. 202, , 612 A.2d 443, 446, *alloc. den.*, 533 Pa. 601, 617 A.2d 1275 (1992).
[50] *Kryeski v. Schott Glass Techs., Inc*., 426 Pa. Super. 105, 117, 626 A.2d 595, 601 (1993) (internal citations omitted).
[51] *Herbert v. Lando*, 441 U.S. 153, 176, 99 S.Ct. 1635, 1648, 60 L.Ed.2d 115 (1979).

capable of a defamatory meaning, there is no basis for the matter to proceed
to trial."[52]

What Parks Miller has alleged are all relatively innocuous, true
statements.  Her pleadings illustrate the truth.  There was a pretend bail order
docketed with the prothonotary; a former employee did accuse Parks Miller
of forging the order; and there was an investigation. None of what either
Shubin or McGraw has said was false. Moreover, speaking truthfully as to
an investigation of an alleged crime committed by a district attorney is
certainly of interest to the public.

By contrast, the following statement in the matter of *Fox v. Kahn* was
found to be slanderous of a district attorney in a case from Delaware County,
Pennsylvania.  The defendant in *Fox* stated at a public meeting: "This is as
to law and justice. We had a murder down here in Trainer and the District
Attorney picked up a young weak-minded fellow and got a confession out of
him; it was a simple way he got it, he put him in a room by himself and beat
it out of him with a telephone Book."[53]  The defendant later admitted he
knowingly made the statement and that it was untrue.

Here, there is a marked difference between the statements in *Fox*,
where the defendant falsely stated that a district attorney physically abused a

---

[52] *Thomas Merton Center v. Rockwell International Corp.*, 442 A.2d 213, 215-16 (Pa. 1981).
[53] *Fox v. Kahn*, 421 Pa. 563, 565, 221 A.2d 181, 182 (1966).

suspect to obtain a confession, and the factual, rather bland statements of

Shubin and McGraw.  None of their statements have a defamatory

characterization.  The defamation claim against both Shubin and McGraw

will be dismissed.

### iii.  Defamation/False Light
#### 1.  False Light

I will also dismiss the false light claim.  Pennsylvania recognizes the

tort of false light invasion of privacy, and has adopted the Restatement

(Second) of Torts definition of it.

> § 652E. Publicity Placing Person In False Light
>
> One who gives publicity to a matter concerning another
> that places the other before the public in a false light is
> subject to liability to the other for invasion of his privacy,
> if
>
> (a) the false light in which the other was placed would be
>     highly offensive to a reasonable person, and
>
> (b) the actor had knowledge of or acted in reckless
>     disregard as to the falsity of the publicized matter and
>     the false light in which the other would be placed.

"Significantly, unlike the law of defamation, false light invasion of

privacy offers redress not merely for the publication of matters that are

provably false, but also for those that, although true, are selectively

publicized in a manner creating a false impression."[54]  "It is not, however, necessary to the action for invasion of privacy that the plaintiff be defamed."[55]  "It is enough that he is given unreasonable and highly objectionable publicity that attributes to him characteristics, conduct or beliefs that are false, and so is placed before the public in a false position."[56]  "When this is the case and the matter attributed to the plaintiff is not defamatory, the rule here stated affords a different remedy, not available in an action for defamation."[57]

"In order to prevail on this theory of false light invasion of privacy, appellant must show discriminate publication of true statements, that is, appellees must have created a false impression by knowingly or recklessly publicizing selective pieces of true information."[58]  "[I]t applies only when the defendant knows that the plaintiff, as a reasonable man, would be justified in the eyes of the community in feeling seriously offended and aggrieved by the publicity.[59]

The tort of false light is therefore committed when someone tells part of the story, and selects the worst parts of the story to make the other look

---

[54] *Krajewski v. Gusoff*, 2012 PA Super 166, 53 A.3d 793, 806 (2012).
[55] Restatement (Second) Torts § 652E Cmt. b (Relation to defamation.).
[56] *Id.*
[57] *Id.*
[58] *Krajewski v. Gusoff*, 2012 PA Super 166, 53 A.3d 793, 807 (2012).
[59] Restatement (Second) Torts § 652E Cmt. c (Highly offensive to a reasonable person).

bad.   With that standard in mind, I do not find that Parks Miller has stated a

claim that either Shubin or McGraw placed her in a false light or that

truthful information about an ongoing investigation would have been highly

offensive to a reasonable person.   The information these two defendants are

alleged to have publicized about Parks Miller was truthful, concise, and not

selective.   The particular details were not edited down to place Parks Miller

in a false light.

