IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


STACY PARKS MILLER,              :        Case No. 4:15-CV-1754
                                 :
              Plaintiff,          :        (Judge Brann)
                                 :
      v.                          :
                                 :
MICHELLE SHUTT, et. al.,         :
                                 :
              Defendants.         :


**MEMORANDUM OPINION**

May 11, 2016

I.        BACKGROUND

On August 25, 2015, Stacy Parks Miller hereinafter "Parks Miller," the current

District Attorney of Centre County, filed a thirteen count complaint against twelve

defendants in the Court of Common Pleas of that county. It was then removed to

this Court and all twelve Defendants filed motions to dismiss the complaint.  In

response, Parks Miller filed an amended complaint.[1]  This Memorandum Opinion

addresses the motion to dismiss of Defendant Michelle Shutt, "hereinafter Shutt,"

formerly a paralegal working for Parks Miller.

The motion has been fully briefed, and I held oral argument on the motions

on March 3, 2016.  The matter is now ripe for disposition.  For the reasons that

---

[1] ECF No. 25.

follow, I will grant the motion and dismiss the action as to Shutt.

## II.   DISCUSSION

### a. <u>Motion to Dismiss Standard of Review</u>

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may file a motion to dismiss for "failure to state a claim upon which relief can be granted." Such a motion "tests the legal sufficiency of a pleading" and "streamlines litigation by dispensing with needless discovery and factfinding."[2] "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law."[3] This is true of any claim, "without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one."[4]

Beginning in 2007, the Supreme Court of the United States initiated what some scholars have termed the Roberts Court's "civil procedure revival" by significantly tightening the standard that district courts must apply to 12(b)(6) motions.[5] In two landmark decisions, *Bell Atlantic Corporation v. Twombly and Ashcroft v. Iqbal*, the Roberts Court "changed . . . the pleading landscape" by "signal[ing] to lower-court judges that the stricter approach some had been taking

---

[2] *In re Hydrogen Peroxide Litigation*, 552 F.3d 305, 316 n.15 (3d Cir. 2008) (Scirica, C.J.) (*quoting Szabo v. Bridgeport Machines, Inc.,* 249 F.3d 672, 675 (7th Cir. 2001) (Easterbrook, J.)). *Neitzke v. Williams,* 490 U.S. 319, 326–27 (1989).

[3] *Neitzke*, 490 U.S. at 326 (*citing Hishon v. King & Spalding,* 467 U. S. 69, 73 (1984)).

[4] *Neitzke*, 490 U.S. at 327.

[5] Howard M. Wasserman, THE ROBERTS COURT AND THE CIVIL PROCEDURE REVIVAL, 31 Rev. Litig. 313 (2012).

was appropriate under the Federal Rules."[6] More specifically, the Court in these two decisions "retired" the lenient "no-set-of-facts test" set forth in *Conley v. Gibson* and replaced it with a more exacting "plausibility" standard.[7]

Accordingly, after *Twombly* and *Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[8] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[9] "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully."[10] Moreover, "[a]sking for plausible grounds . . . calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [wrongdoing]."[11]

The plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[12] No matter the context, however, "[w]here a complaint pleads facts that are 'merely consistent

---

[6]  550 U.S. 544 (2007); 556 U.S. 662, 678 (2009). Wasserman, *supra* at 319–20.
[7]  *Iqbal*, 556 U.S. at 670 (*citing Conley v. Gibson*, 355 U.S. 41 (1957)) ("[a]cknowledging that *Twombly* retired the *Conley* no-set-of-facts test").
[8]  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).
[9]  *Iqbal*, 556 U.S. at 678.
[10]  *Connelly v. Lane Const. Corp.*, No. 14-3792, 2016 WL 106159, at *3 (3d Cir. Jan. 11, 2016) (Jordan, J.) (internal quotations and citations omitted).
[11]  *Twombly*, 550 U.S. at 556.
[12]  *Iqbal*, 556 U.S. at 679.

with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"[13]

When disposing of a motion to dismiss, a court must "accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the plaintiff]."[14] However, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions."[15] "After *Iqbal*, it is clear that conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss."[16] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[17]

As a matter of procedure, the United States Court of Appeals for the Third Circuit has instructed that:

> Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps. First, it must tak[e] note of the elements [the] plaintiff must plead to state a claim. Second, it should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, [w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.[18]

---

[13] *Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 557 (internal quotations omitted)).

