IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STACY PARKS MILLER, | : | Case No. 4:15-CV-1754 |
| | : | |
| Plaintiff, | : | (Judge Brann) |
| | : | |
| v. | : | |
| | : | |
| CENTRE COUNTY, | : | |
| TIMOTHY BOYDE, | : | |
| LOUIS T. GLANTZ, | : | |
| C. CHRIS EXARCHOS, | : | |
| STEVEN DERSHEM, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OPINION

September 1, 2016

## I.    BACKGROUND

On August 25, 2015, the current District Attorney of Centre County, Stacy

Parks Miller, hereinafter "Parks Miller," filed a thirteen count complaint against

twelve defendants in the Court of Common Pleas of that county. The case was

removed to this Court two weeks later.  In response to motions to dismiss filed by

all Defendants, Parks Miller filed a first amended complaint.   The Defendants then

filed motions to dismiss the first amended complaint.  I held oral argument on the

motions, dismissed the first amended complaint in part, including  dismissal of six

of the Defendants, and granted leave for Plaintiff to file a second amended

1

complaint to allege only a *Fourth Amendment* search and seizure claim against the remaining Defendants, as now captioned above.[1]  A second amended complaint was subsequently filed.[2]

On June 10, 2016, the County Defendants moved to dismiss the second amended complaint.[3]  This Memorandum Opinion addresses the pending motion to dismiss[4] the second amended complaint[5] filed by the five remaining defendants, Centre County, Timothy Boyde, Louis T. Glantz, C. Chris Exarchos, and Steven Dershem.  When referred to in the collective, this group will be called the "County Defendants."

The matter has been fully briefed; the Court will grant the motion and the action will be dismissed in its entirety.  Final judgment will be entered on behalf of all Defendants, including the previously dismissed Defendants, and against Plaintiff.

## II.    DISCUSSION

### a.  Motion to Dismiss Standard of Review

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may file a

---

[1] The first amended complaint had also named Michael Pipe as a Defendant.  Parks Miller had been permitted to name him in her second amended complaint, but did not do so.  She wrote in paragraph 4 of the second amended complaint, ECF No. 95, "The third Commissioner, Michael Pipe, is currently a Commissioner but is no longer a Defendant in this matter."  As Parks Miller appears to have voluntarily dismissed him as a defendant, final judgment will be entered in his favor in accordance with the Court's May 11, 2016 Memorandum and Order, ECF Nos. 80 and 81.
[2] June 1, 2016, ECF No. 95.
[3] ECF No. 98.
[4] June 10, 2016, ECF No. 98.
[5] June 1, 2016, ECF No. 95.

motion to dismiss for "failure to state a claim upon which relief can be granted." Such a motion "tests the legal sufficiency of a pleading" and "streamlines litigation by dispensing with needless discovery and factfinding."[6] "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law."[7] This is true of any claim, "without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one."[8]

Beginning in 2007, the Supreme Court of the United States initiated what some scholars have termed the Roberts Court's "civil procedure revival" by significantly tightening the standard that district courts must apply to 12(b)(6) motions.[9] In two landmark decisions, *Bell Atlantic Corporation v. Twombly and Ashcroft v. Iqbal*, the Roberts Court "changed . . . the pleading landscape" by "signal[ing] to lower-court judges that the stricter approach some had been taking was appropriate under the Federal Rules."[10] More specifically, the Court in these two decisions "retired" the lenient "no-set-of-facts test" set forth in *Conley v. Gibson* and replaced it with a more exacting "plausibility" standard.[11]

---

[6]

  *In re Hydrogen Peroxide Litigation*, 552 F.3d 305, 316 n.15 (3d Cir. 2008) (Scirica, C.J.) (*quoting Szabo v. Bridgeport Machines, Inc.,* 249 F.3d 672, 675 (7th Cir. 2001) (Easterbrook, J.)). *Neitzke v. Williams,* 490 U.S. 319, 326–27 (1989).

[7]  *Neitzke*, 490 U.S. at 326 (*citing Hishon v. King & Spalding,* 467 U. S. 69, 73 (1984)).