Perhaps most importantly, the information disseminated was of

legitimate concern to the public.   Plaintiff's "stature in the community as a

public figure resulted in a relinquishment of insulation from scrutiny of [her]

public affairs."[60]   In a *Santillo v. Reedel,* the Superior Court of Pennsylvania

explained that confirming an investigation about a criminal allegation of a

candidate for district judge was of legitimate public concern, as follows:

> As candidate for district justice, he sought a position that
> would enable him to judge the conduct of others and
> determine whether that conduct was in conformity with
> the law. A claim that he violated the law was relevant
> and newsworthy. Whether or not the substance of the
> complaint was true, Reedel and Piermatteo's
> confirmation of the complaint and the ensuing
> investigation presented a matter of public concern,
> therefore, appellant's claim of publicity to private life

---

[60] *Neish v. Beaver Newspapers, Inc.,* 398 Pa. Super. 588, 598, 581 A.2d 619, 624-25
(1990) (internal citations omitted).

must fail[61].

Although the fact scenario here deals with publicity surrounding a criminal investigation of an elected district attorney, and not a candidate for district justice, the holding can be extrapolated to engender the same result. Accordingly, the false light claim will be dismissed as to both Shubin and McGraw.

### iv.  Injurious Falsehood

"[I]njurious falsehood, is the false and malicious representation of the title or quality of another's interest in goods or property."[62]   Pennsylvania has adopted RESTATEMENT (SECOND) OF TORTS §623A dealing with injurious falsehood.[63]  The comment to this section states, in part,

> Injurious falsehood. The general principle stated in this Section is applied chiefly in cases of the disparagement of property in land, chattels or intangible things or of their quality. … The rule is not, however, limited to them. It is equally applicable to other publications of false statements that do harm to interests of another having pecuniary value and so result in pecuniary loss.

Because Parks Miller has not alleged any false statements by either Defendant Shubin or McGraw I cannot permit this claim to survive the motion to dismiss.

---

[61] *Santillo v. Reedel*, 430 Pa. Super. 290, 295, 634 A.2d 264, 266 (1993).

[62] *Pro Golf Mfg., Inc. v. Tribune Review Newspaper Co*., 570 Pa. 242, 247, 809 A.2d 243, 246 (2002).

[63] *Id.*

v.  Abuse of Process

"[A]n action for abuse of process is the improper use of process after it has been issued, that is, a perversion of it."[64]  "The tort of "abuse of process" is defined as the use of legal process against another "primarily to accomplish a purpose for which it is not designed."[65]  "To establish a claim for abuse of process it must be shown that the defendant (1) used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was not designed; and (3) harm has been caused to the plaintiff."[66]  ""The significance of [the word 'primarily'] is that there is no action for abuse of process when the process is used for the purpose for which it is intended, but there is an incidental motive of spite or an ulterior purpose of benefit to the defendant."[67]

This claim also cannot survive the motion to dismiss as Parks Miller has not stated a claim of abuse of process as to Shubin or McGraw.  Curiously, the amended complaint itself does not plead any sort of abuse of process.  In her brief opposing the motion to dismiss, however, Parks Miller makes a vague and unsubstantiated assertion as to how the process has been perverted as to her.  The United States Supreme Court has warned, "[t]hreadbare recitals of the elements of

---

[64] *Rosen v. Am. Bank of Rolla*, 426 Pa. Super. 376, 381, 627 A.2d 190, 192 (1993).

[65] *Id. citing* Restatement (Second) of Torts, § 682.

[66] *Id.*

[67] *Id.*

a cause of action, supported by mere conclusory statements, do not suffice"[68] to state a claim.

Attempting to justify her abuse of process claim against Shubin and McGraw, Parks Miller argues:

> The DA has alleged that McGraw and Shubin abused a number of litigation tactics primarily to accomplish purposes for which they were not designed, resulting in severe harm.  One example is McGraw being the first person to contact Judge Ruest and pressuring her to take a noncommittal position with Bellefonte Police.  Another example is Shubin appearing at the Centre County Commissioners' meeting posing as a member of the "concerned public" and proceeding to incite public outrage.[69]

This explanation of her claims against these two defendants makes it clear that she is attempting to repackage defamation as abuse of process.  Accordingly, because there are no factual allegations upon which this claim could rest, the abuse of process claim will be dismissed as to both Shubin and McGraw.