[14] *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008) (Nygaard, J.).

[15] *Iqbal*, 556 U.S. at 678 (internal citations omitted).

[16] *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (Nygaard, J.).

[17] *Iqbal*, 556 U.S. at 678.

[18] *Connelly*, 2016 WL 106159, at *4 (internal quotations and citations omitted).

b.   Facts Alleged in the Amended Complaint

The procedural dictate when faced with a motion to dismiss is that the court is to accept the facts alleged as true.  "Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations."[19] However, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."[20]  That said, the following is a recitation of the allegations according to Parks Miller.

Parks Miller has been District Attorney of Centre County since 2009. During the pendency of an investigation of an inmate allegedly attempting to contract someone to murder one of the assistant district attorneys in her office, Parks Miller, together with defense counsel for a second inmate, acting as a prison informant, devised a plan to move the informant to another prison as part of the investigation. Parks Miller and the informant's defense counsel decided that they needed what the parties alternately and curiously refer to as a "pretend" or "fake" order granting the informant release on bail.

Parks Miller had hired Shutt to work as a paralegal in the Office of the District Attorney in 2012.  During the investigation of the attempted murder plot, Parks Miller asked Shutt to prepare a fake bail order, which she did.  At some later point, Shutt left her job at the District Attorney's Office to work for the Masorti

---

[19] *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)
[20] *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)

Law Group in State College, Pennsylvania.

Parks Miller alleges that Shutt stole certain emails and documents about the alleged attempted murder investigation by forwarding them to her personal email account, and then from it to her Masorti Law Group email account.  The forwarded emails are attached to the amended complaint.[21]

The emails are apparently between Parks Miller, Shutt, the attorney representing the informant, a member of the Pennsylvania Attorney General's Office and, in some emails, assorted others.  The emails substantiate Parks Miller's claim that a fake bail order was to be prepared to assist in the murder attempt investigation.

Shutt subsequently signed an affidavit in which she alleged that Parks Miller forged Judge Pamela Ruest's signature on the bail order.  The affidavit is also attached to the amended complaint.  It reads, as follows:

> I, Michelle Shutt, worked as the paralegal to the District Attorney, Stacy Parks Miller from the time period of June 6, 2012 until January 14, 2014.  Stacy Parks Miller directed me to review previous orders signed by Judge Pamela Ruest in order to type a fake order for Stacy Parks Miller that would look as similar as possible.  Stacy then directed me to type the contents of the fake bail order and I did.  I printed the fake order, took it to Stacy and witnessed her sign "Pamela A. Ruest".  She then had me take the forged bail order to the Prothonotary's office and file it.  I brought a copy back upstairs, scanned it to my computer and emailed it to

---

[21] ECF No. 25-2 at 4-11.

> Stacy.
>
> The forged Order was to be used to set up Ryan Richard by using Defendant, Robert Albro.  I also received emails from Stacy Parks Miller relating directly to the use of the forged Order.  Both email and Order are attached [].
>
> I swear that the above statement is accurate, true and correct.

Shutt signed this affidavit on December 30, 2014.[22]

Because of Shutt's allegations of forgery, a grand jury investigated Parks Miller.  Judge Ruest could not remember signing the bail order, but she also could not recognize if it was, in fact, her signature on the bail order.  The grand jury eventually cleared Parks Miller of wrongdoing.