[8]  *Neitzke*, 490 U.S. at 327.

[9]

  Howard M. Wasserman, THE ROBERTS COURT AND THE CIVIL PROCEDURE REVIVAL, 31 Rev. Litig. 313 (2012).

[10]  550 U.S. 544 (2007); 556 U.S. 662, 678 (2009). Wasserman, *supra* at 319–20.

[11]

  *Iqbal*, 556 U.S. at 670 (*citing Conley v. Gibson*, 355 U.S. 41 (1957)) ("[a]cknowledging that *Twombly* retired the *Conley* no-set-of-facts test").

Accordingly, after *Twombly* and *Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[12] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[13] "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully."[14] Moreover, "[a]sking for plausible grounds . . . calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [wrongdoing]."[15]

The plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[16] No matter the context, however, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"[17]

When disposing of a motion to dismiss, a court must "accept as true all

---

[12] *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

[13] *Iqbal*, 556 U.S. at 678.

[14] *Connelly v. Lane Const. Corp.*, No. 14-3792, 2016 WL 106159, at *3 (3d Cir. Jan. 11, 2016) (Jordan, J.) (internal quotations and citations omitted).

[15] *Twombly*, 550 U.S. at 556.

[16] *Iqbal*, 556 U.S. at 679.

[17] *Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 557 (internal quotations omitted)).

factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the plaintiff]."[18] However, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions."[19] "After *Iqbal*, it is clear that conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss."[20] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[21]

As a matter of procedure, the United States Court of Appeals for the Third Circuit has instructed that:

> Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps. First, it must tak[e] note of the elements [the] plaintiff must plead to state a claim. Second, it should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, [w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.[22]

### b. Facts Alleged in the Amended Complaint[23]

---

[18] *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008) (Nygaard, J.).

[19] *Iqbal*, 556 U.S. at 678 (internal citations omitted).

[20] *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (Nygaard, J.).

[21] *Iqbal*, 556 U.S. at 678.

[22]  *Connelly*, 2016 WL 106159, at *4 (internal quotations and citations omitted).

[23] As in prior complaints, Parks Miller includes a vast amount of extraneous background information that is not relevant to stating a claim for relief.  For example, paragraph 13 C. deals with the votes of the County Prison Board, which have no bearing on Parks Miller's search and seizure claim.   Only the relevant allegations from the second amended complaint are included below.

Parks Miller is the current District Attorney of Centre County, and has held that office since 2009.[24]  As noted above, the County Defendants are Centre County, Pennsylvania; C. Chris Exarchos, who, although not presently, was at the time of the events in question a county commissioner;[25] Steven Dershem, a current county commissioner;[26] Timothy Boyde, not presently, but at the time of the events in question the county administrator;[27] and Louis T. Glantz, who, also, not presently, but was at the time of the events in question the solicitor for Centre County.[28]

In 2013, Parks Miller, in her capacity as District Attorney, began investigating an alleged 'murder for hire plot' concocted by an inmate against one of the assistant district attorneys in her office.[29]  As part of the investigation, Parks Miller and counsel for an informant developed a plan for a bail order to be issued that would cause the inmate plotting the murder to believe that the informant had been released from incarceration and was therefore able to meet a hit man outside of prison.[30]  The bail order was never intended to be used to actually release the informant from prison.[31]

---

[24] ECF No. 95 at ¶¶ 1 and 8.
[25] Id. at ¶ 2; hereinafter "Exarchos."
[26] Id. at ¶ 3; hereinafter "Dershem."
[27] Id. at ¶ 5; hereinafter "Boyde."
[28] Id. at ¶ 6; hereinafter "Glantz."
[29] Id. at ¶ 15.
[30] Id. at ¶ 30-32.
[31] Id. at ¶ 40.

Parks Miller asked her paralegal, Michelle Shutt, formerly a Defendant in this action, to prepare the bail order for the judge's signature.[32] Parks Miller asserts that Centre County Court of Common Pleas Judge Pamela Ruest, also formerly a Defendant in this action, signed the bail order.[33] Shutt asserted otherwise, later filing an affidavit with local police claiming that she witnessed Parks Miller forge Judge Ruest's signature on the order.