###### vi.   Negligence

The negligence claim against these Defendants is not comprehensible.  In Pennsylvania, the elements of negligence are standard -- duty, breach, causation, and damages.[70]  "It is well established that in determining the existence of a duty of

---

[68] *Iqbal*, 556 U.S. at 678.
[69] Pl.'s Br. ECF No. 49 at 38.
[70] *See Williams v. Syed*, 782 A.2d 1090 (Commw. Ct. 2001).

care, it must be remembered that the concept of duty amounts to no more than "the sum total of those considerations of policy which led the law to say that the particular plaintiff is entitled to protection" from the harm suffered ... To give it any greater mystique would unduly hamper our system of jurisprudence in adjusting to the changing times."[71] "The determination of whether a duty exists in a particular case involves the weighing of several discrete factors which include: (1) the relationship between the parties; (2) the social utility of the actor's conduct; (3) the nature of the risk imposed and foreseeability of the harm incurred; (4) the consequences of imposing a duty upon the actor; and (5) the overall public interest in the proposed solution."[72]

Neither the amended complaint nor the briefs make clear how either Shubin or McGraw could possibly be deemed to have a duty of care toward Parks Miller, as there are no citations to case law to support a legal duty springing from Shubin and/or McGraw to Parks Miller.  Counsel contended at oral argument in response to the Court's questions that the lawyer defendants have a duty because they did not return documents Shutt gave to them; defense attorneys should realize there is no forgery if there is no mens rea; and defense attorneys should have understood handwriting analysis.  I have found no case law to support these propositions.   As

---

[71] *Althaus ex rel. Althaus v. Cohen*, 562 Pa. 547, 552, 756 A.2d 1166, 1168-69 (2000) (internal citation omitted).

[72] *Id.* at 553.

the most recent issue of the THE BENCHER magazine concisely advises, "Do not

invent law."[73]   That seems a wise admonition.

The Pennsylvania Superior Court  in *Campo v. St. Luke's Hospital*[74]

explained in detail how to determine if a duty should be established.

> When considering the question of duty, it is necessary to
> determine "whether a defendant is under any obligation for the
> benefit of the particular plaintiff ... and, unless there is a duty
> upon the defendant in favor of the plaintiff which has been
> breached, there can be no cause of action based upon
> negligence." *Tri-County Big Brothers*, 692 A.2d at 584
> (*quoting Hoffman v. Sun Pipe Line Co*., 394 Pa.Super. 109,
> 113-15, 575 A.2d 122, 125 (1990)).

> "Whether a duty exists is ultimately a question of fairness. The
> inquiry involves a weighing of the relationship of the parties,
> the nature of the risk and the public interest in the proposed
> solution." *Brandjord v. Hopper*, 455 Pa.Super. 426, 429-31,
> 688 A.2d 721, 723 (1997) (*citing Cruet v. Certain-Teed Corp*.,
> 432 Pa.Super. 554, 556-58, 639 A.2d 478, 479 (1994)). "Our
> duty analysis depends on many factors and is 'necessarily
> rooted in public policy considerations, i.e., our ideas of
> history, morals, justice, and society in general in determining
> where the loss should fall.' " *Althaus v. Cohen,* 710 A.2d
> 1147, 1152 (Pa.Super.1998), appeal granted, 556 Pa. 701, 729
> A.2d 1124 (1998), (*quoting Gardner v. Consolidated Rail
> Corp.,* 524 Pa. 445, 455, 573 A.2d 1016, 1020 (1990)).

> Moreover, duty, as a concept, is a flexible notion. "In
> determining the existence of a duty of care, it must be
> remembered that the concept of duty amounts to no more than

---

[73] Gabriela Acosta, Caitlin Barnes, Bren Chambers, Caitlin Wain, and Tessie Smith, *The View
from WAY Behind the Bench*,  THE BENCHER, March/April 2016, at 21.
[74] *Campo v. St. Luke's Hosp*., 2000 PA Super 155, ¶ 10, 755 A.2d 20, 24 (2000).