As a result of this troubling history, Parks Miller has now filed the instant civil suit.  The counts against Shutt are breach of fiduciary duty/duty of loyalty, defamation/false light, injurious falsehood, negligence, intentional and/or negligent infliction of emotional distress, concerted tortious conduct, and conspiracy.

   c.  <u>Privilege and Immunity</u>

As an initial matter, insofar as any allegations against Shutt are based on grand jury testimony, she is immune from suit for that testimony.  "Even if [the

---

[22] ECF No. 25-2 at 2.

one testifiying] knew [his or her] testimony was false, [he or she] receives absolute

immunity for the act of testifying to the grand jury.[23]

Second, statements made with the intent that disclosure lead to a judicial or

quasi-judicial proceeding are privileged.  In *Schanne v. Addis*,[24] the Supreme

Court of Pennsylvania held that the judicial privilege protects statements by

individuals seeking to initiate judicial or quasi-judicial proceedings.  The *Schanne*

court held that the privilege did not protect the defendant, as that defendant did not

anticipate the friend she was speaking to would disclose the conversations to others

that who initiate due process termination hearings against plaintiff.  The *Schanne*

court provided a useful guidepost for the matter at hand, however, stating:

> Courts must also consider whether applying an absolute
> privilege in a given case would promote the privilege's
> purpose.  The purpose of the privilege is to afford parties
> freedom of access to the courts, to encourage witnesses'
> complete and unintimidated testimony in court, and to
> enable counsel to best represent his client's interests.  If
> not for this privilege, a realm of communication essential
> to the exploration of legal claims would be hindered.
>
> *****
>
> Pennsylvania law closely guards the ability of a person
> whose reputation has been injured by defamatory
> statements to obtain redress for such injury.  [] The Court
> explained that the Pennsylvania Constitution places
> reputational interests on the highest plane, that is, on the

---

[23] *Rehberg v. Paulk*, 611 F.3d 828, 839 (11th Cir. 2010) *aff'd*, 132 S. Ct. 1497, 182 L. Ed. 2d 593 (2012).
[24] 121 A.3d 942 (2015).

same level as those pertaining to life, liberty, and property.

At the same time, there is a fundamental societal need for justice to be administered freely and efficiently through the eliciting of speech from parties and witnesses that may be accusatory or otherwise reflect negatively upon another's character. Thus, notwithstanding any reputational harm that may ensue, Pennsylvania, like many other jurisdictions, recognizes a judicial privilege providing immunity for communications which are made in regular course of judicial proceedings and are material to the relief sought. The privilege covers statements by a party, a witness, an attorney, or a judge. Furthermore, the privilege is absolute, meaning that, where it attaches, the declarant's intent is immaterial even if the statement is false and made with malice.

*****

A witness is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding or as a part of a judicial proceeding in which he is testifying, if it has some relation to the proceeding.

*****

[] The judicial privilege operates by incentivizing individuals to speak freely within a judicial (or quasi-judicial) context – or more to the point here, to speak freely in *seeking to initiate* judicial or quasi-judicial proceedings.

*****

For the privilege to apply in a defamation case, litigation must be truly under serious consideration.

Reviewing courts are capable of discerning whether a
particular proceeding fits that description.[25]

The operative allegations against Shutt are that she spoke to Attorney Philip

Masorti, disclosed her accusations against Parks Miller,[26] and that there was a

grand conspiracy against Parks Miller to prosecute her.[27]   This falls precisely

within the scope of privilege contemplated in *Schanne.*   Parks Miller herself

alleges in the amended complaint that the intent of Defendants was to seek the

initiation of judicial proceedings against her.  Accordingly, her arguments that

*Schanne* is inapplicable are not well taken, as the thrust of her amended complaint

is the conspiracy theory of the use of court proceedings against her.

It is disingenuous for Parks Miller to allege in her amended complaint that

the Defendants, including Shutt, had an intent to initiate criminal proceedings

against her, then, when it does not further her case, to allege the opposite in her

briefs.  At this stage in the proceedings, I must accept the alleged facts as true;  by

Parks Miller's own allegations, Shutt's intent in speaking to Masorti and signing

the affidavit was designed to initiate proceedings against Parks Miller.