After reviewing and confirming the particulars of the Shutt affidavit, the Bellefonte Borough Police Department executed a search warrant in the Centre County District Attorney's Office.[34] Parks Miller asserts that she was humiliated by the search.[35] According to Parks Miller, the search warrant was "based almost exclusively on three major allegations: the falsely sworn to affidavit from Michelle Shutt; a statement to the affiant on the search warrant from Bellefonte Police Department from Judge Ruest that she was unable to identify her signature on the bail order; and the factually critical statement by Judge Ruest that she had "no knowledge" of the [] investigation into the murder for hire plot against [] the ADA []."[36]

---

[32] Id. at ¶ 38.
[33] Id. at ¶ 44.
[34] Id. at ¶ 80.
[35] Id.
[36] Id. at ¶ 81.

A state grand jury in due course investigated the matter.[37]
Judge Ruest testified before the grand jury that she could not
determine whether or not it was her signature on the order.[38]   The
grand jury report ultimately cleared Parks Miller of wrongdoing.[39]

As a result of the foregoing, Parks Miller brought the instant
action.  What remains for disposition today is the allegation that the
individuals named above, together with the County, conducted the
search in a constitutionally violative manner.  I hold that they did not.

### c.  Discussion

The remaining count in the second amended complaint is a search and
seizure claim in violation of the *Fourth Amendment* to the United States
Constitution pursuant to 42 U.S.C. §1983.  In sum, Section 1983 does not
establish substantive rights, it is merely the vehicle through which civil
rights plaintiffs may bring violations of their Constitutional rights against
state actors.

The Fourth Amendment provides "[t]he right of the people to be
secure in their persons, houses, papers, and effects, against unreasonable
searches and seizures, shall not be violated, and no Warrants shall issue, but

---

[37] Id. at ¶55.
[38] Id.
[39] Id. at ¶ 95.

upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."[40] "[T]he Fourth Amendment protects people, not places."[41]  "[W]hat he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected."[42]  "Wherever a man may be, he is entitled to know that he will remain free from unreasonable searches and seizures."[43]

In the Order dismissing the amended complaint, I directed that Parks Miller allege the personal involvement of the individual Defendants in order to survive a motion to dismiss. "Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under Section 1983."[44]  "A defendant may be personally involved in a constitutional deprivation within the meaning of 42 U.S.C. § 1983 in several ways."[45]  "The defendant may have directly participated in the infraction."[46] "A supervisory official, after learning of the violation through a report or appeal, may have failed to remedy the wrong,"[47]  "A supervisory official may be liable because he or she created a policy or custom under which

---

[40] US. CONST. amend. IV.
[41] *Katz v. United States*, 389 U.S. 347, 351, 88 S. Ct. 507, 511, 19 L. Ed. 2d 576 (1967).
[42] *Id.*
[43] *Id.* at 359.
[44] *Williams v. Smith*, 781 F.2d 319, 323 (2nd Cir. 1986).
[45] *Id.*
[46] *Id.*
[47] *Id.*

unconstitutional practices occurred, or allowed such a policy or custom to continue,"[48]  "Lastly, a supervisory official may be personally liable if he or she was grossly negligent in managing subordinates who caused the unlawful condition or event."[49]

The following comprise the allegations of personal involvement from the second amended complaint:

¶ 118.  The Defendant County Commissioners, Defendant County Solicitor Glantz, and Defendant Administrator Boyde each used political and financial pressure to coerce the Bellefonte Police to obtain and execute a defective search warrant (with the assistance of Judge Ruest) in search of evidence without probable cause to support what could never be a criminal offense.

¶ 126.  Specifically, upon information and belief, the Defendant County Commissioners met with Glantz and Boyd [sic] and directed them to demand that the Bellefonte Police reopen an investigation the police knew was not a crime because the [sic] was no criminal intent on the part of the District Attorney, raid her office in full view of a "tipped off press" in an effort to publically humiliate her and ruin her reputation by violating her Fourth Amendment right to be free from

---

[48] *Id.*
[49] *Id.*

unreasonable searches and seizures.