'the sum total of those considerations of policy which led the law to say that the particular plaintiff is entitled to protection' from the harm suffered." *Troxel v. A.I. Dupont Institute*, 450 Pa.Super. 71, 82, 675 A.2d 314, 319-320 (1996), *quoting Gardner by Gardner v. Consolidated Rail Corp.*, 524 Pa. 445, 454-455, 573 A.2d 1016, 1020 (1990), *quoting Sinn v. Burd*, 486 Pa. 146, 164, 404 A.2d 672, 681 (1979). Furthermore, "duty is only a word with which we state our conclusion that there is or is not to be liability...." *Id.* "To give it any greater mystique would unduly hamper our system of jurisprudence in adjusting to the changing times." *Id. Huddleston v. Infertility Center of America, Inc.*, 700 A.2d 453, 457-58 (Pa.Super.1997).

Finally, a duty arises only when one engages in conduct which foreseeably creates an unreasonable risk of harm to others. Id. at 457. It is "[o]nly when the question of foreseeability is undeniably clear may a court rule as a matter of law that a particular defendant did not have a duty to a particular plaintiff." *Tri-County Big Brothers*, 692 A.2d at 584; *Hoffman*, 575 A.2d at 125. *See Palsgraf v. Long Island Railroad Co.*, 248 N.Y. 339, 162 N.E. 99 (1928).

That considered, I find no basis upon which to support finding of a duty from either Shubin or McGraw to Parks Miller.  Their only involvement with this matter are the statements they made.  Her negligence claim as to them is merely a reformulated defamation claim.   Because there is no duty, this count also cannot survive a motion to dismiss.[75]

---

[75]" If the court finds no duty of care is owed, the negligence count is decided as a matter of law." 57A Am. Jur. 2d Negligence § 74, *citing Mans v. Peoples Bank of Imboden,* 340 Ark. 518, 10 S.W.3d 885 (2000).

vii.   Intentional and Negligent Infliction of Emotional Distress

1.   NIED

"[T]the cause of action for negligent infliction of emotional distress is restricted to four factual scenarios: (1) situations where the defendant had a contractual or fiduciary duty toward the plaintiff; (2) the plaintiff was subjected to a physical impact; (3) the plaintiff was in a zone of danger, thereby reasonably experiencing a fear of impending physical injury; or (4) the plaintiff observed a tortious injury to a close relative."[76]   The only possible basis for this claim is based on the first element, and as stated above, there is no fiduciary duty running from Shubin or McGraw to Parks Miller.  Accordingly, the claim of negligence infliction of emotional distress will be dismissed.

2.   IIED

"One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm."[77]   I cannot in good faith find that Parks Miller has alleged any "extreme or outrageous conduct" on the part of Shubin or McGraw nor would discovery aid her in

---

[76] *Toney v. Chester Cty. Hosp.*, 2008 PA Super 268, ¶ 14, 961 A.2d 192, 197-98 (2008) *aff'd*, 614 Pa. 98, 36 A.3d 83 (2011).
[77] *Britt v. Chestnut Hill Coll.*, 429 Pa. Super. 263, 272, 632 A.2d 557, 561 (1993) *citing* Restatement (Second) of Torts, § 46(1).

amending her complaint as to either of them, as their statements were all truthful and benign. No cognizable claim for intentional infliction of emotional distress has been advanced, and it will, correspondingly, be dismissed.

### viii.   Concerted Tortious Conduct

"[C]oncerted tortious action, as defined in Section 876 of the Restatement (Second) of Torts, is a recognized civil cause of action under Pennsylvania law."[78] This section states

§ 876. Persons Acting in Concert

> For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he
> (a) does a tortious act in concert with the other or pursuant to a common design with him, or
> (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or
> (c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person.

In her brief, Parks Miller makes it clear that her claim is based on subsection (a) of the Restatement.[79]  Because all of the underlying torts have been dismissed as to Shubin and McGraw, this claim must be dismissed as well.

---

[78] *Sovereign Bank v. Valentino*, 2006 PA Super 338, ¶ 30, 914 A.2d 415, 427 (2006).
[79] Pl.'s Br. ECF No. 50 at 33.

ix.  Conspiracy

"[A]bsent a civil cause of action for a particular act, there can be no cause of action for civil conspiracy to commit that act."[80]  Likewise, because all of the other underlying claims have been dismissed, this claim must also be dismissed.