Absent the statements to Masorti, or provided during the grand jury

proceedings, there are no claims remaining against Shutt.  Although Parks Miller

makes much of  the allegation that Shutt "stole" emails, the emails themselves

---

[25] *Id.* at 945-951 (internal citations omitted).
[26] *See* ¶ 81 of Amended Complaint.
[27] *See* ¶ 98 of Amended Complaint.

belie this allegation.  The emails are attached to the amended complaint and show in the 'to' and 'cc' lines, that Parks Miller herself circulated the emails to no less than eleven individuals. With such a wide dissemination, these can hardly be considered to be private property capable of being stolen.

## III.   CONCLUSION

Defendant Shutt's motion to dismiss will be granted. Moreover, as explained below, the Court will deny Parks Miller further opportunity to amend her complaint, thereby foreclosing her ability to submit a third iteration of what is quite evidently an irrepealably flawed pleading.

Federal Rule of Civil Procedure 15(a), which governs a plaintiff's ability to amend her complaint, instructs that after the window for amendment as a matter of course has closed, a plaintiff may amend her complaint "only with the opposing party's written consent or the court's leave." "The decision to grant or deny leave to amend a complaint is committed to the sound discretion of the district court."[28] "Factors the trial court may appropriately consider in denying a motion to amend include undue delay, undue prejudice to the opposing party, and futility of amendment."[29] For instance, "if the proposed change clearly is frivolous or advances a claim or defense that is

---

[28] *Coventry v. U.S. Steel Corp.,* 856 F.2d 514, 518 (3d Cir. 1988).
[29] *Averbach v. Rival Mfg. Co.*, 879 F.2d 1196, 1203 (3d Cir. 1989) (*quoting Foman v. Davis*, 371 U.S. 178, 182 (1962).

legally insufficient on its face, the court may deny leave to amend."[30]

As it applies to the instant matter, Parks Miller has already amended her complaint once as a matter of course pursuant to Rule 15. Having occurred after the various defendants filed their first motions to dismiss, that amendment effectively rendered those motions moot.  To allow Parks Miller a third bite at the apple would contravene fundamental notions of justice for the following reasons.

First, the unjustifiable delay associated with further amendment and subsequent motions practice would significantly prejudice Defendant Shutt here. To the extent that the defendants in this matter represent the public or work in private legal practice, a speedy resolution of this politically charged dispute is both efficient and proper. No defendant, whether a representative of the people or a private advocate, should be forced to endure the looming specter of such accusations, particularly where those charges have been judged deficient as a matter of law by a federal tribunal.

Moreover, Parks Miller has already enjoyed the benefit of responding with an amended complaint after reading and considering the arguments raised in the first round of defendants' motions to dismiss. Based upon my

---

[30] *Ross v. Jolly*, 151 F.R.D. 562, 565 (E.D. Pa. 1993) (*citing* 6 Wright, Miller, & Kane, Federal Practice & Procedure: Civil 2d § 1487). *See also Vosgerichian v. Commodore Int'l Ltd.,* No. Civ. A. 92-CV-4867, 1998 WL 966026, at * 3 (E.D. Pa. Nov 6, 1998) *aff'd sub nom Vosgerichian v. Commodore Int'l*, 191 F.3d 446 (3d Cir. 1999).

review of the claims asserted therein, a third version of the complaint would fare no better; any non-futile allegations that Parks Miller could possibly make should have already been advanced. With the likelihood that Parks Miller could plead an adequate complaint so low at this stage, I find that the certainty of substantial prejudice to the Defendant outweighs any interest Parks Miller might have in filing a further amended complaint.

Nor would discovery remedy the deficiencies in the complaint. Accordingly, at this juncture, reasonable research and diligence should have already led Plaintiff to discover any published statements made by Shutt. Discovery simply would not be a fruitful endeavor for the kinds of claims that Parks Miller has chosen to advance.

Ultimately, I find that this determination also adheres to the dictates of the federal rules. As amended Federal Rule of Civil Procedure 1 now instructs, "the just, speedy, and inexpensive determination of every action" is the responsibly of both judges and litigants. Permitting amendment merely for the sake of amendment at this point would only further squander valuable time and resources of the Court and the parties. I am unwilling to so indulge Plaintiff.

BY THE COURT:


<u>/s Matthew W. Brann</u>
Matthew W. Brann
United States District Judge