¶ 127.  Defendant Administrator Boyde, on behalf of the County and the Defendant Commissioners offered Bellefonte Borough a financial incentive from the County to [sic] if it would participate in the investigation and prosecution of the District Attorney.  Plaintiff believes and therefore avers that the Defendants were willing to *pay* (emphasis in original) Bellefonte Borough to go along with their scheme.

¶ 129.  The Defendants knew there was no probable cause to search the District Attorney's office and seize, *inter alia*, her computer, mobile phone, and table.

¶ 130.  Upon information and belief, at the Defendants' direction, the private forensic company PATCtech duplicated the files found in the District Attorney's laptop and phone and continues to improperly retain (and potentially share) that information to this day despite a finding that the search warrant was invalid.

¶ 131.  Plaintiff believes and therefore avers that upon receiving Plaintiff's equipment in violation of her Fourth Amendment right to be free from unreasonable searches and seizures, Defendants did not begin a search for items related to a crime.  Instead, Plaintiff avers

Defendants unlawfully searched Plaintiff's items looking for "personal" information in an effort to garner more "dirt" with which to attack Plaintiff's reputation.

¶ 136. When the Bellefonte Police expressed to Defendants a desire to refer the case to the Pennsylvania State Police for investigation (due to the close working relationship between District Attorney Parks Miller and the Bellefonte Police), Plaintiff believes and therefore avers the Defendant County Commissioners summoned the Bellefonte Chief of Police into a private meeting behind closed doors that resulted in the Bellefonte Police resurrecting their investigation.

¶ 137. Upon information and believe, it is believed that during this meeting the Defendant Commissioners pressured (in some way that cannot be learned without discovery) the Bellefonte Chief of Police to seek and execute the patently defective on its face search warrant in violation of Plaintiff's Fourth Amendment rights.

In addition to directing Parks Miller to allege the personal involvement of the individual Defendants as part of a second amended complaint, I also advised her that she must allege a policy or custom of illegal searches and seizures for her claim against Centre County to survive. "A municipality cannot be held liable solely because it employs a tortfeasor—or, in other

12

words, a municipality cannot be held liable under § 1983 on a respondeat superior theory."[50]  "It is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983"[51]

The following comprise the allegations of a county policy or custom from the second amended complaint:

¶   140.   As County Commissioners, Defendants Exarchos and Dershem were majority officials with public policymaking authority for Centre County at the time all the activity described in this complaint occurred.

¶   141.   Thus, the Commissioner Defendants' instigation, coercion, and ratification of the illegal search and seizure constituted the "official policy" of Centre County.  (The District Attorney conducts searches and seizures on behalf of the *Commonwealth* (emphasis in original), and carries out her duties which constitute the search and seizure policy of the Commonwealth and not Centre County. So there is nothing incongruous about Centre County having a policy allowing illegal searches and seizures while the District Attorney does not).

[50] *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691, 98 S. Ct. 2018, 2036, 56 L. Ed. 2d 611 (1978)
[51] *Id*. at 694.

13

¶ 144.  Plaintiff believes and therefore avers that Defendants made it county practice to illegally search records in violation of her Fourth Amendment rights in a further effort to seek to damage her reputation. The extent of these violations cannot be determined absent discovery.

Parks Miller follows a creative path to what is for her a pleasing result. The Court acknowledges that to some degree, Parks Miller has amended her complaint to allege the personal involvement of the individual defendants and a noted policy or custom by the County.  That said, the revised pleading principally clarifies for the Court that the violation of the *Fourth Amendment* alleged is a lack of probable cause to support issuance of the search warrant. "Searches and seizures by government employers or supervisors of the private property of their employees [] are subject to the restraints of the Fourth Amendment."[52]  "Within the workplace context, this Court has recognized that employees may have a reasonable expectation of privacy against intrusions by police."[53]

The County Defendants argued in their brief that Parks Miller had  "little to no expectation of privacy."[54]  This argument is unpersuasive to the Court.