III.   CONCLUSION

Defendants Shubin and McGraw's motion to dismiss will be granted. Moreover, as explained below, the Court will deny Parks Miller further opportunity to amend her complaint, thereby foreclosing her ability to submit a third iteration of what is quite evidently an irrepealably flawed pleading.

Federal Rule of Civil Procedure 15(a), which governs a plaintiff's ability to amend her complaint, instructs that after the window for amendment as a matter of course has closed, a plaintiff may amend her complaint "only with the opposing party's written consent or the court's leave." "The decision to grant or deny leave to amend a complaint is committed to the sound discretion of the district court."[81] "Factors the trial court may appropriately consider in denying a motion to amend include undue delay, undue prejudice

---

[80] *Pelagatti v. Cohen*, 370 Pa. Super. 422, 432, 536 A.2d 1337, 1342 (1987).
[81] *Coventry v. U.S. Steel Corp.,* 856 F.2d 514, 518 (3d Cir. 1988).

to the opposing party, and futility of amendment."[82] For instance, "if the proposed change clearly is frivolous or advances a claim or defense that is legally insufficient on its face, the court may deny leave to amend."[83]

As it applies to the instant matter, Parks Miller has already amended her complaint once as a matter of course pursuant to Rule 15. Having occurred after the various defendants filed their first motions to dismiss, that amendment effectively rendered those motions moot.  To allow Parks Miller a third bite at the apple would contravene fundamental notions of justice for the following reasons.

First, the unjustifiable delay associated with further amendment and subsequent motions practice would significantly prejudice the Defendants here. To the extent that the Defendants in this matter represent the public or work in private legal practice, a speedy resolution of this politically charged dispute is both efficient and proper. No defendant, whether a representative of the people or a private advocate, should be forced to endure the looming specter of such accusations, particularly where those charges have been judged deficient as a matter of law by a federal tribunal.

---

[82] *Averbach v. Rival Mfg. Co.*, 879 F.2d 1196, 1203 (3d Cir. 1989) (*quoting Foman v. Davis*, 371 U.S. 178, 182 (1962).
[83] *Ross v. Jolly*, 151 F.R.D. 562, 565 (E.D. Pa. 1993) (*citing* 6 Wright, Miller, & Kane, Federal Practice & Procedure: Civil 2d § 1487).  *See also Vosgerichian v. Commodore Int'l Ltd.,* No. Civ. A. 92-CV-4867, 1998 WL 966026, at * 3 (E.D. Pa. Nov 6, 1998) *aff'd sub nom Vosgerichian v. Commodore Int'l*, 191 F.3d 446 (3d Cir. 1999).

Moreover, Parks Miller has already enjoyed the benefit of responding with an amended complaint after reading and considering the arguments raised in the first round of defendants' motions to dismiss. Based upon my review of the claims asserted therein, a third version of the complaint would fare no better; any non-futile allegations that Parks Miller could possibly make should have already been advanced. With the likelihood that Parks Miller could plead an adequate complaint so low at this stage, I find that the certainty of substantial prejudice to the Defendants outweighs any interest Parks Miller might have in filing a further amended complaint.

Nor would discovery remedy the deficiencies in the complaint.  A missing piece common to several of the asserted claims in this action is proof of publication.  Accordingly, at this juncture, reasonable research and diligence should have already led Plaintiff to discover any published statements made by Shubin and McGraw. The Court, however, already possesses and has thoroughly considered the complete statements of both Shubin and McGraw as reproduced above.  Discovery simply would not be a fruitful endeavor for the kinds of claims that Parks Miller has chosen to advance.

Ultimately, I find that this determination also adheres to the dictates of the federal rules. As amended Federal Rule of Civil Procedure 1 now

instructs, "the just, speedy, and inexpensive determination of every action"

is the responsibly of both judges and litigants. Permitting amendment merely

for the sake of amendment at this point would only further squander

valuable time and resources of the Court and the parties. I am unwilling to so

indulge Plaintiff.


                              BY THE COURT:


                              /s Matthew W. Brann
                              Matthew W. Brann
                              United States District Judge


33