The Bellefonte Borough Police Department must have believed that

---

[52] *O'Connor v. Ortega,* 480 U.S. 709, 715, 107 S. Ct. 1492, 1496, 94 L. Ed. 2d 714 (1987).
[53] *Id.*
[54] ECF No. 99 at 18.

Parks Miller did have at least some *Fourth Amendment* protections in her workspace, as they obtained a search warrant prior to conducting the search. Accordingly, the Court will proceed on the basis that Parks Miller did have at least some constitutional protection in her workspace.

""[I]t is settled ... that except in certain carefully defined classes of cases, a search of private property without proper consent is "unreasonable" unless it has been authorized by a valid search warrant,"[55] "[b]ecause a search warrant provides the detached scrutiny of a neutral magistrate, which is a more reliable safeguard against improper searches than the hurried judgment of a law enforcement officer 'engaged in the often competitive enterprise of ferreting out crime.'"[56] "Reasonable minds frequently may differ on the question whether a particular affidavit establishes probable cause, and we have thus concluded that the preference for warrants is most appropriately effectuated by according "great deference" to a magistrate's determination."[57] "Deference to the magistrate, however, is not boundless."[58] "It is clear, first, that the deference accorded to a magistrate's finding of probable cause does not preclude inquiry into the knowing or

---

[55] *Id.* at 720.
[56] *United States v. Leon*, 468 U.S. 897, 913–14, 104 S. Ct. 3405, 3415–16, 82 L. Ed. 2d 677 (1984) (internal citations omitted).
[57] *Id.* at 914.
[58] *Id.*

reckless falsity of the affidavit on which that determination was based."[59]

"Second, the courts must also insist that the magistrate purport to "perform his 'neutral and detached' function and not serve merely as a rubber stamp for the police."[60]

Both parties attached the Application for Search Warrant and accompanying Affidavit of Probable Cause to their briefs.[61]   A Bellefonte police officer made the application and it was signed by a neutral magistrate, namely the President Judge of the Clinton County Court of Common Pleas, the Honorable Craig P. Miller.

Parks Miller argues that there was insufficient probable cause to issue the

---

[59] *Id.*

[60] *Id.*

[61] ECF No. 101-1 at 2-7 and ECF No. 98-1 at 1-6 .  "Generally, consideration of a motion to dismiss under Rule 12(b)(6) is limited to consideration of the complaint itself." *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006).   Typically, to consider materials outside the complaint, it must be converted to a motion for summary judgment.  *See id.* and Fed. R. Civ. P. 12(d). However, "[c]onsideration of materials outside the complaint is not entirely foreclosed on a 12(b)(6) motion." *Faulkner*, 463 F.3d at 134.  It is permissible to consider full text of documents partially quoted in complaint. *San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos*., 75 F.3d 801, 808–09 (2d Cir.1996).   It is also permissible to consider documents relied upon by plaintiff in drafting the complaint and integral to the complaint.  *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47–48 (2d Cir.1991).  "However, before materials outside the record may become the basis for a dismissal, several conditions must be met." *Faulkner*, 463 F.3d at 134.  "For example, even if a document is "integral" to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document." *Id, See also  e.g., Kaempe v. Myers*, 367 F.3d 958, 965 (D.C.Cir.2004); *Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co.,* 267 F.3d 30, 33 (1st Cir.2001).  It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.  *Faulkner*, 463 F.3d at 134.  I find that all of these conditions are met here.

warrant.[62]   The cases she cites to[63] all concern situations where the police officer affiant(s) on the search warrant are alleged to have lied or made misrepresentations in the search warrant application and affidavit of probable cause.  Her citations are distinguishable from the case at bar.

First, Parks Miller did not name the police officer affiant as a defendant, nor has she made any allegations through the course of this litigation that that officer lied or made a misrepresentation on the search warrant or affidavit of probable cause.  Instead, she has alleged that a witness, namely Michelle Shutt, lied in filing an affidavit stating that she watched Parks Miller sign Judge Ruest's signature on a falsified bail order.  Second, Parks Miller further alleges that another witness, Judge Ruest, lied in stating that she could not discern if it was her signature on the bail order.  "The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant."[64] "Relatedly, the *Fourth Amendment* does not protect against an individual witness who lies about her past personal recollections to investigators who rely upon same in searching and seizing something."[65]  Even if I were to

---

[62] ECF No. 101 at 11.
[63] *Reedy v. Evanson*, 615 F.3d 197 (3d Cir. 2010); *Sherwood v. Mulvihill*, 113 F.3d 396 (ed Cir. 1997), and *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667) (1978).
[64] *Franks v. Delaware*, 438 U.S. 154, 171, 98 S. Ct. 2674, 2684, 57 L. Ed. 2d 667 (1978).
[65] *Joseph v. Kimple*, 343 F. Supp. 2d 1196, 1202 (S.D. Ga.), aff'd, 391 F.3d 1276 (11th Cir. 2004).

accept Parks Miller's allegations that both Shutt and Judge Ruest had lied about their knowledge of who signed the bail order, that, standing alone, would be insufficient to invalidate the probable cause found by the neutral and detached judge in issuing the search warrant.

To that end, "the traditional standard for review of an issuing magistrate's probable cause determination has been that so long as the magistrate had a "substantial basis for ... conclud[ing]" that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more."[66] The Pennsylvania Supreme Court, citing to the United States Supreme Court has held that there are "two requirements which an affidavit of probable cause in support of an anticipatory search warrant must meet under the Fourth Amendment: (1) "there is probable cause to believe the triggering condition will occur;" and (2) "if the triggering condition occurs 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'""[67] "When considering whether an anticipatory search warrant was supported by probable cause under the Fourth Amendment of the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution, judicial review is confined to the averments

---

[66] *Illinois v. Gates*, 462 U.S. 213, 236, 103 S. Ct. 2317, 2331, 76 L. Ed. 2d 527 (1983).
[67] *Com. v. Wallace*, 615 Pa. 395, 410, 42 A.3d 1040, 1049 (2012), *citing United States v. Grubbs,* 547 U.S. 90, 126 S.Ct. 1494, 164 L.Ed.2d 195 (2006).

contained within the four corners of the affidavit of probable cause."[68]

"In judging whether particular averments establish probable cause, we are mindful of the principle that probable cause ... is a practical, non-technical conception requiring a consideration of the totality of the circumstances ... The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place."[69]

My independent review of the Application for Search Warrant and the Affidavit of Probable Cause satisfies me that there was sufficient probable cause for Judge Miller to have signed the application for a search warrant.  It is worth noting that there were three criminal offenses being investigated. The first two were  forgery and tampering with public records, stemming from allegations that Parks Miller had forged the bail order and directed Shutt to docket it with the Prothonotary's Office.  The third was theft of services, stemming from an allegation that Parks Miller had used government time and government employees to work on her 2013 election

---

[68] *Wallace*, 615 Pa. at 408.
[69] *Id.* at 409-10 (internal citations omitted).

campaign.

The affiant officer had information provided by both Shutt and Judge Ruest that Judge Ruest did not sign the bail order that was docketed with the Prothonotary's Office.  The affiant officer also viewed emails from Parks Miller to Shutt (and others) that both discussed the plan for the falsified bail order and also assigned tasks to Shutt relating to the 2013 election campaign. The affiant officer additionally examined fifteen campaign finance reports filed by Parks Miller's campaign committee that supported the assertion that she was relying on her government staff to prepare memos, letters, emails and other documents using government time and government computers.

Accordingly, I conclude that there was sufficient probable cause alleged to find that the search warrant was valid and not constitutionally violative. In holding that the search and seizure was not in violation of the United States Constitution, there can be no search and seizure cause of action by Parks Miller, and the second amended complaint must, correspondingly be dismissed.

### III.   CONCLUSION

For all of the foregoing reasons, the County Defendants Motion to Dismiss will be  granted.  An appropriate Order follows.

BY THE COURT:


<u>/s Matthew W. Brann</u>
Matthew W. Brann
United States District Judge